UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FOREST RESOURCE COUNCIL, 1500 S.W. First Ave., Suite 765, Portland OR 97201<br><br>Plaintiff,<br><br>vs.<br><br>H. DALE HALL, Director, United States Fish and Wildlife Service, 1849 C Street, N.W. Washington, D.C. 20240<br><br>DAVID M. VERHEY, Acting Assistant Secretary for Fish and Wildlife and Parks, 1849 C Street, N.W. Washington, D.C. 20240, and<br><br>DIRK KEMPTHORNE, Secretary of Interior 1849 C Street, N.W. Washington, D.C. 20240<br><br>Defendants. | Civil Case No. 1:07-cv-00484-JDB |

**AMENDED COMPLAINT**

**(Declaratory and Injunctive Relief -Endangered Species Act, 16 U.S.C. §§1531 et seq., Regulatory Flexibility Act, 5 U.S.C. §§601 et seq., Unfunded Mandates Reform Act, 2 U.S.C. §§1501 et seq., National Environmental Policy Act, §§4321 et seq.)**

For its complaint herein, plaintiff alleges as follows:

**INTRODUCTION**

1.      This is an action for declaratory and injunctive relief against H. Dale Hall,

Director, United States Fish and Wildlife Service (FWS) and those charged with supervising

defendant Hall to remedy defendant Hall's violations of the Endangered Species Act (ESA), 16

U.S.C.§§1531 et seq., the Regulatory Flexibility Act, 5 U.S.C. §§601 et seq., the Unfunded

Page 1 -  AMENDED COMPLAINT

Mandates Reform Act, 2 U.S.C. §§1501 et seq. and the National Environmental Policy Act

(NEPA), §§4321 et seq. concerning the marbled murrelet population in Washington, Oregon and

California ("Three-State Murrelet Population") that FWS listed as a threatened species on

October 1, 1992.  57 Fed. Reg. 45328.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action under 16 U.S.C. §1540(c) and (g) and

28 U.S.C. §1331 (federal question).  Venue in this district is proper under 16 U.S.C. §1540(g)

because the violations occurred in this district.  Venue in this district is proper under 28 U.S.C.

§1391(e) because the defendants reside in this district and a substantial part of the events or

omissions giving rise to the claims occurred in this district.

## PARTIES

3.      Plaintiff American Forest Resource Council (AFRC), a nonprofit corporation

organized under the laws of the state of Oregon, is a forest products trade association located in

Portland, Oregon which represents approximately 90 forest product manufacturing companies

and landowners throughout Oregon, Washington, California and nine other states in the

midwestern and western United States.  AFRC's primary purpose is to advance its members'

vital interest in preserving an adequate and reliable supply of timber for their processing

facilities, both from federal lands managed by the U.S.D.A. Forest Service and the U.S.D.I.

Bureau of Land Management (BLM) in Washington, Oregon, California and elsewhere, and

from their own privately-owned lands and other private lands. AFRC and its members actively

participate in federal agency decisions that involve the protection, management, allocation and

use of both federal and non-federal forest resources in California, Oregon and Washington,

Page 2 -  AMENDED COMPLAINT

including wildlife, recreation and commodity production. AFRC has served as the representative

for the western forest products industry on many such decisions since 1986.

4.      Many of AFRC's members purchase or seek to purchase timber sales sold by the

Forest Service and BLM in the coastal portions of Oregon, California and Washington that

contain forests used or potentially used by marbled murrelets.  Many of AFRC's members have

been unable to purchase timber sales as a result of restrictions on land management by the Forest

Service and BLM stemming from the listing of the Three-State Murrelet Population and the

subsequent designation of critical habitat for the population.  AFRC and its members utilize all

the resources of lands managed by the Forest Service and BLM in Washington, Oregon,

California and elsewhere, and have an interest in the environmentally-sound and sustainable

management of those resources.

5.      Many AFRC members own private timberland in the coastal region used or

potentially used by marbled murrelets.  Much of this land includes parcels of private land that

are intermingled with or adjacent to the federal lands used, potentially used or designated as

critical habitat for the marbled murrelet.  Their management of these parcels of land has been

and will be directly and adversely affected by the actions, failures and omissions challenged in

this case.  The risk of fire, disease or insect infestation starting on federal land and spreading to

adjoining private land has increased, and will continue to increase, as a result of those actions,

failures and omissions.  These landowners may be forced to manage their lands in a different and

less environmentally desirable manner in response to the actions, failures and omissions

challenged in this case.

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

6.      AFRC also collects information about the environmental, economic and social impacts of major federal land management decisions, and disseminates this information to its members and participants, to public officials and to thousands of members of the public that are directly affected by these decisions.

7.      Defendant H. Dale Hall, the Director of the FWS, is the official who is responsible for administration of the ESA with respect to terrestrial species including the marbled murrelet.  Defendant Hall is personally responsible for the actions, failures and omissions that give rise to this Complaint.  Defendant David M. Verhey currently serves as Acting Assistant Secretary for Fish and Wildlife and Parks, and has supervisory responsibility over defendant Hall.  Defendant Dirk Kempthorne, Secretary of Interior, has supervisory responsibility over defendants Hall and Verhey, and has the statutory duty to implement the ESA.

## BACKGROUND ALLEGATIONS

8.      The marbled murrelet is a small, robin-sized sea bird that lives in both marine and inland forested environments along the North American Pacific coast, primarily in Alaska and Canada, but also in Washington, Oregon, and California.  Marbled murrelets spend the majority of their life on the ocean, and travel inland to nest between April and September.

9.      Marbled murrelets have been and are abundant throughout their range along the Pacific coast, with a population mostly recently estimated at 944,000 birds, most of which are concentrated in Alaska.

10.     The ESA protects fish, wildlife and plants through the process of "listing" a species of fish or wildlife or plants as threatened or endangered.  16 U.S.C. §1533(c)(1).  The

Page 4 -  AMENDED COMPLAINT

term "species" includes "any subspecies of fish or wildlife or plants, and any distinct population segment of any species o[f] vertebrate fish or wildlife which interbreeds when mature."  16 U.S.C. §1532(15).

     11.    On October 1, 1992 FWS published a Final Rule in the Federal Register stating it "determines the Washington, Oregon and California population of the marbled murrelet ... to be a threatened species pursuant to the [ESA]."  57 Fed. Reg. 45328.  FWS explained:

> The Service has carefully assessed the best scientific and commercial data available and concluded that the marbled murrelet in California, Oregon, and Washington is threatened due to loss of mature and old-growth forests that provide nesting habitat.  Secondary threats include gill-net fisheries in Washington, predation, and oil spills.

57 Fed. Reg. at 45336.

     12.    In the listing decision, FWS expressed uncertainty whether the murrelet population in the three-state area constituted a distinct population segment (DPS) eligible for listing as a "species" under the ESA:

> At the time of proposing to list the marbled murrelet in Washington, Oregon, and California, the Service considered the murrelets in these States to constitute a distinct population segment comprising a significant portion of the east Pacific subspecies of the marbled murrelet.  While the Service continues to believe that existing legal protection is not adequate to ensure survival of murrelets in the three-state region, some question remains whether the population listed in this rule qualifies for protection under the Act's definition of "species."

57 Fed. Reg. 45330.

     13.    FWS promised to reexamine the DPS issue within 90 days of the listing decision:

> Compliance with a court order required a final decision on listing to be made at this time.  Based on the information now available to the Service, the only supportable decision that can be reached within the limit imposed by the court is to list the population as proposed.  Nevertheless, the Service intends to reexamine the basis of recognizing this population of murrelets as a "species" under the Act.  Within 90 days, the Service will announce

Page 5 -  AMENDED COMPLAINT

the results of this examination and at that time may propose a regulatory
change that would alter the listing of the murrelet as a threatened species.

57 Fed. Reg. 45330.  However, the FWS never performed the promised 90-day reexamination of

the DPS finding for the listed population.

14.    On February 7, 1996, FWS issued a Policy Regarding the Recognition of Distinct

Vertebrate Population Segments Under the Endangered Species Act (1996 DPS Policy).  61 Fed.

Reg. 4722.  The 1996 DPS Policy requires FWS to consider both the "discreteness" and the

"significance" of a population segment to determine whether it is "distinct" for purposes of a

proposed listing.  Discreteness is met by either of two alternative tests:

> Discreteness: A population segment of a vertebrate species may be considered discrete if
> it satisfies either one of the following conditions:
> 1.  It is markedly separated from other populations of the same taxon as a consequence of
> physical, physiological, ecological, or behavioral factors. ...
> 2.  It is delimited by international governmental boundaries within which differences in
> control of exploitation, management of habitat, conservation status, or regulatory
> mechanisms exist that are significant in light of section 4(a)(1)(D) of the Act.

61 Fed. Reg. at 4725.  The 1996 DPS Policy promised that "the appropriate application of the

policy will ... be considered in the 5-year reviews of the status of listed species required by

section 4(c)(2) of the Act."  61 Fed. Reg. 4725.

15.    Section 4(c) of the ESA, 16 U.S.C. §1533(c), directs the Secretary of the Interior to

"publish in the Federal Register a list of all species determined by him or the Secretary of

Commerce to be endangered species and a list of all species determined by him or the Secretary

of Commerce to be threatened species," 16 U.S.C. §1533(c)(1), and then directs:

> (2) The Secretary shall --
> (A) conduct, at least once every five years, a review of all species included in a list
>        published pursuant to paragraph (1) and which is in effect at the time of
>        such review; and
> (B) determine on the basis of such review whether any such species should –

Page 6 -  AMENDED COMPLAINT

(i) be removed from such list;
(ii) be changed in status from an endangered species to a
threatened species; or
(iii) be changed in status from a threatened species to an
endangered species.

Each determination under subparagraph (B) shall be made in accordance with the provisions of subsections (a) and (b) of this section.

This provision imposes two separate duties on the Secretary: a) the duty in 16 U.S.C. §1533(c)(2)(A) to conduct a review of a listed species; and b) the duty in 16 U.S.C. §1533(c)(2)(B) to "determine on the basis of such review" whether the species' legal status should be changed.

16.     The determination required by 16 U.S.C. §1533(c)(2)(B) "shall" be made in accordance with the provisions of subsections 4(a) and 4(b) of the ESA.  Section 4(a) of the ESA, 16 U.S.C. §1533(a), states: "The Secretary shall by regulation promulgated in accordance with subsection (b) determine whether any species is an endangered species or a threatened species."  Section 4(b)(4), 16 U.S.C. §1533(b)(4)(b), states:  "Except as provided in paragraphs (5) and (6) of this subsection, the provisions of section 553 of title 5, United States Code (relating to rulemaking procedures), shall apply to any regulation promulgated to carry out the purposes of this Act."

17.     From the date of listing to 2002 FWS never conducted a 5-year status review of the Three-State Murrelet Population required by §1533(c)(2), nor otherwise reviewed the Three-State Murrelet Population to determine if it is a listable DPS under the 1996 DPS Policy.  On March 26, 2002 AFRC along with three of its members (Starfire Lumber Company, Herbert Lumber Company and C & D Lumber Co.) filed suit in the U. S. District Court for the District of Oregon seeking, inter alia, to compel FWS to conduct a 5-year status review of the Three-State

Page 7 -  AMENDED COMPLAINT

Murrelet Population. *American Forest Resource Council v. Department of Interior*, Civil No.02-6087-AA (D. Or.).

18.     On January 13, 2003 the AFRC and the Department of Interior entered into a Settlement Agreement of *American Forest Resource Council v. Department of Interior*, Civil No.02-6087-AA (D. Or.) in which, inter alia, the FWS agreed to conduct a 5-year Status Review of the Three-State Murrelet Population under 16 U.S.C. §1533(c)(2), and in paragraph 1.b of the Agreement FWS further agreed to perform both of the duties described in 16 U.S.C. §1533(c)(2):

> By December 31, 2003, the Service will complete the Status Review and will, based upon the best available scientific and commercial data, determine whether a change in listing status is warranted as provided by ESA Section 4(c)(2).

The Settlement Agreement was approved by the United States District Court for the District of Oregon on April 24, 2003.

19.     The parties to the Settlement Agreement twice agreed to extend the deadline to April 30, 2004, and then to August 31, 2004. On that date FWS announced that it had completed the 5-year Status Review, and issued a press release to that effect on September 1, 2004.

20.     The Status Review concludes that the Three-State Murrelet Population is not a listable distinct population segment:

> 7. B. Does the original listing meet the DPS policy with regards to the Discreteness and Significance elements of the 1996 policy?
>
> **No**, see Section 13.B.
>
> ...
>
> 13.B Given the updated information, is the listed entity consistent with the DPS policy with regards to the Discreteness and Significance elements?

Page 8 - AMENDED COMPLAINT

*1) Is the currently listed murrelet population discrete according to the 1996 DPS Policy?*

Discreteness: A population segment of a vertebrate species may be considered discrete if it satisfies either one of the following conditions:

1. It is markedly separated from other populations of the same taxon as a consequence of physical, physiological, ecological, or behavioral factors. Quantitative measures of genetic or morphological discontinuity may provide evidence of this separation.

2. It is delimited by international governmental boundaries within which differences in control of exploitation, management of habitat, conservation status, or regulatory mechanisms exist that are significant in light of section 4(a)(1)(D) of the Act.

The currently listed murrelet population is not discrete according to the 1996 DPS Policy.

(a) **Biological Issues**: There is no marked separation of physical, physiological, ecological or behavioral differences at the border (Note: This is a wide ranging species and there are some north to south physical and ecological differences across its range. For example, there are some north to south differences in topography, terrestrial forest habitat, and marine conditions. There is no significant evidence of genetic or morphological discontinuity between populations at the U.S.-Canadian border.)

(b) **International Border Issues**: There are no differences in control of exploitation, management of habitat, conservation status, or regulatory mechanisms across the international border that are significant in light of section 4(a)(1)(D) of the Act.

Status Review at 6, 14-15 (underlining added; bold and italics in original).

21.    The final page of the Status Review is reproduced below:

Page 9 -  AMENDED COMPLAINT

*Marbled Murrelet 5-Year Review*

## U.S. FISH AND WILDLIFE SERVICE
## SIGNATURE PAGE for 5-YEAR REVIEW

### Marbled Murrelet/*Brachyramphus marmoratus*

CURRENT CLASSIFICATION ___Threatened_____

5-Year Review Result        ___X__ No Change in Status*
                            _____ Delist
                            _____ Endangered to Threatened
                            _____ Threatened to Endangered

APPROPRIATE LISTING/RECLASSIFICATION PRIORITY NUMBER_____N/A_____

REVIEW CONDUCTED BY __Paul Phifer and Brian Cox_____

*Regional Director, Fish and Wildlife Service*

Concur_____ Date __7/1/54__

Not concur_____ Date _____

\* The Washington, Oregon, and California population does not satisfy the criteria for
designation as a Distinct Population Segment (DPS) under the Service's 1996 DPS Policy.
There will be no change in the species status pending the completion of a range-wide status
review.

22.     FWS never conducted a "range-wide status review" of the marbled murrelet as

the 5-year Status Review implied would occur.  FWS did nothing at all for 18 months; then in

March 2006 FWS requested the United States Geological Survey (USGS) "to review the status

Page 10 -  AMENDED COMPLAINT

of the Marbled Murrelet in Alaska and British Columbia." In 2007 USGS issued its report entitled "Status Review of the Marbled Murrelet (Brachyramphus marmoratus) in Alaska and British Columbia" (USGS Report). The USGS report determined that the world-wide population of marbled murrelets "appears to comprise three genetic units: (1) western and central Aleutian Islands; (2) eastern Aleutian Islands to northern California; and (3) central California." USGS Report at 43. "Marbled murrelets between northern California and the eastern Aleutians, including those in Oregon, Washington and British Columbia, do not appear to be genetically differentiated." USGS Report at 138. "The nesting distribution of the marbled murrelet is considered to be relatively continuous from the western Aleutian Islands to northern California ...." Id. However, there is a 450 kilometer gap between the murrelets in northern California and those in central California that are genetically distinct. Id. In short, the USGS Report provides further scientific evidence that the Three-State Murrelet Population – which encompasses a portion of the eastern Aleutian Islands-to-northern California population and all of the genetically differentiated central California population – is not a distinct population segment of the marbled murrelet species.

23.    Since August 31, 2004 FWS has taken no action to propose removing the Three-State Murrelet Population from the list of endangered and threatened species.

24.    The actions, failures and omissions described above are causing current and threatened injury to AFRC and its members, who have no remedy at law for these injuries.

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

**Claims for Relief**

**FIRST CLAIM FOR RELIEF**
**(Violation of 16 U.S.C. §1533(c)(2)(B) -**
**Failure to Determine Whether to Delist Three-State Murrelet Population)**

25.     Plaintiff repeats and realleges the allegations in paragraphs 1-24 as if fully set forth herein.

26.     The August 31, 2004 Status Review does not contain a "determination" under §1533(c)(2)(B) whether the Three-State Murrelet Population should be delisted or changed in status.  The word "determination" never appears in the document (except in a reference to the original 1992 determination of threatened status for the population).   Determinations of listing status are reserved to the Director of the FWS.  The Status Review contains no determination by the Director of the FWS. The Status Review states the "Review [was] Conducted by" two staff biologists.   The Regional Director, David Allen states that he "concur[s]." Neither regional directors nor staff biologists have delegated authority to make listing determinations. Endangered Species Listing Handbook (Fourth Edition March 1994) pages 136-141.

27.     Since completing the 5-year Status Review of the Three-State Murrelet Population under 16 U.S.C. §1533(c)(2)(A) on August 31, 2004, defendant Hall has violated 16 U.S.C. §1533(c)(2)(B), by failing to "determine on the basis of such review whether any such species should ... be removed from such list."

28.     The failure of defendant Hall to make the determination required by 16 U.S.C. §1533(c)(2)(B) constitutes the failure of defendant Hall to perform an act or duty under 16 U.S.C. §1533 which is not discretionary, entitling plaintiff to relief under 16 U.S.C. §1540(g).

Page 12 -  AMENDED COMPLAINT

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

## SECOND CLAIM FOR RELIEF
### (Agency action unlawfully withheld or unreasonably delayed –
### Failure to initiate rulemaking)

29.    Plaintiff repeats and realleges the allegations in paragraphs 1-24 as if fully set forth herein.

30.    The failure of defendant Hall since August 31, 2004 to initiate rulemaking to delist the Three-State Murrelet Population since FWS determined the Three-State Murrelet Population cannot legally be protected under the ESA constitutes "agency action unlawfully withheld or unreasonably delayed," entitling plaintiff to relief under 5 U.S.C. §706(1).

## THIRD CLAIM FOR RELIEF
### (Violation of 16 U.S.C. §1533(c)(2) –
### Failure to follow rulemaking procedures required by 16 U.S.C. §1533(a) and (b))

31.    Plaintiff repeats and realleges the allegations in paragraphs 1-24 as if fully set forth herein.

32.    In April 2006, FWS asserted in a pleading filed in *Coos County Board of County Commissioners v. Norton*, No. 06-6010-HO (D. Or.) (April 28, 2006) at 5 that the August 31, 2004 Status Review constitutes the determination required by 16 U.S.C. §1533(c)(2)(B).

33.    If the August 31, 2004 Status Review constitutes a determination under 16 U.S.C. §1533(c)(2)(B) not to remove the Three-State Murrelet Population from the list of endangered and threatened species, FWS has violated 16 U.S.C. §1533(c)(2) by failing to make the determination in accordance with the provisions in 16 U.S.C. §1533(a) and (b).  FWS did not make the determination "by regulation" as required by 16 U.S.C. §1533(a).  FWS did not follow "the provisions of section 553 of title 5, United States Code (relating to rulemaking procedures)" in making the determination, as required by 16 U.S.C. §1533(b).  FWS did not publish a

Page 13 -  AMENDED COMPLAINT

proposed determination in the Federal Register, did not solicit and consider public comment on a

proposed determination, and did not publish a final determination in the Federal Register.

34.    The failure to make the determination required by 16 U.S.C. §1533(c)(2)(B) in

accordance with the provisions in 16 U.S.C. §1533(a) and (b) constitutes the failure of the

Secretary (through his delegee defendant Hall) to perform an act or duty under 16 U.S.C. §1533

which is not discretionary with the Secretary, entitling plaintiff to relief under 16 U.S.C.

§1540(g), and is arbitrary and capricious, an abuse of discretion, not in accordance with law,

without observance of procedure required by law, in excess of statutory authority and short of

statutory right under 5 U.S.C. § 706(2).

**FOURTH CLAIM FOR RELIEF**
**(Arbitrary and capricious conduct –**
**Decision not to delist Three-State Murrelet Population)**

35.    Plaintiff repeats and realleges the allegations in paragraphs 1-24 and 32 as if fully

set forth herein.

36.    If the August 31, 2004 Status Review constitutes a determination under 16 U.S.C.

§1533(c)(2)(B) not to remove the Three-State Murrelet Population from the list of endangered

and threatened species, the determination was arbitrary and capricious, an abuse of discretion,

not in accordance with law, without observance of procedure required by law, in excess of

statutory authority and short of statutory right under 5 U.S.C. §706(2).  The Status Review does

not, and cannot, articulate any rational connection between the facts found – that the Three-State

Murrelet Population is not a species under the ESA – and the decision FWS now claims the

Status Review made – to continue to protect the Three-State Murrelet Population as a species

under the ESA.  Nor is the range-wide status of the murrelet species a relevant factor to the legal

Page 14 -  AMENDED COMPLAINT

status of the Three-State Murrelet Population.  Even if the species were protected range-wide as

threatened or endangered, the protective measures in the ESA could not apply separately to seek

recovery of the Three-State Murrelet Population, and would likely be applied significantly

differently for the species as a whole than for the Three-State Murrelet Population.  The USGS

Report shows that the Three-State Murrelet Population actually contains birds from two

genetically-distinct populations, and there is no biological basis for protecting or recovering the

Three-State Murrelet Population as an independent entity.  The FWS decision to persist in

conduct the agency has already determined is contrary to law cannot be permitted to stand.

Plaintiff is entitled to relief under 5 U.S.C. §706(2).

**FIFTH CLAIM FOR RELIEF**
**(Violation of Regulatory Flexibility Act, 5 U.S.C. §§601 et seq. and**
**Unfunded Mandates Reform Act, 2 U.S.C. §§1501 et seq.)**

37.     Plaintiff repeats and realleges the allegations in paragraphs 1-24 and 32 as if fully

set forth herein.

38.     Under the Regulatory Flexibility Act, 5 U.S.C. §§601 et seq., as amended by the

Small Business Regulatory Enforcement Fairness Act (SBREFA) of 1996, when an agency is

required to publish a notice of rulemaking for any proposed or final rule, it must prepare and

make available for public comment a regulatory flexibility analysis that describes the effect of

the rule on small entities (i.e., small businesses, small organizations, and small government

jurisdictions), unless the agency certifies that the rule will not have a significant economic

impact on a substantial number of small entities.

39.     Under the Unfunded Mandates Reform Act, 2 U.S.C. §§1501 et seq., an agency

must determine if a rulemaking will "significantly or uniquely" affect small governments or

Page 15 -  AMENDED COMPLAINT

produce a Federal mandate on State, local, or tribal governments or the private sector of $100

million or greater in any year.

40.     If the August 31, 2004 Status Review constitutes a determination required under

16 U.S.C. §1533(c)(2)(B) not to remove the Three-State Murrelet Population from the list of

endangered and threatened species, defendant Hall has violated the Regulatory Flexibility Act, 5

U.S.C. §§601 et seq. and Unfunded Mandates Reform Act, 2 U.S.C. §§1501 et seq. by failing to

make the regulatory findings required by these statutes.

41.     The failure to make the determination required by 16 U.S.C. §1533(c)(2)(B) in

accordance with the Regulatory Flexibility Act, 5 U.S.C. §§601 et seq. and Unfunded Mandates

Reform Act, 2 U.S.C. §§1501 et seq. is arbitrary and capricious, an abuse of discretion, not in

accordance with law, without observance of procedure required by law, in excess of statutory

authority and short of statutory right under 5 U.S.C. §706(2).

## SIXTH CLAIM FOR RELIEF
### (Violation of NEPA --
### Failure to prepare EA or EIS)

42.     Plaintiff repeats and realleges the allegations in paragraphs 1-24 and 32 as if fully

set forth herein.

43.     The Council on Environmental Quality (CEQ) regulations implementing NEPA,

which are binding on defendant Hall, require that unless a federal agency has already determined

that it is required to prepare an environmental impact statement (EIS) under NEPA, 42 U.S.C.

§4332(2)(C), the agency must prepare an environmental assessment (EA) to determine if a

proposed action is likely to significantly impact the environment and therefore requires

preparation of an EIS.  40 C.F.R. §§1501.4(b), 1508.9.

44.     If the August 31, 2004 Status Review constitutes a determination required under

16 U.S.C. §1533(c)(2)(B) not to remove the Three-State Murrelet Population from the list of

Page 16 -  AMENDED COMPLAINT

endangered and threatened species, defendant Hall violated NEPA by failing to prepare either an EA or an EIS for the determination.

45.    Defendant Hall's failure to prepare an EA or EIS is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

1.    A declaration that:

a.    Defendant Hall has failed to make the determination required by 16 U.S.C. §1533(c)(2)(B) whether to remove the Three-State Murrelet Population from the list of endangered and threatened species, and the failure of defendant Hall to make this determination constitutes the failure of defendant Hall to perform an act or duty under 16 U.S.C. §1533 which is not discretionary.

b.    The failure of defendant Hall since August 31, 2004 to initiate rulemaking to delist the Three-State Murrelet Population since FWS determined the Three-State Murrelet Population cannot legally be protected under the ESA constitutes "agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. §706(1).

c.    To the extent the August 31, 2004 Status Review constitutes a determination under 16 U.S.C. §1533(c)(2)(B) not to remove the Three-State Murrelet Population from the list of endangered and threatened species, defendant Hall has violated 16 U.S.C. §1533(c)(2) by failing to make the determination in accordance with the provisions in 16 U.S.C. §1533(a) and (b). The failure to make the determination required by 16 U.S.C. §1533(c)(2)(B) in accordance with the provisions in 16 U.S.C. §1533(a) and (b) constitutes the failure of the Secretary to

Page 17 -  AMENDED COMPLAINT

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

perform an act or duty under 16 U.S.C. §1533 which is not discretionary with the Secretary, and is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

        d.      To the extent the August 31, 2004 Status Review constitutes a determination under 16 U.S.C. §1533(c)(2)(B) not to remove the Three-State Murrelet Population from the list of endangered and threatened species, the determination was arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2) because there is no rational connection between the facts found in the Status Review and the decision FWS now claims was made in the Status Review.

        e.      To the extent the August 31, 2004 Status Review constitutes a determination under 16 U.S.C. §1533(c)(2)(B) not to remove the Three-State Murrelet Population from the list of endangered and threatened species, defendant Hall has violated the Regulatory Flexibility Act, 5 U.S.C. §§601 et seq. and Unfunded Mandates Reform Act, 2 U.S.C. §§1501 et seq. by failing to make the regulatory findings required by these statutes. The failure to make the determination required by 16 U.S.C. §1533(c)(2)(B) in accordance with the Regulatory Flexibility Act, 5 U.S.C. §§601 et seq. and Unfunded Mandates Reform Act, 2 U.S.C. §§1501 et seq. is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. §706(2).

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

f.      To the extent the August 31, 2004 Status Review constitutes a determination under 16 U.S.C. §1533(c)(2)(B) not to remove the Three-State Murrelet Population from the list of endangered and threatened species, defendant Hall violated NEPA by failing to prepare either an EA or an EIS for the determination.  Defendant Hall's failure to prepare an EA or EIS is arbitrary and capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, in excess of statutory authority and short of statutory right under 5 U.S.C. § 706(2).

2.      An order under 5 U.S.C. §706(2) setting aside the August 31, 2004 Status Review to the extent it constitutes a determination under 16 U.S.C. §1533(c)(2)(B) not to remove the Three-State Murrelet Population from the list of endangered and threatened species.

3.      An equitable order directing defendant Hall, under the supervision of defendants Verhey and Kempthorne, to:

a.      Within 15 days of the date of the order from the court, submit to the Federal Register for publication a notice of proposed rulemaking to remove the Three-State Murrelet Population from the list of endangered and threatened species; and

b.      Within one year of the date the notice of proposed rulemaking is published in the Federal Register, submit to the Federal Register for publication a final rule determining whether to remove the Three-State Murrelet Population from the list of endangered and threatened species;

4.      Awarding plaintiff its costs and attorney fees under the ESA, 16 U.S.C. §1540(g)(4), and the Equal Access to Justice Act, 28 U.S.C. §2412; and

Page 19 -  AMENDED COMPLAINT

5.       Granting such other relief as the court deems just and equitable.

Dated this 1st day of May, 2007.

By: /s/ James T. McDermott
    James T. McDermott, D.C. Bar No. 404886
    jmcdermott@balljanik.com
    BALL JANIK LLP
    101 SW Main Street, Suite 1100
    Portland OR 97204
    Telephone:  (503) 228-2525
    Facsimile:  (503) 226-3910

    Mark C. Rutzick
    Mark C. Rutzick, P.C.
    markrutzick@comcast.net
    3407 SW Stonebrook Drive, Suite B
    Portland, OR  97239-1269
    Telephone/Facsimile: (503) 244-3030

    Attorneys for Plaintiff American Forest Resource
    Council

Page 20 -  AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the State of Oregon. I am over 18 years of age and not a party to this action. My business address is 101 SW Main Street, Suite 1100, Portland, Oregon 97204.

On May 1, 2007, I served a true and correct copy of the foregoing **AMENDED COMPLAINT** by:

☒    ELECTRONIC MAIL
☒    US POSTAL SERVICE

addressed to the following named persons at their last-known addresses on the date stated below:

Jean E. Williams
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife & Marine Resources Section
601 D Street N.W., Room 3908
Washington, D.C. 20004
Telephone: (202) 305-0217
Fax: (202) 305-0275
jean.williams@usdoj.gov
Attorneys for Federal Defendants

Patti A. Goldman
Kristen L. Boyles
Joshua Osborne-Klein
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104
Telephone: (206) 343-7340
Fax: (206) 343-1526
pgoldman@earthjustice.org
kboyles@earthjustice.org
josborne-klein@earthjustice.org
Attorneys for Proposed Defendant-Intervenors

CERTIFICATE OF SERVICE

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 1st day of May, 2007.

/s/ Annie LaHaie
Annie LaHaie

CERTIFICATE OF SERVICE

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525