UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN FOREST RESOURCE COUNCIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| H. DALE HALL, Director, U.S. Fish and | ) | Case No. 1:07-cv-00484 (JDB) |
| Wildlife Service, DAVID M. VERHEY, | ) | |
| Acting Assistant Secretary for Fish, Wildlife | ) | |
| and Parks, and DIRK KEMPTHORNE, | ) | |
| Secretary of the Interior. | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AUDUBON SOCIETY OF PORTLAND, | ) | |
| CENTER FOR BIOLOGICAL DIVERSITY, | ) | |
| CONSERVATION NORTHWEST, | ) | |
| ENVIRONMENTAL PROTECTION | ) | |
| INFORMATION CENTER, GIFFORD | ) | |
| PINCHOT TASK FORCE, OREGON WILD, | ) | |
| SEATTLE AUDUBON SOCIETY, SIERRA | ) | |
| CLUB, and THE WILDERNESS SOCIETY | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

## DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Defendants H. Dale Hall, in his capacity as Director of the United States Fish and

Wildlife Service, David M. Verhey, in his capacity as Acting Assistant Secretary for Fish,

Wildlife and Parks, and Dirk Kempthorne, in his capacity as Secretary of the Interior, move the

Court for an order dismissing the above-captioned action pursuant to Rule 56 of the Federal

Rules of Civil Procedure on the grounds that there are no genuine issues of material fact and that

Defendants are entitled to judgment as a matter of law.  The grounds for this motion are further

set forth in the accompanying "Memorandum In Opposition To Plaintiffs' Motion for Summary

Judgment And In Support of Defendants' Cross-Motion For Summary Judgment," the excerpts

of the administrative record filed with the Court in this action, and such other written and oral

submissions as the Court may accept before rendering judgment.

Dated: August 21, 2007                    Respectfully submitted,

                                          RONALD J. TENPAS
                                          Acting Assistant Attorney General

                                          JEAN E. WILLIAMS, Chief
                                          LISA L. RUSSELL, Assistant Chief


                                          _____/s/ *Meredith L. Flax*_____
                                          MEREDITH L. FLAX, Trial Attorney (DCB 468016)
                                          U.S. Department of Justice
                                          Environment and Natural Resources Division
                                          Wildlife and Marine Resources Section
                                          P.O. Box 7369
                                          Washington, D.C. 20044-7369
                                          Telephone: (202) 305-0404
                                          Facsimile: (202) 305-0275
                                          Meredith.Flax@usdoj.gov

OF COUNSEL:

Eric W. Nagle
Office of the Solicitor
Pacific Northwest Regional Office
500 N.E. Multnomah St., Suite 607
Portland, OR 97232

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN FOREST RESOURCE COUNCIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| H. DALE HALL, Director, U.S. Fish and | ) | Case No. 1:07-cv-00484 (JDB) |
| Wildlife Service, DAVID M. VERHEY, | ) | |
| Acting Assistant Secretary for Fish, Wildlife | ) | |
| and Parks, and DIRK KEMPTHORNE, | ) | |
| Secretary of the Interior. | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AUDUBON SOCIETY OF PORTLAND, | ) | |
| CENTER FOR BIOLOGICAL DIVERSITY, | ) | |
| CONSERVATION NORTHWEST, | ) | |
| ENVIRONMENTAL PROTECTION | ) | |
| INFORMATION CENTER, GIFFORD | ) | |
| PINCHOT TASK FORCE, OREGON WILD, | ) | |
| SEATTLE AUDUBON SOCIETY, SIERRA | ) | |
| CLUB, and THE WILDERNESS SOCIETY | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that copies of Defendants' Cross-Motion for Summary Judgment,

Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in

Support of Defendants' Cross-Motion for Summary Judgment, Defendants' Statement of

Material Facts Not in Dispute, and Proposed Order were served on August 21, 2007 on Mark C.

Rutzik, 4912 Shadow Valley Drive, Fairfax, VA 22030, as I understand this to be his correct

address, even though the docket lists his address as Portland, Oregon.

_/s/ Meredith L. Flax_
Meredith L. Flax

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FOREST RESOURCE COUNCIL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| H. DALE HALL, Director, U.S. Fish and | )     Case No. 1:07-cv-00484 (JDB) |
| Wildlife Service, DAVID M. VERHEY, | ) |
| Acting Assistant Secretary for Fish, Wildlife | ) |
| and Parks, and DIRK KEMPTHORNE, | ) |
| Secretary of the Interior. | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| AUDUBON SOCIETY OF PORTLAND, | ) |
| CENTER FOR BIOLOGICAL DIVERSITY, | ) |
| CONSERVATION NORTHWEST, | ) |
| ENVIRONMENTAL PROTECTION | ) |
| INFORMATION CENTER, GIFFORD | ) |
| PINCHOT TASK FORCE, OREGON WILD, | ) |
| SEATTLE AUDUBON SOCIETY, SIERRA | ) |
| CLUB, and THE WILDERNESS SOCIETY | ) |
| | ) |
| Defendant-Intervenors. | ) |
| | ) |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

<u>TABLE OF CONTENTS</u>

<u>PAGE</u>

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    STATUTORY AND REGULATORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.    FWS'S DETERMINATION TO MAINTAIN THE LISTING OF THE THREE-STATE
      MURRELET IS NOT A CHALLENGEABLE FINAL AGENCY ACTION, BUT EVEN
      IF IT WERE, THE DETERMINATION IS REASONABLE AND SUPPORTED BY
      THE RECORD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.    FWS's Determinations Under ESA § 4(c)(2) Are Not Challengeable Final
            Agency Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      B.    Even if the Determination is Final Agency Action, it is Reasonable and Supported
            by the Administrative Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.    REGIONAL DIRECTOR ALLEN APPROPRIATELY SIGNED THE THREE-STATE
      MURRELET FIVE-YEAR REVIEW DETERMINATION . . . . . . . . . . . . . . . . . . . . . . 19

III.    THE ESA DOES NOT REQUIRE FWS TO PROCEED BY REGULATION OR
      FOLLOW THE RULEMAKING PROCEDURES OF 5 U.S.C. § 553 WHEN IT MAKES
      A FIVE-YEAR REVIEW DETERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      A.    Analyzing the Relevant Provisions of the ESA Under Chevron Demonstrates that
            FWS Was Not Required to Proceed "By Regulation" or Follow the Rulemaking
            Requirements of the APA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      B.    Any Procedural Error Was Harmless . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

IV.    NEPA DOES NOT APPLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

V.    THERE HAS BEEN NO WAIVER OF SOVEREIGN IMMUNITY UNDER THE

      REGULATORY FLEXIBILITY ACT, AND, IN ANY CASE, NEITHER THAT

STATUTE NOR THE UNFUNDED MANDATES REFORM ACT APPLIES  . . . . . . 29

VI.    THE COURT SHOULD DISMISS PLAINTIFF'S SECOND CLAIM FOR RELIEF AS
       ABANDONED  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

VII.   PLAINTIFF IS NOT ENTITLED TO THE RELIEF IT REQUESTS  . . . . . . . . . . . . . 31

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

TABLE OF AUTHORITIES

CASES                                                                                           PAGE

Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, 462 U.S. 87, 103 (1983) . . . . . . . 16, 19

Barnhart v. Thomas, 540 U.S. 20, 26 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Bennett v. Spear, 520 U.S. 154, 177-78 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12

Celotex v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Chemical Mfrs. Ass'n v. EPA, 870 F.2d 177, 202 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 26

Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837 (1984) . . . . . . . . . . . . . 22

Defenders of Wildlife v. Norton, 258 F.3d 1136, 1145 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . 16

DRG Funding Corp. v. Sec'y of Housing & Urban Dev., 76 F.3d 1212, 1215 (D.C. Cir. 1996) 13

Fed. Power Comm'n v. Idaho Power Co., 344 U.S. 17, 20 (1952) . . . . . . . . . . . . . . . . . . . . . . 32

Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Fund for Animals v. Thomas, 127 F.3d 80, 84 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 29

Indep. Equip. Dealers Ass'n v. EPA, 372 F.3d 420, 428 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . 14

Indep. Ins. Agents of Am. v. Hawke, 211 F.3d 638, 644 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . 14

Lane v. Pena, 518 U.S. 187, 192, 196-97 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Lehman v. Nakshian, 453 U.S. 156, 161 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 377 (1989) . . . . . . . . . . . . . . . . . 19

Marshall v. Labor & Indus., State of Washington, 89 F. Supp. 2d 4, 8 (D.D.C. 2000) . . . . . . . 10

Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1069 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . 25

Mylan Laboratories v. Thompson, 389 F.3d 1272, 1279-80 (D.C. Cir. 2004) . . . . . . . . . . . . . 26

Nat'l Ass'n of Home Builders v. Norton, 298 F. Supp. 2d 68, 75 (D.D.C. 2003) . . . . . . . . . . 11

Nat'l Ass'n of Home Builders v. Norton, 340 F.3d 835, 851 (9th Cir. 2003) . . . . . . . . . . . . . . 18

Nat'l Labor Relations Bd. v. Food Store Employees Union, Local 347, 417 U.S. 1, 9 (1974) . . 32

Nat'l Leased Housing Ass'n v. HUD, No. 03-1509 (CKK) 2007 WL 148829,
    at *20 (D.D.C. Jan. 16, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Nat'l Wildlife Fed'n v. Norton, 386 F. Supp. 2d 553, 565 (D. Vt. 2005) . . . . . . . . . . . . . . . . . 18

Nevada v. Dep't of Energy, 457 F.3d 78, 90 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 26

Nnadili v. Chevron, 435 F. Supp. 2d 93, 103 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 62 (2004) . . . . . . . . . . . . . . . . . . . . . . . . 11

Pacific Legal Found. v. Andrus, 657 F.2d 829, 835-840 (6th Cir. 1981) . . . . . . . . . . . . . . 28, 29

Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 654 (1990) . . . . . . . . . . . . . . . . . . . 27

Spivey v. Barry, 665 F.2d 1222, 1232 n.21 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Trout Unlimited v. Lohn, No. CV05-1128-JCC, 2007 WL 1730090, at *13
    (D. Or. June 13, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Trudeau v. Federal Trade Commission, 456 F.3d 178, 185 (D.C. Cir. 2006) . . . . . . . . . . . 11,15

United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992) . . . . . . . . . . . . . . . . . . . . . . . 30

Valles-Hall v. Ctr. for Nonprofit Advancement, 481 F. Supp. 2d 118, 122 (D.D.C. 2007) . . . . 31

West Virginia v. EPA, 362 F.3d 861, 869 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

Wyoming v. U.S. Dep't of the Interior, 360 F. Supp. 2d 1214, 1227 . . . . . . . . . . . . . . . . . . . . . 13

STATUTES

2 U.S.C. § 1532 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

5 U.S.C. § 551(13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5 U.S.C. § 603 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

5 U.S.C. § 611(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

16 U.S.C. § 1531 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

16 U.S.C. § 1531(20) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

16 U.S.C. § 1531(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

16 U.S.C. § 1532(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

16 U.S.C. § 1532(16) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16

16 U.S.C. § 1532(20) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

16 U.S.C. § 1533(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 23, 28

16 U.S.C. § 1533(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 24

16 U.S.C. § 1533(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

16 U.S.C. § 1533(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

16 U.S.C. § 1533(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

16 U.S.C. § 1533(b)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

16 U.S.C. § 1533(b)(4)-(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

16 U.S.C. § 1533(b)(6)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

16 U.S.C. § 1533(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

16 U.S.C. § 1533(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 29

16 U.S.C. § 1533(c)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 22

16 U.S.C. § 1536 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

16 U.S.C. § 1540(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

42 U.S.C. § 4332(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

FEDERAL REGULATIONS

50 C.F.R. § 424.02(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

50 C.F.R. § 424.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

50 C.F.R. § 424.11(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

50 C.F.R. § 424.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

50 C.F.R. § 424.21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

MISCELLANEOUS

U.S.C.C.A.N. 9453 (Sept. 25, 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Defendants, H. Dale Hall, in his official capacity as Director of the United States Fish and Wildlife Service, David M. Verhey, in his official capacity as Acting Assistant Secretary for Fish, Wildlife and Parks, and Dirk Kempthorne, in his official capacity as Secretary of the Interior, (collectively "Defendants," or "FWS") by and through undersigned counsel, hereby submit the following memorandum of law in opposition to Plaintiff's motion for summary judgment and in support of Defendants' cross-motion for summary judgment. For the reasons set forth below, Defendants' cross-motion for summary judgment should be granted, and Plaintiff's Amended Complaint should be dismissed.

## **INTRODUCTION**

The Endangered Species Act ("ESA") directs the Secretaries of the Interior and Commerce to conduct a review of listed species at least once every five years and to determine on the basis of this review whether the listing status of any species should be revisited. In 2004, FWS concluded a five-year review of the marbled murrelet in Washington, Oregon, and California ("three-state murrelet"), which FWS listed as "threatened" in 1992. FWS determined based on that review that there should be no change in status of the three-state murrelet pending the completion of a status review of the marbled murrelet range-wide, even though FWS found that the three-state murrelet did not meet the definition of a distinct population segment ("DPS") under the agency's 1996 DPS Policy. Plaintiff American Forest Resource Council ("Plaintiff," or "AFRC") brings both procedural and substantive claims against FWS's five-year review determination on the three-state murrelet. Plaintiff's substantive claim and one of its procedural claims should be dismissed because a five-year review determination is not a challengeable final agency action, and thus Plaintiff fails to state a claim upon which relief can be granted.

-1-

Plaintiff's other procedural claims should also be dismissed either because the five-year review

determination was appropriately signed by the Regional Director, a five-year review

determination is not a rulemaking, and the procedural statutes Plaintiff invokes do not apply.

Accordingly, the Court should deny Plaintiff's Motion for Summary Judgment, and grant

Defendants' Cross-Motion for Summary Judgment.

## **BACKGROUND**

## I.    STATUTORY AND REGULATORY BACKGROUND

The ESA, 16 U.S.C. §§ 1531 et seq., was enacted in 1973 "to provide a means whereby

the ecosystems upon which endangered species and threatened species depend may be

conserved, [and] to provide a program for the conservation of such endangered species and

threatened species . . ." 16 U.S.C. § 1531(b). Once a species is listed as endangered or

threatened, statutory prohibitions help ensure the survival and recovery of the species. See, e.g.,

16 U.S.C. § 1536 (federal agencies' duty to avoid jeopardizing listed species); § 1538

(prohibitions against take of listed species). According to the ESA, an endangered species is "in

danger of extinction throughout all or a significant portion of its range" while a threatened

species is "likely to become an endangered species within the foreseeable future throughout all

or a significant portion of its range." 16 U.S.C. § 1532(6), (20).

The ESA delegates the authority to determine whether to list a species[1] as endangered or

---

[1]  The ESA defines "species" to include subspecies and "any distinct population segment of any
species . . . which interbreeds when mature." 16 U.S.C. § 1532(16); 50 C.F.R. § 424.02(k). In
1996, FWS, along with the National Marine Fisheries Service, published a joint policy ("DPS
Policy") clarifying their interpretation of the term "distinct population segment." 61 Fed. Reg.
4722 (Feb. 7, 1996). The DPS Policy guides the evaluation of DPSs for the purposes of listing,
delisting, and reclassifying under section 4 of the ESA. Id. at 4725. Under the joint DPS Policy,
FWS evaluates three elements regarding the identification of a possible DPS: (1) the *discreteness*

threatened to the Secretaries of Commerce and Interior.[2]  Pursuant to Section 4(a)(1) of the ESA, the Secretary lists a species that he determines to be threatened or endangered because of one or more of five factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. 16 U.S.C. § 1533(a)(1).  The Secretary must make his decision whether to list a species

> solely on the basis of the best scientific and commercial data available to him after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State or foreign nation, or any political subdivision of a State or foreign nation, to protect such species, whether by predator control, protection of habitat and food supply, or other conservation practices, within any area under its jurisdiction, or on the high seas.

16 U.S.C. § 1533(b)(1)(A).

The Secretary may make this determination on his own initiative through the "candidate process" or in response to a petition of an interested person.  See 16 U.S.C. § 1533(a)(1), (b)(3)(A).  A petition to list or delist triggers a series of statutory deadlines for making findings as to whether the species warrants listing.  16 U.S.C. § 1533(b).  Within 90 days after receiving a petition to list or delist a species, the Secretary is required, "to the maximum extent practicable,"

---

of the population segment in relation to the remainder of the species to which it belongs; (2) the *significance* of the population segment to the species; and (3) the *conservation status* of the population segment in relation to the ESA's standards for listing. 61 Fed. Reg. at 4725.

[2]  Depending on the species in question, the "Secretary" referred to in the language of the Act may be the Secretary of the Interior or the Secretary of Commerce. 16 U.S.C. § 1532(15). The Secretary of the Interior has jurisdiction over the marbled murrelet. The U.S. Fish and Wildlife Service is the agency within the Department of Interior with delegated responsibility for administering the ESA with respect to those species within Interior's jurisdiction.

to make a finding as to whether the petition presents substantial scientific or commercial information indicating that the listing may be warranted ("90-day finding"). 16 U.S.C. § 1533(b)(3)(A). The Secretary is required to publish this finding in the Federal Register.  Id.  If the Secretary finds that substantial information indicates that listing or delisting may be warranted, he then has one year from the receipt of the petition to undertake a status review to determine if a listing or delisting action is warranted ("12-month finding"). 16 U.S.C. § 1533(b)(3)(B).  If the Secretary determines that the listing or delisting is warranted, he must publish a notice in the Federal Register that includes the complete text of a proposed rule to implement the action. 16 U.S.C. § 1533(b)(3)(B)(ii).  The Secretary must act on a proposed rule within one year of the date of its publication. 16 U.S.C. § 1533(b)(6)(A). At that point, he may promulgate a final rule, withdraw the proposed rule if he finds that there is not sufficient evidence to justify the proposed rule, or extend the one-year period for consideration by not more than six months if he finds that there is "substantial disagreement regarding the sufficiency or accuracy of the available data relevant to the determination or revision concerned . . . ." 16 U.S.C. § 1533(b)(6)(B)(i).

     At least once every five years, the Secretary must conduct a review of a listed species and determine whether a species should be removed from the list or changed in status from endangered to threatened or threatened to endangered.  16 U.S.C. § 1533(c)(2); see also 50 C.F.R. § 424.21.  The Secretary must make that determination in accordance with the five listing factors and on the basis of the best scientific and commercial data. 16 U.S.C. §§ 1533(c)(2), 1533(a)(1), 1533(b)(1); see also 50 C.F.R. § 424.11.  Nothing in the statute requires the Secretary to take further action as a result of a five-year review.  16 U.S.C. § 1533(c)(2); see also

FWS AR 354 ("the five year review does not have a statutory requirement to promptly publish a proposed regulation."). Similarly, the ESA regulations state that the Secretary "may" propose to delist or reclassify a species as a result of a five-year review. 50 C.F.R. § 424.16.

Section 11(g)(1)(C) provides a means for citizens to commence a civil suit to enforce certain provisions of the ESA. The ESA citizen-suit provision permits a civil action "where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." 16 U.S.C. § 1540(g)(1)(C). The statute goes on to provide that "[t]he district courts shall have jurisdiction . . . to enforce any such provision or regulation, or to order the Secretary to perform such act or duty, as the case may be." 16 U.S.C. § 1540(g)(1).

## II.     FACTUAL BACKGROUND

"The marbled murrelet (Brachyramphus marmoratus) is a small diving seabird that nests mainly in coniferous forests generally within 30 miles (50 km) of the coast and forages in near-shore marine habitats." AR 367. On January 15, 1988, the National Audubon Society submitted a petition to the FWS requesting that the marbled murrelet in California, Oregon, and Washington be listed as a threatened species under the ESA. AR 929. On October 17, 1988, FWS published a notice in the Federal Register announcing that the petition presented substantial information indicating that listing may be warranted. Id.

On June 20, 1991, FWS announced its 12-month finding, in which it concluded that listing was warranted in light of the analysis in its status review of the best available scientific and commercial information pertinent to the three-state murrelet. AR 930. FWS proposed to list the three-state population as threatened, explaining that "California, Oregon, and Washington

constitute a significant portion of the marbled murrelet's range.  In these states, the species is immediately threatened by the loss of nesting habitat (old-growth and mature forests)."  AR 932.

On July 9, 1992, after FWS had failed to issue a final listing determination on the species, conservation organizations in ongoing litigation over FWS's failure to complete the listing process, sought an order compelling FWS to do so.  AR 908.  On July 29, 1992, FWS published a notice announcing a six-month extension of the deadline for final action, citing disagreement over whether the three-state murrelet population constituted a DPS.  AR 908.  On September 17, 1992, the district court in Marbled Murrelet v. Lujan ordered FWS to submit a final determination on the proposed listing to the Federal Register by September 18, 1992.  AR 902-926.  The court ruled that FWS had no need for additional time to consider whether the three-state population constituted a DPS, because FWS had already concluded that the population constituted a significant portion of the marbled murrelet's range, and that the species was immediately threatened in that portion by loss of nesting habitat.  AR 913.

On October 1, 1992, FWS published a final rule listing the three-state murrelet as threatened.  AR 887.  In the final rule, FWS reiterated its conclusion that the three-state population constituted a significant portion of the species' range, stating: "The three states encompass roughly one-third of the geographic area occupied by this subspecies, comprising a significant portion of its range. The amount of nesting habitat has undergone a tremendous decline since the late 1800s (most of which has taken place during the last 20 to 30 years), especially in the coastal areas of all three states."  AR 889.  However, FWS indicated that some uncertainty remained regarding whether the population was a DPS.  Id.  Consequently, FWS stated that it intended to reexamine the basis for recognizing the three-state population as a

species, and would announce the results of this review within 90 days.  Id.  However, FWS did

not conduct this reexamination.  AR 326.

AFRC sued FWS in 2002 to compel FWS to conduct a five-year review of the three-state

murrelet.  Amended Complaint (Doc. No. 4), ¶ 17; Answer (Doc. No. 6), ¶ 17.  In January 2003,

the parties entered into a settlement in which FWS agreed to complete the status review by

December 31, 2003.  AR 878, 880.  The agreement did not require that FWS issue a draft report

on the five-year review for public comment before issuing a final report.  Id.

On April 21, 2003, FWS published a notice in the Federal Register announcing that the

five-year review was underway, and inviting the public to submit relevant information.  AR 875.

On June 20, 2003, AFRC submitted comments to FWS.  AR 863.

Also on June 20, 2003, FWS and AFRC agreed to amend the settlement agreement to

extend the deadline for completing the five-year review to April 30, 2004.  AR 872.  Again, the

agreement did not require that FWS issue a draft report on the five-year review for public

comment before issuing a final report.  Id.

On July 25, 2003, FWS published a second notice in the Federal Register inviting the

public to submit information relevant to the five-year review.  AR 861.  On August 20, 2003,

AFRC submitted a second set of comments to FWS.  AR 733, 749, 794.  In those comments,

AFRC acknowledged that "FWS could consider a range of options" if FWS concluded that the

three-state population did not constitute a valid DPS.  AR 783.  AFRC acknowledged that these

options could permit FWS to "provide ESA protection for the same or a larger group of marbled

murrelets under a different legal rationale and a new rulemaking."  AR 783-784.  According to

AFRC, these options included: (a) identifying some population or populations of marbled

murrelets that qualify as a DPS (AR 786); (b) considering whether the entire subspecies is threatened or endangered throughout its range (AR 786); (c) listing the subspecies range-wide on the grounds that the three-state population is a significant portion of the subspecies' range (AR 788); and (d) concluding that the three-state population constitutes a significant portion of the subspecies' range, but only listing the murrelet in that area, rather than range-wide. AR 790. AFRC presented arguments against adopting each of these options. AR 783-790.

In March 2004, a FWS consultant, EDAW, Inc., completed a report on the status of the marbled murrelet in the three-state area. AR 363. To prepare the report, EDAW assembled a panel of seven scientific experts to review all relevant data on the three-state murrelet population. AR 384-385. The EDAW expert panel concluded that marbled murrelet populations in Washington, Oregon, and California are continuing to decline. AR 672. The EDAW report also noted that there were significant declines in the murrelet populations in Alaska and British Columbia. AR 425. EDAW analyzed data on genetic variations among marbled murrelet populations, and concluded that there was strong support for finding that murrelets constitute three genetically distinct populations, with most birds from California forming a "distinct cluster." AR 429.

On May 19, 2004, FWS and AFRC agreed to amend the settlement agreement a second time, extending the deadline for completing the five-year review to August 31, 2004. AR 349. As with previous versions, the agreement did not require that FWS issue a draft report on the five-year review for public comment before issuing a final report. Id.

FWS completed its report on the five-year review on August 31, 2004, and the FWS Regional Director indicated his concurrence with its conclusions by signing it on September 1,

2004.  AR 321, 348.  The Regional Director had the authority to make determinations on five-

year reviews pursuant to an April 19, 1995 delegation from the Director.  AR 884; see also AR

352, 359.

In the five-year review report, FWS concluded that "[t]he threat situation has not changed

such that the murrelet DPS is no longer likely to become an endangered species within the

foreseeable future throughout all or a significant portion of its range."  AR 341.  However, FWS

also concluded that the three-state murrelet did not qualify as a DPS under FWS's "Policy

Regarding the Recognition of Distinct Vertebrate Population Segments under the Endangered

Species Act," (61 Fed. Reg. 4722, Feb. 7, 1996) ("DPS Policy"), because the population was not

"discrete," based on biological or legal factors, from those in Canada.  AR 335-336.  FWS

determined that there would be no change in the species' status pending completion of a range-

wide status review.  AR 348.

On September 1, 2004, the Regional Director sent a letter to AFRC's attorney, advising

him that FWS had completed the five-year review and determined that the listed population was

not a valid DPS, but that the species would remain listed pending FWS's completion of a range-

wide review to determine whether the marbled murrelet is in danger of extinction throughout all

or a significant portion of its range.  AR 320.

On September 24, 2004, FWS notified the district court that it had completed the five-

year review in compliance with the settlement agreement with AFRC.  AR 315.  AFRC raised no

objection to FWS's notice.

FWS then initiated its range-wide review of the marbled murrelet.  As part of this effort,

FWS requested that the U.S. Geological Survey ("USGS") evaluate the status of the subspecies

in Alaska and British Columbia.  AR 55.  In January 2007, USGS issued a detailed report

analyzing population trends and genetic studies on the murrelet in Alaska and British Columbia.

AR 39-314.  USGS reported that population survey data indicate a "rapid and widespread

decline" in marbled murrelet populations throughout Alaska, and estimated a decline of 71% in

the past 20 years.  AR 100, 103, 197.  USGS reported that the population data for British

Columbia was very limited, but the available studies reported "high rates of decline" and

"indicate a potentially serious problem for the populations that they represent."  AR 107.  USGS

also reported that the available data on the genetic structure of the marbled murrelet indicates

that it is comprised of three genetic units: (1) western and central Aleutian Islands; (2) eastern

Aleutian Islands to northern California; and (3) central California.  AR 97.

Neither AFRC nor any other person or organization has petitioned FWS to delist the

three-state murrelet population.

## STANDARD OF REVIEW

Summary judgment may be granted to a moving party when it shows that there are no

material facts in dispute and that the moving party is entitled to judgment as a matter of law.  See

Fed. R. Civ. P. 56(c); Celotex v. Catrett, 477 U.S. 317 (1986).  Summary judgment should be

denied where the non-moving party has not demonstrated that it is entitled to judgment as a

matter of law, or where the nonmoving party sets forth specific facts showing there is genuine

issue of material fact in dispute.  Celotex v. Catrett, 477 U.S. at 323-25; Marshall v. Labor &

Indus., State of Washington, 89 F. Supp. 2d 4, 8 (D.D.C. 2000).   Material facts are those "that

might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, 477

U.S. 242, 248 (1986).  In deciding whether the summary judgment burden has been met, "the

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his

favor." Id. at 255;  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (all evidence and the

inferences drawn thereon must be viewed in the light most favorable to the non-moving party).

## ARGUMENT

I.    **FWS'S DETERMINATION TO MAINTAIN THE LISTING OF THE THREE-STATE MURRELET IS NOT A CHALLENGEABLE FINAL AGENCY ACTION, BUT EVEN IF IT WERE, THE DETERMINATION IS REASONABLE AND SUPPORTED BY THE RECORD.**

   A.    **FWS's Determinations Under ESA § 4(c)(2) Are Not Challengeable Final Agency Actions.**

Defendants are entitled to judgment as a matter of law on Plaintiff's Fourth Claim for

Relief because a five-year review determination is not a challengeable final agency action, and

thus Plaintiff has failed to state a claim for which relief can be granted.  Trudeau v. Federal

Trade Commission, 456 F.3d 178, 185 (D.C. Cir. 2006); Nat'l Ass'n of Home Builders v.

Norton, 298 F. Supp. 2d 68, 75 (D.D.C. 2003) aff'd, 415 F.3d 8 (D.C. Cir. 2005) (citing 5 U.S.C.

§§ 702, 704) ("The APA provides for judicial review only of 'agency action' that is 'final.'").

"Agency action" subject to the act is defined as "the whole or a part of an agency rule,

order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. §

551(13).  Each of these categories of "agency action" "involve circumscribed, discrete agency

actions, as their definitions make clear."  Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 62

(2004); id. at 63 (failure to act "is properly understood to be limited, as are the other items in §

551(13) to a *discrete* action") (emphasis in original).

Section 704 of the APA requires that the agency action in question be final before a party

may seek judicial review.  5 U.S.C. § 704.  The Supreme Court has established a two-part test to

determine when an agency action is reviewable as "final."  Bennett v. Spear, 520 U.S. 154, 177-78 (1997).  First, the action under review must mark the consummation of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature.  Id. Second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.  Id.  Application of these principles to this matter illustrates that a five-year review determination is not final agency action within the meaning of the APA.

There are four possible five-year review determinations FWS can make.  FWS can determine that a listed species:  (1) should not be removed from the list; (2) should be removed from the list ("delisted"); (3) should be changed in status from an endangered species to a threatened species ("downlisted"); or (4) should be changed in status from a threatened species to an endangered species ("uplisted").  16 U.S.C. § 1533(c)(2)(B)(i)-(iii).  None of these determinations constitutes "final agency action."

A delisting, downlisting, or uplisting determination (options (2)-(4) above) is not "final agency action" because each is just a recommendation for future action from which no legal consequences flow.  AR 352 ("Changes in classification recommended in a 5-year review include delisting, reclassification from threatened to endangered, or reclassification from endangered to threatened."), AR 354 ("The 5-year review is not itself a rule-making, but it does provide a 'determination' of whether or not a change in classification is warranted.  In contrast to a positive 12-month finding, the 5-year review does not have a statutory requirement to promptly publish a proposed regulation.").  This interpretation is supported by the language of the statute itself, which requires the Secretary to "determine on the basis of [a five-year] review whether [a] species should" be delisted, uplisted, or downlisted.  16 U.S.C. § 1533(c)(2)(B) (emphasis

-12-

added).  By using the word "should," Congress clearly intended that a five-year review

determination be a recommendation for future action, not the end of the process.  Similarly, the

ESA regulations indicate that FWS has discretion whether to propose a change in status as a

result of a five-year review.  50 C.F.R. § 424.16 ("Based on the information received through . . .

[§] 424.21 [(five-year review requirement)], or through other available avenues, the Secretary

may propose revising the lists as described in § 424.10.") (emphasis added).

Furthermore, there is no guarantee that the result of any rulemaking process will be to

adopt the recommended change in status.  Any change in status would require a full rulemaking,

the outcome of which cannot be predicted.  These characteristics are not the hallmarks of "final

agency action," but instead indicate a five-year review determination to delist, uplist, or downlist

is merely "interlocutory in nature, and not the culmination of a decision-making process."

Wyoming v. U.S. Dep't of the Interior, 360 F. Supp. 2d 1214, 1227 (D. Wyo.), aff'd 442 F.3d

1262 (10th Cir. 2006) (holding a FWS letter to the State of Wyoming stating that delisting of

wolf under ESA "cannot be proposed at this time" did not constitute final agency action subject

to challenge under APA); see also In re Bluewater Network, 234 F.3d 1305, 1313 (D.C. Cir.

2000) ("[A]n agency's pronouncement of its intent to defer or to engage in future rulemaking

generally does not constitute final agency action reviewable by this court."); DRG Funding

Corp. v. Sec'y of Housing & Urban Dev., 76 F.3d 1212, 1215 (D.C. Cir. 1996) ("When

completion of an agency's processes may obviate the need for judicial review, it is a good sign

that an intermediate agency decision is not final.").

The fourth possible five-year review determination, which is the determination at issue in

this case, that a listed species should not be removed from the lists also is not final agency

action.[3]  Although a determination not to remove a species from the lists may be the end of the

five-year review process, there is no change in the species status.  A determination to maintain

the status quo is not challengeable final agency action because it cannot "be fairly described as

implementing, interpreting, or prescribing law or policy," and it does not change any existing

legal obligations.  Indep. Equip. Dealers Ass'n v. EPA, 372 F.3d 420, 428 (D.C. Cir. 2004);

Nat'l Ass'n of Home Builders v. Norton, 415 F.3d 8, 15 (D.C. Cir. 2005) ("[I]f the practical

effect of the agency action is not a certain change in the legal obligations of a party, the action is

non-final for the purpose of judicial review.").

Finally, further support for the conclusion that five-year review determinations are not

"final agency" comes from the fact that the ESA itself does not provide for judicial review of

such determinations.  In other sections of the ESA, judicial review is expressly provided for.

Particularly relevant here, judicial review is provided for where FWS makes a negative 90-day

or 12-month finding on a petition, or where FWS, via the petition process or as a result of a

proposal made on its own initiative, withdraws a proposed rule to list, delist, uplist, or downlist a

species.  16 U.S.C. § 1533(b)(3)(C)(ii), (b)(6)(B)(ii).  The lack of a judicial review provision

with respect to five-year review determinations is evidence that Congress did not intend that

FWS could be challenged for such determinations.  Indep. Ins. Agents of Am. v. Hawke, 211

F.3d 638, 644 (D.C. Cir. 2000) (in appropriate context, *expressio unius est exclusio alterius*

canon is useful tool to show that special mention in one part of statute indicates absence in

---

[3] In this case, FWS determined that the marbled murrelet should not be removed from the list of threatened species, but also stated that "[t]here will be no change in the species status pending the completion of a range-wide status review."  AR 348.  While the second statement might be perceived as an indication that the determination was not complete, this is incorrect.  The range-wide status review is a separate process from the five-year review.

another part of statute was intentional exclusion).  Instead, Congress intended that such

determinations could be challenged through either a FWS-initiated proposal to delist, uplist, or

downlist a species, or FWS's response to a petition to delist, uplist, or downlist a species.[4/]

Thus while these determinations may be a step in the process of changing the species'

status, they are preliminary and not the consummation of the agency's process.  Moreover, if

these findings could be considered the consummation of the five-year review process, they do

not determine rights or obligations or change the legal effect of the species' listing.  In sum, a

five-year review determination is not final agency action, as defined by the APA.  Therefore,

Plaintiff's Fourth Claim for Relief fails to state a claim on which relief may be granted and

should be dismissed.   Trudeau, 456 F.3d at 185.

### B.      Even if the Determination is Final Agency Action, it is Reasonable and Supported by the Administrative Record.

Even if the Court were to find that FWS's determination made pursuant to ESA §

4(c)(2)(B) is challengeable "final agency action," FWS's determination here – to maintain the

status quo pending a range-wide status review – was reasonable and is supported by the

administrative record.  The fact that FWS found that the three-state murrelet is not a DPS under

the 1996 DPS Policy does not, as Plaintiff would have this Court believe, mean the population is

"not legally eligible for listing" or render arbitrary and capricious FWS's determination that the

population should remain listed.  As Plaintiff itself has conceded, AR 790, the three-state

population of marbled murrelet may be listable as a "significant portion of the range."  Thus, as

there is an independent basis, supported by the record, for FWS's expert determination that there

---

[4/] Neither AFRC nor any other person or organization has petitioned FWS to delist the three-state murrelet population.

should be no change in the status of the three-state murrelet, the Court should not disturb that

determination. Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, 462 U.S. 87, 103 (1983)

("a reviewing court must generally be at its most deferential" where scientific expertise is

involved in agency decision-making, especially in the context of prediction).

     In arguing that the three-state murrelet is not a listable entity, Plaintiff presumes that the

bird cannot remain listed unless it is a DPS.  This is incorrect.  The ESA provides other possible

bases for listing the species.  The Act provides that FWS may list any "species," which the Act

defines to include "any subspecies of fish or wildlife or plants, and any distinct population

segment of any species of vertebrate fish or wildlife which interbreeds when mature."  16 U.S.C.

§ 1532(16).  The Act in turn defines a "threatened" species as one that  "is likely to become an

endangered species within the foreseeable future throughout all or a significant portion of its

range."  16 U.S.C. § 1532(20).  Thus, even if the three-state population of marbled murrelets

does not constitute a DPS, there may be other possible DPS delineations of which this population

is a part, or it may be that the species is at risk in all or a significant portion of its range.  See

Defenders of Wildlife v. Norton, 258 F.3d 1136, 1145 (9th Cir. 2001).

     The history of the listing of the marbled murrelet demonstrates why the matter is more

complex than Plaintiff would have the Court believe.  In Marbled Murrelet v. Lujan, No. C91-

522R (W.D. Wash., Sept. 17, 1992), AR 902, environmental organizations sued to compel FWS

to make a final determination on the proposed listing of the three-state population of the marbled

murrelet.  FWS argued that it needed a six-month extension on the deadline for the finding in

order to resolve a scientific dispute over whether the population constituted a DPS.  Plaintiffs

argued that listing of the three-state population was permissible regardless of whether it

constituted a DPS, because FWS had already found that the population occupied a significant

portion of the species' range, and the population was threatened.

The district court agreed with the plaintiffs, holding that, because FWS had previously

concluded that the three-state area constituted a significant portion of the species' range, and that

it was threatened in that area, "there is no need to consider the alternative basis of whether the

tri-state population is a distinct population segment which might qualify for protection under the

ESA." AR 913.

Indeed, FWS discussed these issues when it issued the final determination listing the

three-state murrelet as threatened. AR 887. In the final rule, FWS reiterated its conclusion that

the three-state population constituted a significant portion of the species' range, stating:

> The three states encompass roughly one-third of the geographic area occupied by
> this subspecies, comprising a significant portion of its range. The amount of
> nesting habitat has undergone a tremendous decline since the late 1800s (most of
> which has taken place during the last 20 to 30 years), especially in the coastal
> areas of all three states.

AR 889. One purpose of FWS's ongoing range-wide status review is to determine whether the

three-state murrelet population, or any other murrelet population, constitutes a significant portion

of the species' range that warrants listing.[5] AR 320.

Plaintiff concedes that FWS listed the three-state murrelet before FWS issued its DPS

policy. Statement of Points and Authorities in Support of Plaintiff's Motion for Summary

Judgment (Doc. No. 20) ("Plf's Memo") at 8. Nevertheless, Plaintiff argues that "[l]isting a

population of fish or wildlife in violation of the DPS Policy is unlawful." Plf's Memo at 14

---

[5] FWS's determination that it must address this issue is consistent with the Department of the
Interior Solicitor's recent legal opinion to the Director of FWS regarding "The Meaning of 'In
Danger of Extinction Throughout All or a Significant Portion of its Range'" in the ESA. AR 3.

(citing <u>Nat'l Ass'n of Home Builders v. Norton</u>, 340 F.3d 835, 851 (9th Cir. 2003) and <u>Nat'l Wildlife Fed'n v. Norton</u>, 386 F. Supp. 2d 553, 565 (D. Vt. 2005)).  The cases Plaintiff cites are inapposite because the original listing could not be in violation of a policy that did not exist, and the cases do not stand for the proposition that keeping a species listed that FWS later determined was not a DPS is unlawful.

Moreover, when it filed its comments regarding the five-year review, Plaintiff itself acknowledged that "FWS could consider a range of options" if FWS concluded that the three-state population did not constitute a valid DPS.  AR 783.  Plaintiff acknowledged that these options could permit FWS to "provide ESA protection for the same or a larger group of marbled murrelets under a different legal rationale and a new rulemaking."  AR 783-784.  According to Plaintiff, these options included listing the subspecies range-wide on the grounds that the three-state population is a significant portion of the subspecies' range (AR 788), and concluding that the three-state population constitutes a significant portion of the subspecies' range, but only listing the murrelet in that area, rather than range-wide (AR 790).

Further support for FWS's decision not to change the status of the three-state murrelet is provided by the consultant report FWS contracted for as part of the five-year review process.  The expert panel assembled to review all relevant data on the three-state murrelet concluded that marbled murrelet populations in Washington, Oregon, and California are continuing to decline.  AR 672.  The report also noted declines in the entire range of the marbled murrelet.  AR 425.

FWS's decision to leave the marbled murrelet listed as a threatened species protected by the ESA is also supported by its analysis in the five-year review.  FWS's analysis in the five-year review encompassed much more than the issue of whether the marbled murrelet is a DPS

-18-

according to the 1996 DPS Policy. In fact, FWS explicitly stated that the recovery criteria for delisting had not been met. AR 337; <u>see also</u> 50 C.F.R. § 424.11(d). Further, FWS analyzed the five listing factors set forth in Section 4(a) and concluded that "[t]he threat situation has not changed such that the murrelet DPS is no longer likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." AR 341.

Finally, FWS's determination is supported by the USGS report prepared as part of the ongoing range-wide review of the species, which indicates a "rapid and widespread decline" in marbled murrelet populations throughout Alaska, AR 100, 103, 197, and "high rates of decline" in marbled murrelet populations in British Columbia, AR 107. In sum, this history indicates that the DPS question is but one factor that is relevant to the question of whether the three-state population of marbled murrelet should remain listed. Equally important is whether the three-state murrelet population is listable as threatened because it is "likely to become an endangered species within the foreseeable future [in a] significant portion of its range." 16 U.S.C. § 1531(20). Consequently, the Court should uphold FWS's determination as reasonable and supported by the record. <u>Marsh v. Oregon Natural Resources Council</u>, 490 U.S. 360, 377 (1989); <u>Baltimore Gas & Elec. Co.</u>, 462 U.S. at 105.

## II.    REGIONAL DIRECTOR ALLEN APPROPRIATELY SIGNED THE THREE-STATE MURRELET FIVE-YEAR REVIEW DETERMINATION.

Although Plaintiff has conceded that FWS completed its five-year review determination on the marbled murrelet, it persists in its erroneous allegation that the determination is invalid because the signatory, Regional Director David Allen, allegedly has not been delegated the authority from the Director of FWS to sign such documents. Plf's Memo at 20-21. Even if Plaintiff has not conceded this claim in full, Plaintiff's First Claim for Relief should be dismissed

because Regional Directors have been delegated the authority to sign five-year review determinations.

In both its summary judgment memorandum and in a recent filing in another court, Plaintiff has conceded that FWS completed its five-year review determination on the three-state marbled murrelet on August 31, 2004. Plf's Memo at 11 ("While the Status Review does not expressly state that it contains the determination required under §4(c)(2)(B), in 2006 FWS clarified that a determination under §4(c)(2)(B) was made in the Status Review."); AR 2 (stating in a stipulation filed with the U.S. District Court for the District of Oregon on July 24, 2007 that [t]he status review was completed in 2004."). Accordingly, the Court should dismiss Plaintiff's First Claim for Relief on this basis alone. Nat'l Leased Housing Ass'n v. HUD, No. 03-1509 (CKK) 2007 WL 148829, at *20 (D.D.C. Jan. 16, 2007) (dismissing a claim where it appeared plaintiffs conceded the claim in their own filings).

Even if the Court does not dismiss this claim as conceded, it should dismiss the claim as meritless. The FWS Manual indicates that "Regional Directors may exercise all the authority of the Director for the conduct of Service ecological services programs,[9] except as indicated below." Fish and Wildlife Service Manual Part 032, Section 5.1; AR 884; see also AR 359. Five-year reviews are not excepted. Id. at Section 5.4.A; AR 886. Thus the Regional Director had delegated authority to sign the three-state murrelet five-year review determination.

---

[9] "[E]cological services programs" include endangered species, environmental contaminants, forest resources, and habitat conservation. See, e.g., FWS Pacific Region website at http://www.fws.gov/pacific/organization.cfm. Endangered species programs include conservation planning, consultation, classification, and recovery. http://www.fws.gov/pacific/ecoservices/endangered/index.html. As part of its work on recovery, FWS conducts five-year reviews and makes five-year review determinations. http://www.fws.gov/pacific/ecoservices/endangered/recovery/index.html.

Citing to FWS's Endangered Species Listing Handbook, Plaintiff argues that Regional Director David Allen could not sign the five-year review determination for the three-state marbled murrelet because "[t]he Secretary of Interior has delegated listing authority to just . . . the Assistant Secretary for Fish and Wildlife and Parks and the Director of the U.S. Fish and Wildlife Service." Plf's Memo at 20. Plaintiff's citation to the Listing Handbook is irrelevant because it applies, if at all, only when FWS has made a determination to add a species to either of the lists, not to five-year review determinations.

Nor is Plaintiff's argument supported by its citation to the rulemaking section of the Fish and Wildlife Service Manual. The section of the Manual Plaintiff cites, Plf's Memo at 20, is inapplicable to five-year review determinations, as such determinations are not required to be published in the Code of Federal Regulations. See infra Section III (a five-year review is not a rulemaking). As explained above, the correct section of the Manual clearly supports Defendants' position that Regional Directors have delegated authority to sign five-year review determinations. Thus, Regional Director Allen appropriately signed the five-year review determination for the marbled murrelet challenged here, and Plaintiff's First Claim for Relief should be dismissed.

III. **THE ESA DOES NOT REQUIRE FWS TO PROCEED BY REGULATION OR FOLLOW THE RULEMAKING PROCEDURES OF 5 U.S.C. § 553 WHEN IT MAKES A FIVE-YEAR REVIEW DETERMINATION.**

A. **Analyzing the Relevant Provisions of the ESA Under Chevron Demonstrates that FWS Was Not Required to Proceed "By Regulation" or Follow the Rulemaking Requirements of the APA.**

In its Third Claim for Relief, Plaintiff argues that the ESA requires FWS to engage in notice and comment rulemaking when it makes a five-year review determination. Plaintiff has

misread the language of the ESA.  ESA Section 4(c)(2) provides that "[e]ach determination

under subparagraph (B) shall be made in accordance with subsections (a) and (b) of this section."

16 U.S.C. § 1533(c)(2).  The determinations referred to are whether a species should be (i)

removed from the list, (ii) changed in status from endangered to threatened, or (iii) changed in

status from threatened to endangered.  16 U.S.C. § 1533(c)(2)(B).  It is clear from the language

and structure of the statute as well as the legislative history that the notice and comment

rulemaking requirements found in subsection (b) of Section 4 do not apply to the five-year

review determination, but apply if FWS implements a subsequent change in listing status as a

result of the five-year review.  Plaintiff cannot support its claim that FWS must engage in the

arduous process notice and comment rulemaking every five years for every species on the list

only to make preliminary determinations about whether a change in listing status should be

proposed.

     As this is a matter of statutory interpretation, the framework of <u>Chevron U.S.A. v.</u>

<u>Natural Resources Defense Council</u>, 467 U.S. 837 (1984), applies.  Under step one of the

<u>Chevron</u> analysis the court asks "whether Congress has directly spoken to the precise question at

issue," for if "the intent of Congress is clear, that is the end of the matter . . . the court, as well as

the agency, must give effect to the unambiguously expressed intent of Congress."  <u>Chevron</u>, 467

U.S. at 842-843.  Here Plaintiff's argument fails because the ESA does not demonstrate

Congress' intent that five-year review determinations were to be issued as regulations, after

notice and comment.

     ESA Section 4(a) sets forth five factors by which listing determinations and critical

habitat designations are made.  It is clear that Congress intended that in making five-year review

determinations, FWS is to use the same factors to recommend a change to any listing since those

factors were used in conferring initial threatened or endangered status.  Section 4(b), however, is

extensive and includes a number of requirements that do not, by their terms, apply to five year

review determinations.  Sections 4(b)(1) and 4(b)(2) set out scientific and data standards which,

like the listing factors in Section 4(a), are clearly requirements that also apply to five-year

review determinations.  The remaining provisions of Section 4(b) do not apply to five year

review determinations because, by their terms, they apply to responding to petitions of interested

parties to either add or remove species from the lists, 16 U.S.C. § 1533(b)(3), or they apply to

"regulations proposed by the Secretary to <u>implement</u>, a determination, designation or revision"

listing (or delisting) a species or designating critical habitat, 16 U.S.C. § 1533(b)(4)-(8)

(emphasis added).  Nowhere in Section 4(b) does Congress include five-year review

determinations among those categories of activities that must be conducted according to APA

rulemaking.  This makes sense because a five-year review does not implement a determination,

designation, or revision.  The five-year review determination may result in the FWS later

undertaking an effort to implement such a change, but the review itself does not.

   In particular, Section 4(a), of which only subsection 4(a)(1) applies here, states that "[t]he

Secretary shall by regulation promulgated in accordance with subsection (b) of this section

determine whether any species is an endangered species or a threatened species because of any

of the following [five] factors."  16 U.S.C. § 1533(a)(1).  Plaintiff focuses on the words "by

regulation," Plf's Memo at 17, but ignores the fact that the rest of the phrase states that FWS

must proceed "by regulation" only when it is determining whether to add a species to either the

threatened or endangered list, not when it makes a preliminary recommendation on the status of

a species that is already listed.

This reading is buttressed by the legislative history, in which Congress stated when it added the five-year review provision to the ESA that "[a]ny determinations made pursuant to this review must be made in accordance <u>with the criteria</u> described in section 4(a) of the Act." 1978 H.R. Rep. 95-1625, 1978 U.S.C.C.A.N. 9453, 9467 (Sept. 25, 1978) (emphasis added). Similarly, Congress stated that ESA section 4(a)(1) "requires that <u>the listing</u> of any species as threatened or endangered is to be carried out by regulation published in the Federal Register." <u>Id.</u> at 9466 (emphasis added).

Since FWS is not required to proceed "by regulation" when it makes a five-year review determination, it is also not required to follow the provisions of APA § 553, because that requirement only applies "to any regulation promulgated to carry out the purposes of this [Act]." 16 U.S.C. § 1533(b)(4). This conclusion is supported by the fact that when Congress added the five-year review provision to the ESA, subsection (b)(4) was not yet part of the Act. 16 U.S.C. § 1533(b) (1978) (attached hereto as Exhibit 1). Thus, Congress could not have intended FWS to follow the rulemaking requirements of APA § 553 since when it mandated that five-year review determinations "be made in accordance with the provisions of subsection . . . (b)," that provision was not part of subsection (b).

Furthermore, even if a plain reading of the statute supported Plaintiff's argument, the Court should decline to impose these requirements on five-year review determinations because to do so would lead to absurd results contrary to Congress's intent. As the D.C. Circuit has stated, "[i]f the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, the intention of the drafters, rather than the strict language, controls."

-24-

Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1069 (D.C. Cir. 1998) (internal quotations and

citations omitted).  Here, FWS's five-year review determination was that there should be no

change in the status of the three-state murrelet.  Requiring FWS to follow rulemaking

requirements and issue another regulation to be published in the Code of Federal Regulations

saying that the three-state murrelet is listed as threatened would be meaningless and a waste of

agency time and resources.[7]  Therefore, if the mandate that a five-year review determination be

made in accordance with sections 4(a) and (b) directs FWS to proceed by regulation and through

rulemaking, this requirement must mean that when FWS's five-year review determination is that

it should change the status of a listed species, FWS must follow these requirements when it

proposes to implement such a change.

        Were the Court to find it necessary to analyze these provisions under Chevron step two,

the agency's interpretation that five-year review determinations are not rulemakings constitutes a

reasonable construction of the text and legislative intent.  Barnhart v. Thomas, 540 U.S. 20, 26

(2003).  FWS's longstanding interpretation, as embodied in a draft guidance document, is that a

five-year review determination is based on a review of the best scientific and commercial data

available on a species, as required by ESA section 4(b), and an analysis of this data relative to

the five factors cited in section 4(a)(1), and does not involve rulemaking, but indicates whether

rulemaking is necessary.  AR 352, 354, 359.  FWS's interpretation is a permissible construction

of the statute, reasonable, consistent with Congressional intent, as discussed above, and entitled

---

[7] Moreover, taking Plaintiff's argument to its logical conclusion would result in a requirement
that FWS repromulgate the listings for all threatened and endangered species every five years.
See http://ecos.fws.gov/tess_public/Boxscore.do (table summarizing the number of species listed
by category).

to deference.  Mylan Laboratories v. Thompson, 389 F.3d 1272, 1279-80 (D.C. Cir. 2004).

    **B.    Any Procedural Error Was Harmless.**

    As explained above, FWS did not commit procedural error when it issued a five-year

review determination without following the rulemaking requirements of APA § 553 and without

proceeding "by regulation."  Even if the Court were to find, however, that FWS did commit

error, the error was harmless and, consequently, does not warrant reversal of FWS's decision.

    "The harmless error rule is incorporated in the judicial review section of the

Administrative Procedure Act . . . ."  Intercargo Ins. Co. v. United States, 83 F.3d 391, 394 (Fed.

Cir. 1996); Nevada v. Dep't of Energy, 457 F.3d 78, 90 (D.C. Cir. 2006) (court review under

APA "'shall' take account of 'the rule of prejudicial error,' 5 U.S.C. § 706, that is, whether the

error caused prejudice.").  Under this principle, a court should not reverse an agency if its

mistake is one that "'clearly had no bearing on the procedure used or the substance of the

decision reached.'"  Chemical Mfrs. Ass'n v. EPA, 870 F.2d 177, 202 (5th Cir. 1989) (quoting

U.S. Steel Corp. v. EPA, 595 F.2d 207, 215 (5th Cir. 1979)).  "This Court, however, will

invalidate agency action because of procedural error only if the error is so serious and related to

matters of such central relevance to the rule that there is a substantial likelihood that the rule

would have been significantly changed if such error had not been made." West Virginia v. EPA,

362 F.3d 861, 869 (D.C. Cir. 2004) (internal quotations and citation omitted).

    In this case, Plaintiff has proffered no evidence to show that FWS's alleged failure to

proceed "by regulation" or to follow the rulemaking requirements of the APA meets this

standard.  Indeed, Plaintiff can provide no such evidence because it was given sufficient

opportunity to shape the process and provide comments to FWS on the five-year review and thus

the outcome of the agency's determination would not have changed.

FWS agreed to complete the five-year review of the three-state murrelet as a result of a settlement agreement entered into with AFRC in January 2003. AR 878, 880. The agreement did not require that FWS issue a draft report on the five-year review for public comment before issuing a final report. Id. FWS then published a notice in the Federal Register announcing that the five-year review was underway, and inviting the public to submit relevant information. AR 875. AFRC submitted comments to FWS regarding the five-year review in response to this request for comments. AR 863. Subsequently, after FWS and AFRC agreed to amend the settlement agreement to extend the deadline for completing the five-year review, AR 872, FWS published a second notice in the Federal Register inviting the public to submit information relevant to the five-year review, AR 861. AFRC submitted a second set of comments to FWS regarding the five-year review. AR 733, 749, 794.

In sum, since Plaintiff had sufficient opportunity to provide comment on FWS's five-year review process and since there is no likelihood that the five-year review determination would have been any different, there would be no point to attempt to correct FWS's action after the fact by remanding the decision to the agency to follow the rulemaking requirements of the APA or to proceed by regulation to see if Plaintiff's comments would affect the agency's decision. See Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 654 (1990) (if agency's error is not harmless, "preferred course" is remand to agency for necessary explanation). Accordingly, to the extent FWS was required to proceed by regulation or comply with APA § 553, its failure to do so was harmless within the meaning of APA § 706.

## IV.    NEPA DOES NOT APPLY.

-27-

To the extent that Plaintiff has not conceded its NEPA claim by relegating it to a footnote, Plf's Memo at 19 n.4, there are two bases on which the Court should find that NEPA does not apply to five-year reviews and dismiss Plaintiff's Sixth Claim for Relief. First, NEPA does not apply to five-year review determinations because FWS is required to consider only the five listing factors enumerated in ESA § 4(a)(1) in making such determinations. Furthermore, NEPA does not apply where an agency's decision is to maintain the status quo, which is the situation with the five-year review determination for the three-state murrelet.

Courts have held that NEPA does not apply to listing determinations and the same logic applies to five-year reviews, as FWS may only consider the listing factors enumerated in ESA § 4(a)(1) in making both types of determinations. Pacific Legal Found. v. Andrus, 657 F.2d 829, 835-840 (6th Cir. 1981) ("PLF"); see also Trout Unlimited v. Lohn, No. CV05-1128-JCC, 2007 WL 1730090, at *13 (D. Or. June 13, 2007) (holding the reasoning of PLF equally applicable to a NMFS guidance document designed to help the Secretary of Commerce make listing determinations). In PLF, the Sixth Circuit held that listing determinations under the ESA are exempt from the procedural requirements of NEPA because FWS is required to consider only the statutorily-enumerated factors in determinating whether to list a species, which are different from the factors to be considered in preparing environmental impact statements.[9] PLF, 657 F.2d

---

[9] The ESA requires the Secretary to determine whether a species is endangered or threatened because of any of the following: "(A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." 16 U.S.C. § 1533(a)(1). NEPA, in contrast, requires that an environmental impact statement consider: "(i) the environmental impact of the proposed action, (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented, (iii) alternatives to the proposed action, (iv) the relationship between local short-term uses of man's environment and

-28-

at 835.   Accordingly, the Court found it would be a fruitless exercise to make FWS comply with

NEPA when it makes listing determinations.  Id. at 836.

The same logic applies equally to five-year review determinations.   As with listing

determinations, FWS is directed to consider only the five statutorily-enumerated factors listed in

ESA § 4(a)(1) in making five-year review determinations.  16 U.S.C. § 1533(c)(2) (requiring

five-year review determinations to "be made in accordance with the provisions of subsection (a)

and (b).").  Thus, as with listing determinations, requiring FWS to comply with NEPA when it

makes five-year review determinations would be a waste of the agency's limited resources and

the Court should find NEPA does not apply to five-year review determinations.

Even if the Court were to find the logic of PLF does not extend to five-year review

determinations, there is another basis for the Court to dismiss Plaintiff's NEPA claim.  FWS's

determination in this case was that there would be "no change in status" to the listing of the

three-state murrelet.  AR 348.  NEPA does not apply where there has been no change in the

status quo.   Fund for Animals v. Thomas, 127 F.3d 80, 84 (D.C. Cir. 1997) (agency decisions

that maintain the status quo do not constitute major federal actions under NEPA).  Consequently,

as NEPA does not apply to five-year review determinations, the Court should dismiss Plaintiff's

Sixth Claim for Relief.

## V.    THERE HAS BEEN NO WAIVER OF SOVEREIGN IMMUNITY UNDER THE REGULATORY FLEXIBILITY ACT, AND, IN ANY CASE, NEITHER THAT STATUTE NOR THE UNFUNDED MANDATES REFORM ACT APPLIES.

Plaintiff's Regulatory Flexibility Act ("RFA") claim is not reviewable because Plaintiff's

---

the maintenance and enhancement of long-term productivity, and (v) any irreversible and
irretrievable commitments of resources which would be involved in the proposed action should it
be implemented." 42 U.S.C. § 4332(2)(C).

claim does not fall in the limited waiver of sovereign immunity under the RFA. Even if the Court were to find a waiver of sovereign immunity, however, Plaintiff's Fifth Claim for Relief still fails under the RFA and the Unfunded Mandates Reform Act ("UMRA") because five-year review determinations are not rulemakings and because FWS can only consider the five statutorily-mandated factors in making such determinations.

The RFA limits the right of judicial review to "a small entity that is adversely affected or aggrieved by <u>final agency action</u>." 5 U.S.C. § 611(a)(1) (emphasis added). As explained above, <u>supra</u> Section I, a five-year review determination is not final agency action. Thus, Plaintiff cannot bring its RFA claim because there has been no waiver of sovereign immunity. <u>United States v. Nordic Village, Inc.</u>, 503 U.S. 30, 33-34 (1992) (waiver of Federal Government's sovereign immunity must be unequivocally expressed in statutory text); <u>Lehman v. Nakshian</u>, 453 U.S. 156, 161 (1981) ("[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied").

Even if the Court were to find that the government had waived its sovereign immunity, Plaintiff's RFA claim, as well as its claim that Defendants violated the UMRA must fail because a five-year review determination is not a rulemaking. The requirements of both the RFA and UMRA apply only where an agency is engaging in rulemaking. 5 U.S.C. § 603; 2 U.S.C. § 1532; Amended Complaint ¶¶ 38-39.   As explained above, <u>supra</u> Section III, a five-year review determination is not a rulemaking. Accordingly, the RFA and UMRA do not apply to five-year review determinations, and Plaintiff has failed to state a claim upon which relief can be granted.

Finally, even if the Court were to find that Plaintiff could bring its RFA and UMRA claim, the claim lacks merit because FWS cannot consider the economic impact of a five-year

-30-

review determination on small businesses, but can only consider the five statutorily-mandated

factors set forth in ESA Section 4(a), 16 U.S.C. § 1533(a).  Thus, the reasoning of the PLF Court

in the NEPA context applies equally here.  See Section IV, supra.  Since it would be a waste of

agency resources to require the FWS to comply with the requirements of the RFA and UMRA,

the Court should find these statutes do not apply and dismiss Plaintiff's Fifth Claim for Relief.

## VI.    THE COURT SHOULD DISMISS PLAINTIFF'S SECOND CLAIM FOR RELIEF AS ABANDONED.[9]

In its summary judgment brief, Plaintiff does not make any arguments with respect to its

Second Claim for Relief, regarding FWS's alleged failure to initiate rulemaking to delist the

three-state murrelet (Amended Complaint ¶¶ 29-30).[10]  By failing to address these issues,

Plaintiff has abandoned these claims and they should be dismissed.  See Spivey v. Barry, 665

F.2d 1222, 1232 n.21 (D.C. Cir. 1981) (deeming claims raised in complaint but not argued in

briefing to be abandoned); Valles-Hall v. Ctr. for Nonprofit Advancement, 481 F. Supp. 2d 118,

122 (D.D.C. 2007) (deeming claims not raised in summary judgment motion abandoned and

dismissing them); Nnadili v. Chevron, 435 F. Supp. 2d 93, 103 (D.D.C. 2006) (granting

summary judgment for defendants on claims abandoned by plaintiffs).

## VII.    PLAINTIFF IS NOT ENTITLED TO THE RELIEF IT REQUESTS.

---

[9] Plaintiff has arguably also abandoned its Fifth Claim for Relief, regarding FWS's alleged violation of the Regulatory Flexibility Act and Unfunded Mandates Reform Act, and Sixth Claim for Relief, regarding FWS's alleged violation of the National Environmental Policy Act, as they have relegated these claims to a single footnote.  Plf's Memo at 19 n.4.  In any case, as explained below, these statutes do not apply to five-year review determinations.

[10] It is not surprising that Plaintiff has abandoned this claim, since one Court has already ruled that FWS has no independent duty to initiate rulemaking to delist a species.  Coos County Board of County Commissioners v. Norton, Case No. 06-6010-HO (D. Or. June 19, 2006).

Even if the Court were to rule in Plaintiff's favor on any of its claims, Plaintiff is not entitled to much of the relief it requests in its Amended Complaint. Defendants reserve their right to provide subsequent briefing on remedy, should such briefing be necessary. However, in sum, the Court can provide Plaintiff with either the statutorily-provided remedy, for those of its claims where the statute in question provides such a remedy,[11] or the Court can remand FWS's determination pursuant to the APA,[12] for those of Plaintiff's claims where there is no other statutorily-provided remedy. Finally, under no circumstances can the Court order FWS, as Plaintiff requests in its Amended Complaint, to issue a notice of proposed rulemaking to remove the three-state murrelet from the list of threatened species both because Plaintiff has abandoned its Second Claim for Relief and because (as another district court has already found) Plaintiff's claim fails to identify any discrete action that the agency was required to undertake.

## **CONCLUSION**

For all the foregoing reasons, the Court should grant Defendants' Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, dismiss Plaintiff's Amended Complaint with prejudice, and enter judgment in favor of Defendants.

Dated: August 21, 2007                     Respectfully submitted,

                                           RONALD J. TENPAS

---

[11] For example, the Court's equitable discretion in providing a remedy under the ESA citizen-suit provision, 16 U.S.C. § 1540(g)(1)(c) is limited by the provision itself and by sovereign immunity principles, and is not expanded by the savings clause contained in that provision. See Lane v. Pena, 518 U.S. 187, 192, 196-97 (1996) (a waiver of sovereign immunity as to a particular remedy must be "unequivocally expressed" and "will not be implied.").

[12] See Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985); Nat'l Labor Relations Bd. v. Food Store Employees Union, Local 347, 417 U.S. 1, 9 (1974); Fed. Power Comm'n v. Idaho Power Co., 344 U.S. 17, 20 (1952).

Acting Assistant Attorney General

JEAN E. WILLIAMS, Chief
LISA L. RUSSELL, Assistant Chief


_____/s/ *Meredith L. Flax*_____
MEREDITH L. FLAX, Trial Attorney (DCB 468016)
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
P.O. Box 7369
Washington, D.C. 20044-7369
Telephone: (202) 305-0404
Facsimile: (202) 305-0275
Meredith.Flax@usdoj.gov

OF COUNSEL:

Eric W. Nagle
Office of the Solicitor
Pacific Northwest Regional Office
500 N.E. Multnomah St., Suite 607
Portland, OR 97232

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FOREST RESOURCE COUNCIL,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | |
| ) | |
| H. DALE HALL, Director, U.S. Fish and   ) | Case No. 1:07-cv-00484 (JDB) |
| Wildlife Service, DAVID M. VERHEY,   ) | |
| Acting Assistant Secretary for Fish, Wildlife   ) | |
| and Parks, and DIRK KEMPTHORNE,   ) | |
| Secretary of the Interior.   ) | |
| ) | |
| Defendants,   ) | |
| ) | |
| and   ) | |
| ) | |
| AUDUBON SOCIETY OF PORTLAND,   ) | |
| CENTER FOR BIOLOGICAL DIVERSITY,   ) | |
| CONSERVATION NORTHWEST,   ) | |
| ENVIRONMENTAL PROTECTION   ) | |
| INFORMATION CENTER, GIFFORD   ) | |
| PINCHOT TASK FORCE, OREGON WILD,   ) | |
| SEATTLE AUDUBON SOCIETY, SIERRA   ) | |
| CLUB, and THE WILDERNESS SOCIETY   ) | |
| ) | |
| Defendant-Intervenors.   ) | |
| ) | |

**FEDERAL DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Defendants, H. Dale Hall, in his official capacity as Director of the United States Fish

and Wildlife Service, David M. Verhey, in his official capacity as Acting Assistant Secretary for

Fish, Wildlife and Parks, and Dirk Kempthorne, in his official capacity as Secretary of the

Interior, by and through undersigned counsel, hereby submit the following Statement of Material

Facts Not in Dispute, as called for in Local Rule 56.1.

1.     On January 15, 1988, the National Audubon Society submitted a petition to the U.S. Fish

and Wildlife Service ("FWS"), requesting that the marbled murrelet in California, Oregon, and

Washington ("three-state population") be listed as a threatened species under the Endangered

Species Act ("ESA").  AR 929.  On October 17, 1988, FWS published a notice in the Federal

Register announcing that the petition presented substantial information indicating that listing

may be warranted.  Id.; 53 Fed. Reg. 40479.

2.      On April 17, 1991, several conservation organizations filed suit against FWS in the

Western District of Washington, alleging that FWS had failed to discharge its mandatory duty

under ESA to list the three-state population as threatened.  Marbled Murrelet, et al. v. Lujan, et

al., C91-522R (W.D. Wash.); AR 903.  On May 20, 1991, the plaintiffs moved for summary

judgment, seeking an order compelling FWS to issue a final rule listing the three-state

population.  AR 902-903, 907.

3.      On June 20, 1991, FWS announced its 12-month finding, in which it concluded that

listing was warranted in light of the analysis in its status review of the best available scientific

and commercial information pertinent to the species.  AR 930; 56 Fed. Reg. 28362.  FWS noted

that the marbled murrelet was already listed as a threatened species in British Columbia under

Canadian law.  AR 931.  FWS proposed to list the three-state population as threatened,

explaining that "California, Oregon, and Washington constitute a significant portion of the

marbled murrelet's range. In these states, the species is immediately threatened by the loss of

nesting habitat (old-growth and mature forests)."  AR 932.

4.      On July 9, 1992, after FWS had failed to issue a final listing determination on the species,

the plaintiff conservation organizations filed a second motion for summary judgment, seeking an

order compelling FWS to do so.  AR 908.

5.      On July 29, 1992, FWS published a notice announcing a six-month extension of the

deadline for final action, citing disagreement over whether the three-state population constituted

a "distinct population segment" ("DPS").  57 Fed. Reg. 33478; AR 908.

6.    On September 17, 1992, the district court in Marbled Murrelet v. Lujan granted

plaintiffs' second motion for summary judgment, and ordered FWS to submit a final

determination on the proposed listing to the Federal Register by September 18, 1992.  AR 902-

926.  The court ruled that FWS had no need for additional time to consider whether the three-

state population constituted a DPS, because FWS had already concluded that the population

constituted a significant portion of the marbled murrelet's range, and that the species was

immediately threatened in that portion by loss of nesting habitat.  AR 913.

7.    On October 1, 1992, FWS published a final rule listing the three-state population of

marbled murrelets as threatened.  57 Fed. Reg. 45328; AR 887.  In the final rule, FWS reiterated

its conclusion that the three-state population constituted a significant portion of the species'

range, stating: "The three states encompass roughly one-third of the geographic area occupied by

this subspecies, comprising a significant portion of its range. The amount of nesting habitat has

undergone a tremendous decline since the late 1800s (most of which has taken place during the

last 20 to 30 years), especially in the coastal areas of all three states."  AR 889.  However, FWS

indicated that some uncertainty remained regarding the DPS question:

> At the time of proposing to list the marbled murrelet in
> Washington, Oregon, and California, the Service considered the
> murrelets in these States to constitute a distinct population segment
> comprising a significant portion of the eastern Pacific subspecies
> of the marbled murrelet. While the Service continues to believe
> that existing legal protection is not adequate to ensure survival of
> murrelets in the three-state area, some question remains whether
> the population listed in this rule qualifies for protection under the
> Act's definition of "species."

AR 889.  Consequently, FWS stated that it intended to reexamine the basis for recognizing the three-state population as a species, and would announce the results of this review within 90 days. Id.  FWS did not conduct this reexamination.  AR 326.

8.  Section 4(c)(2) of the ESA requires FWS to conduct a review at least once every five years of all species listed as threatened or endangered to determine whether any species should be delisted, changed from threatened to endangered, or changed from endangered to threatened. 16 U.S.C. § 1533(c)(2).  In March 2002, the American Forest Resource Council ("AFRC") filed suit in the U.S. District Court for the District of Oregon to compel FWS to conduct a five-year review of the three-state population of marbled murrelets.  Amended Complaint, ¶ 17; Answer ¶ 17.  In January 2003, the parties entered into a settlement in which FWS agreed to complete the status review by December 31, 2003.  AR 878, 880.  The agreement did not require that FWS issue a draft report on the five-year review for public comment before issuing a final report.  Id.

9.  On April 21, 2003, FWS published a notice in the Federal Register announcing that the five-year review was underway, and inviting the public to submit relevant information.  68 Fed. Reg. 19569; AR 875.

10.  On June 20, 2003, FWS and AFRC agreed to amend the settlement agreement to extend the deadline for completing the five-year review to April 30, 2004.  AR 872.  The agreement did not require that FWS issue a draft report on the five-year review for public comment before issuing a final report.  Id.

11.  On June 20, 2003, AFRC submitted comments to FWS regarding the five-year review. AR 863.

12.  On July 25, 2003, FWS published a second notice in the Federal Register inviting the

public to submit information relevant to the five-year review.  68 Fed. Reg. 44093; AR 861.

13.    On August 20, 2003, AFRC submitted a second set of comments to FWS regarding the

five-year review.  AR 733, 749, 794.  In those comments, AFRC acknowledged that "FWS could

consider a range of options" if FWS concluded that the three-state population did not constitute a

valid DPS.  AR 783.  AFRC acknowledged that these options could permit FWS to "provide

ESA protection for the same or a larger group of marbled murrelets under a different legal

rationale and a new rulemaking."  AR 783-784.  According to AFRC, these options included:

        (a) identifying some population or populations of marbled murrelets that qualify as a DPS

(AR 786);

        (b) considering whether the entire subspecies is threatened or endangered throughout its

range (AR 786);

        (c) listing the subspecies range-wide on the grounds that the three-state population is a

significant portion of the subspecies' range (AR 788); and

        (d) concluding that the three-state population constitutes a significant portion of the

subspecies' range, but only listing the murrelet in that area, rather than range-wide.  AR 790.

AFRC presented arguments against adopting each of these options.  AR 783-790.

14.    In March 2004, a FWS consultant called EDAW, Inc. completed a report on the status of

the marbled murrelet in the three-state area.  AR 363.  FWS had contracted for the report as part

of the five-year review.  AR 384.  To prepare the report, EDAW assembled a panel of seven

scientific experts to review all relevant data on the three-state murrelet population.  AR 384-385.

15.    The EDAW expert panel concluded that marbled murrelet populations in Washington,

Oregon, and California are continuing to decline.  AR 672.  The report stated that, of the six

"conservation zones" in the three-state area (AR 442), murrelet populations in all zones are in decline (AR 468), and the murrelet faces a 100% probability of extinction within 40 years in Zones 5 and 6 (the southern-most zones), an 80% probability of extinction by 2060 in Zone 4, an 80% probability of extinction by 2100 in Zones 2 and 3, and a 25% probability of extinction by 2100 in Zone 1 (northwest Washington). AR 462. The report estimated that there would be 45 murrelets remaining in Zone 1 in 100 years. AR 468.

16.    The EDAW report also noted that there was "clear evidence of a significant decline since 1972" in the Prince William Sound area in Alaska, and that "[f]or the entire marbled murrelet range, since 1972, major declines (22-73%) in populations over a period of a decade or more have been documented in Alaska, British Columbia, and Oregon with no evidence of increase." AR 425.

17.    EDAW analyzed data on genetic variations among marbled murrelet populations, and concluded that there was strong support for finding that murrelets constitute three genetically distinct populations, with most birds from California forming a "distinct cluster." AR 429.

18.    On May 19, 2004, FWS and AFRC agreed to amend the settlement agreement a second time, extending the deadline for completing the five-year review to August 31, 2004. AR 349. The agreement did not require that FWS issue a draft report on the five-year review for public comment before issuing a final report. Id.

19.    FWS completed its report on the five-year review on August 31, 2004, and the FWS Regional Director indicated his concurrence with its conclusions by signing it on September 1, 2004. AR 321, 348. The Regional Director had the authority to make determinations on five-year reviews pursuant to an April 19, 1995 delegation from the Director. AR 884; see also FWS

draft "5-year Review Guidance." AR 352, 359.

20.     In the five-year review report, FWS concluded that "[t]he threat situation has not changed such that the murrelet DPS is no longer likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." AR 341. However, FWS also concluded that the three-state population did not qualify as a DPS under FWS's "Policy Regarding the Recognition of Distinct Vertebrate Population Segments under the Endangered Species Act," (61 Fed. Reg. 4722, Feb. 7, 1996), because the population was not "discrete", based on biological or legal factors, from those in Canada. AR 335-336. FWS determined that there would be no change in the species' status pending completion of a range-wide status review. AR 348.

21.     On September 1, 2004, the Regional Director sent a letter to AFRC's attorney, advising him that FWS had completed the five-year review and concluded that the listed population was not a valid DPS, but that the species would remain listed pending FWS's completion of a range-wide review to determine whether the marbled murrelet is in danger of extinction throughout all or a significant portion of its range. AR 320.

22.     On September 24, 2004, FWS notified the district court that it had completed the five-year review in compliance with the settlement agreement with AFRC. AR 315. AFRC raised no objection to FWS's notice.

23.     FWS then initiated its range-wide review of the marbled murrelet. As part of this effort, FWS requested that the U.S. Geological Survey (USGS) evaluate the status of the subspecies in Alaska and British Columbia. AR 55. In January 2007, USGS issued a detailed report analyzing population trends and genetic studies on the murrelet in Alaska and British Columbia. AR 39-

314.  USGS reported that population survey data indicate a "rapid and widespread decline" in

marbled murrelet populations throughout Alaska, and estimated a decline of 71% in the past 20

years.  AR 100, 103, 197.  USGS reported that the population data for British Columbia was very

limited, but the available studies reported "high rates of decline" and "indicate a potentially

serious problem for the populations that they represent."  AR 107.

24.     USGS also reported that the available data on the genetic structure of the marbled

murrelet indicates that it is comprised of three genetic units: (1) western and central Aleutian

Islands; (2) eastern Aleutian Islands to northern California; and (3) central California.  AR 97.

25.     On March 16, 2007, the Solicitor of the U.S. Department of the Interior issued a legal

opinion to the Director of FWS regarding "The Meaning of 'In Danger of Extinction Throughout

All or a Significant Portion of its Range'" in the ESA.  AR 3.  The Director's request to the

Solicitor for an opinion on this issue was prompted, in part, by the Ninth Circuit's ruling in

Defenders of Wildlife v. Norton, 258 F.3d 1136 (9th Cir. 2001), in which the court rejected

FWS's interpretation of the "significant portion of its range" language in ESA's definitions of

"endangered species" and "threatened species."  AR 3.  FWS had argued that a species is an

endangered species only when it is in danger of extinction throughout a portion of its range that

is so important to the continued existence of the species that threats to the species in that area

threaten the viability of the species as a whole.  AR 4.  The Ninth Circuit rejected this

interpretation, because it made surplusage of the "significant portion" language.  258 F.3d at

1142.

26.     The Solicitor's opinion advised that the Secretary is required to list a species whenever it

is found to be in danger of extinction in a significant portion of its range, and that, while the

Secretary has broad discretion in defining "significant", he may not define it so as to require that

a species is endangered only if the threats to the species in a portion of its range are so severe as

to threaten the viability of the species as a whole.  AR 5.

Dated: August 21, 2007              Respectfully submitted,

                                    RONALD J. TENPAS
                                    Acting Assistant Attorney General

                                    JEAN E. WILLIAMS, Chief
                                    LISA L. RUSSELL, Assistant Chief


                                    _____/s/ *Meredith L. Flax*_____
                                    MEREDITH L. FLAX, Trial Attorney (DCB 468016)
                                    U.S. Department of Justice
                                    Environment and Natural Resources Division
                                    Wildlife and Marine Resources Section
                                    P.O. Box 7369
                                    Washington, D.C. 20044-7369
                                    Telephone: (202) 305-0404
                                    Facsimile: (202) 305-0275
                                    Meredith.Flax@usdoj.gov

OF COUNSEL:

Eric W. Nagle
Office of the Solicitor
Pacific Northwest Regional Office
500 N.E. Multnomah St., Suite 607
Portland, OR 97232

# UNITED STATES CODE

## 1976 EDITION

CONTAINING THE GENERAL AND PERMANENT LAWS
OF THE UNITED STATES, IN FORCE
ON JANUARY 3, 1977

Prepared and published under authority of Title 2, U.S. Code, Section 285b
by the Office of the Law Revision Counsel of the House of Representatives



## VOLUME FOUR

TITLE 16—CONSERVATION
TO
TITLE 18—CRIMES AND CRIMINAL PROCEDURE

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1977

sible for the management and conservation of fish or wildlife resources within a State.

(14) The term "take" means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct.

(15) The term "threatened species" means any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range.

(16) The term "United States", when used in a geographical context, includes all States.

(Pub. L. 93–205, § 3, Dec. 28, 1973, 87 Stat. 885; Pub. L. 94–359, § 5, July 12, 1976, 90 Stat. 913.)

### References in Text

Reorganization Plan No. 4 of 1970, referred to in par. (10), is Reorg. Plan No. 4 of 1970, eff. Oct. 3, 1970, 35 F.R. 15627, 84 Stat. 2090, which is set out in the Appendix to Title 5, Government Organization and Employees.

### Amendments

1976—Par. (1), Pub. L. 94–359 inserted "; *Provided, however,* That it does not include exhibition of commodities by museums or similar cultural or historical organizations." following "facilitating such buying and selling".

### § 1533. Determination of endangered species and threatened species

#### (a) Generally

(1) The Secretary shall by regulation determine whether any species is an endangered species or a threatened species because of any of the following factors:

(1) the present or threatened destruction, modification, or curtailment of its habitat or range;

(2) overutilization for commercial, sporting, scientific, or educational purposes;

(3) disease or predation;

(4) the inadequacy of existing regulatory mechanisms; or

(5) other natural or manmade factors affecting its continued existence.

(2) With respect to any species over which program responsibilities have been vested in the Secretary of Commerce pursuant to Reorganization Plan Numbered 4 of 1970—

(A) in any case in which the Secretary of Commerce determines that such species should—

(i) be listed as an endangered species or a threatened species, or

(ii) be changed in status from a threatened species to an endangered species,

he shall so inform the Secretary of the Interior; who shall list such species in accordance with this section;

(B) in any case in which the Secretary of Commerce determines that such species should—

(i) be removed from any list published pursuant to subsection (c) of this section, or

(ii) be changed in status from an endangered species to a threatened species,

he shall recommend such action to the Secretary of the Interior, and the Secretary of the Interior, if he concurs in the recommendation, shall implement such action; and

(C) the Secretary of the Interior may not list or remove from any list any such species, and may not change the status of any such species which are listed, without a prior favorable determination made pursuant to this section by the Secretary of Commerce.

#### (b) Basis for determinations

(1) The Secretary shall make determinations required by subsection (a) of this section on the basis of the best scientific and commercial data available to him and after consultation, as appropriate, with the affected States, interested persons and organizations, other interested Federal agencies, and, in cooperation with the Secretary of State, with the country or countries in which the species concerned is normally found or whose citizens harvest such species on the high seas; except that in any case in which such determinations involve resident species of fish or wildlife, the Secretary of the Interior may not add such species to, or remove such species from, any list published pursuant to subsection (c) of this section, unless the Secretary has first—

(A) published notice in the Federal Register and notified the Governor of each State within which such species is then known to occur that such action is contemplated;

(B) allowed each such State 90 days after notification to submit its comments and recommendations, except to the extent that such period may be shortened by agreement between the Secretary and the Governor or Governors concerned; and

(C) published in the Federal Register a summary of all comments and recommendations received by him which relate to such proposed action.

(2) In determining whether or not any species is an endangered species or a threatened species, the Secretary shall take into consideration those efforts, if any, being made by any nation or any political subdivision of any nation to protect such species, whether by predator control, protection of habitat and food supply, or other conservation practices, within any area under the jurisdiction of any such nation or political subdivision, or on the high seas.

(3) Species which have been designated as requiring protection from unrestricted commerce by any foreign country, or pursuant to any international agreement, shall receive full consideration by the Secretary to determine whether each is an endangered species or a threatened species.

#### (c) Lists

(1) The Secretary of the Interior shall publish in the Federal Register, and from time to time he may by regulation revise, a list of all species determined by him or the Secretary of Commerce to be endangered species and a list of all species determined by him or the Secretary of Commerce to be threatened species. Each list shall refer to the species contained therein by scientific and common name or names, if any, and shall specify with respect to each such species over what portion of its range it is endangered or threatened.

(2) The Secretary shall, upon the petition of an interested person under section 553(e) of title 5, conduct a review of any listed or unlisted species proposed to be removed from or added to either of the lists published pursuant to paragraph (1) of this subsection, but only if he makes and publishes a finding that such person has presented substantial evidence which in his judgment warrants such a review.

(3) Any list in effect on December 27, 1973, of species of fish or wildlife determined by the Secretary of the Interior, pursuant to the Endangered Species Conservation Act of 1969, to be threatened with extinction shall be republished to conform to the classification for endangered species or threatened species, as the case may be, provided for in this chapter, but until such republication, any such species so listed shall be deemed an endangered species within the meaning of this chapter. The republication of any species pursuant to this paragraph shall not require public hearing or comment under section 553 of title 5.

(d) Protective regulations

Whenever any species is listed as a threatened species pursuant to subsection (c) of this section, the Secretary shall issue such regulations as he deems necessary and advisable to provide for the conservation of such species. The Secretary may by regulation prohibit with respect to any threatened species any act prohibited under section 1538(a)(1) of this title, in the case of fish or wildlife, or section 1538(a)(2) of this title, in the case of plants, with respect to endangered species; except that with respect to the taking of resident species of fish or wildlife, such regulations shall apply in any State which has entered into a cooperative agreement pursuant to section 1535(a) of this title only to the extent that such regulations have also been adopted by such State.

(e) Similarity of appearance cases

The Secretary may, by regulation, and to the extent he deems advisable, treat any species as an endangered species or threatened species even though it is not listed pursuant to this section if he finds that—

(A) such species so closely resembles in appearance, at the point in question, a species which has been listed pursuant to such section that enforcement personnel would have substantial difficulty in attempting to differentiate between the listed and unlisted species;

(B) the effect of this substantial difficulty is an additional threat to an endangered or threatened species; and

(C) such treatment of an unlisted species will substantially facilitate the enforcement and further the policy of this chapter.

(f) Regulations

(1) Except as provided in paragraphs (2) and (3) of this subsection and subsection (b) of this section, the provisions of section 553 of title 5 (relating to rulemaking procedures), shall apply to any regulation promulgated to carry out the purposes of this chapter.

(2)(A) In the case of any regulation proposed by the Secretary to carry out the purposes of this chapter—

(i) the Secretary shall publish general notice of the proposed regulation (including the complete text of the regulation) in the Federal Register not less than 60 days before the effective date of the regulation; and

(ii) if any person who feels that he may be adversely affected by the proposed regulation files (within 45 days after the date of publication of general notice) objections thereto and requests a public hearing thereon, the Secretary may grant such request, but shall, if he denies such request, publish his reasons therefor in the Federal Register.

(B) Neither subparagraph (A) nor section 553 of title 5 shall apply in the case of any of the following regulations and any such regulation shall, at the discretion of the Secretary, take effect immediately upon publication of the regulation in the Federal Register:

(i) Any regulation appropriate to carry out the purposes of this chapter which was originally promulgated to carry out the Endangered Species Conservation Act of 1969.

(ii) Any regulation (including any regulation implementing section 1535(g)(2)(B)(ii) of this title) issued by the Secretary in regard to any emergency posing a significant risk to the well-being of any species of fish or wildlife, but only if (I) at the time of publication of the regulation in the Federal Register the Secretary publishes therein detailed reasons why such regulation is necessary, and (II) in the case such regulation applies to resident species of fish and wildlife, the requirements of subsection (b)(1)(A) of this section have been complied with. Any regulation promulgated under the authority of this clause (ii) shall cease to have force and effect at the close of the 120-day period following the date of publication unless, during such 120-day period, the rulemaking procedures which would apply to such regulation without regard to this subparagraph are complied with.

(3) The publication in the Federal Register of any proposed or final regulation which is necessary or appropriate to carry out the purposes of this chapter shall include a statement by the Secretary of the facts on which such regulation is based and the relationship of such facts to such regulation.

(Pub. L. 93-205, § 4, Dec. 28, 1973, 87 Stat. 886; Pub. L. 94-359, § 1, July 12, 1976, 90 Stat. 911.)

REFERENCES IN TEXT

Reorganization Plan No. 4 of 1970, referred to in subsec. (a)(2), is Reorg. Plan No. 4 of 1970, eff. Oct. 3, 1970, 35 F.R. 15627, 84 Stat. 2090, which is set out in the Appendix to Title 5, Government Organization and Employees.

The Endangered Species Conservation Act of 1969, referred to in subsecs. (c)(3) and (f)(2)(B)(i), is Pub. L. 89-669, Oct. 15, 1966, 80 Stat. 926, which was classified generally to subchapter III (§ 668aa et seq.) of chapter 5A of this title. Said Act was repealed by Pub. L. 93-205, § 14, Dec. 28, 1973, 87 Stat. 903, and is now covered by section 1531 et seq of this title.

AMENDMENTS

1976—Subsec. (f)(2)(B)(ii). Pub.L. 94-359 substituted "subsection (b)(1)(A)" for "subsection (b)(A), (B), and (C)".

# UNITED STATES CODE

## 1976 EDITION

## SUPPLEMENT II

### CONTAINING THE GENERAL AND PERMANENT LAWS OF THE UNITED STATES, ENACTED DURING THE 95TH CONGRESS

Prepared and published under authority of Title 2, U.S. Code, Section 285b
by the Office of the Law Revision Counsel of the House of Representatives



### JANUARY 4, 1977, TO JANUARY 14, 1979

### VOLUME ONE

### TITLE 1—GENERAL PROVISIONS
TO
### TITLE 21—FOOD AND DRUGS

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1979

age 1226

pplicant"
action of
iption is
ncy for a
rimarily
1536(a)

individu-
, associ-
any offi-
r instru-
it, of any
of, or of

member
ds, roots

except as
retary of
merce as
pursuant
ion Plan
h respect
s of this
ertain to
errestrial
of Agri-

any sub-
and any
species of
terbreeds

f the sev-
abia, the
American
and the
,.
eans any
nmission,
is respon-
vation of
within a

harass,
kill, trap,
engage in

s" means
ne an en-
reseeable
t portion

hen used
ll States.

10, 1978,

added par.

designated
spectively.

d par. (5).

ted former
(9),
d par. (7).

designated
spectively.

Former pars. (8) to (10) redesignated (13) to (15), respectively.

Pars. (11), (12). Pub. L. 95–632, § 2(4), (7) added pars. (11) and (12). Former pars. (11) and (12) redesignated (16) and (17), respectively.

Pars. (13) to (15). Pub. L. 95–632, § 2(7), redesignated former pars. (8) to (10) as (13) to (15), respectively. Former pars. (13) to (15) redesignated as (18) to (20), respectively.

Par. (16). Pub. L. 95–632, § 2(5), (7), redesignated former par. (11) as (16), and so as redesignated, substituted "and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature" for "and any other group of fish or wildlife of the same species or smaller taxa in common spatial arrangement that interbreed when mature". Former par. (16) redesignated (21).

Par. (17). Pub. L. 95–632, § 2(7), redesignated former par. (12) as (17).

Par. (18). Pub. L. 95–632, § 2(6), (7), redesignated former par. (13) as (18), and as so redesignated, substituted "fish, plant, or wildlife" for "fish or wildlife".

Pars. (19) to (21). Pub. L. 95–632, § 2(7), redesignated pars. (14) to (16) as (19) to (21), respectively.

### Section Referred to in Other Sections

This section is referred to in section 1536 of this title.

### § 1533. Determination of endangered species and threatened species

**(a) Generally**

(1) The Secretary shall be regulation determine whether any species is an endangered species or a threatened species because of any of the following factors:

*[See main edition for text of subpars. (1) to (5)]*

At the time any such regulation is proposed, the Secretary shall also by regulation, to the maximum extent prudent, specify any habitat of such species which is then considered to be critical habitat. The requirement of the preceding sentence shall not apply with respect to any species which was listed prior to November 10, 1978.

*[See main edition for text of (2)]*

**(b) Basis for determinations**

*[See main edition for text of (1) to (3)]*

(4) In determining the critical habitat of any endangered or threatened species, the Secretary shall consider the economic impact, and any other relevant impacts, of specifying any particular area as critical habitat, and he may exclude any such area from the critical habitat if he determines that the benefits of such exclusion outweigh the benefits of specifying the area as part of the critical habitat, unless he determines, based on the best scientific and commercial data available, that the failure to designate such area as critical habitat will result in the extinction of the species.

**(c) Lists**

(1) The Secretary of the Interior shall publish in the Federal Register, and from time to time he may by regulation revise, a list of all species determined by him or the Secretary of Commerce to be endangered species and a list of all species determined by him or the Secretary of Commerce to be threatened species.

Each list shall refer to the species contained therein by scientific and common name or names, if any, specify with respect to each such species over what portion of its range it is endangered or threatened, and specify any critical habitat within such range.

(2) The Secretary shall, within 90 days of the receipt of the petition of an interested person under section 553(e) of title 5, conduct and publish in the Federal Register a review of the status of any listed or unlisted species proposed to be removed from or added to either of the lists published pursuant to paragraph (1) of this subsection, but only if he makes and publishes a finding that such person has presented substantial evidence which in his judgment warrants such a review. Such review and finding shall be made and published prior to the initiation of any procedures under subsection (b)(1) of this section.

*[See main edition for text of (3)]*

(4) The Secretary shall—

(A) conduct, at least once every five years, a review of all species included in a list which is published pursuant to paragraph (1) and which is in effect at the time of such review; and

(B) determine on the basis of such review whether any such species should—

(i) be removed from such list;

(ii) be changed in status from an endangered species to a threatened species; or

(iii) be changed in status from a threatened species to an endangered species.

Each determination under subparagraph (B) shall be made in accordance with the provisions of subsections (a) and (b) of this section.

*[See main edition for text of (d) and (e)]*

**(f) Regulations**

*[See main edition for text of (1)]*

(2)(A) Except as provided in subparagraph (B), in the case of any regulation proposed by the Secretary to carry out the purposes of this chapter—

*[See main edition for text of (i) and (ii)]*

(B) In the case of any regulation proposed by the Secretary to carry out the purposes of this section with respect to the determination and listing of endangered or threatened species and their critical habitats in any State (other than regulations to implement the Convention), the Secretary—

(i) shall publish general notice of the proposed regulation (including the complete text of the regulation), not less than 60 days before the effective date of the regulation—

(I) in the Federal Register, and

(II) if the proposed regulation specifies any critical habitat, in a newspaper of general circulation within or adjacent to such habitat;

(ii) shall offer for publication in appropriate scientific journals the substance of the Federal Register notice referred to in clause (i)(I);

(iii) shall give actual notice of the proposed regulation (including the complete text of the regulation), and any environmental assessment or environmental impact statement prepared on the proposed regulation, not less than 60 days before the effective date of the regulation to all general local governments located within or adjacent to the proposed critical habitat, if any; and

(iv) shall—

(I) if the proposed regulation does not specify any critical habitat, promptly hold a public meeting on the proposed regulation within or adjacent to the area in which the endangered or threatened species is located, if request therefor is filed with the Secretary by any person within 45 days after the date of publication of general notice under clause (i)(I), and

(II) if the proposed regulation specifies any critical habitat, promptly hold a public meeting on the proposed regulation within the area in which such habitat is located in each State, and, if requested, hold a public hearing in each State.

If a public meeting or hearing is held on any regulation, the regulation may not take effect before the 60th day after the date on which the meeting or hearing is concluded, and if more than one public meeting or hearing is held, before the 60th day after the date on which the last such meeting or hearing is concluded. Any accidental failure to provide actual notice under clause (ii) to all general local governments required to be given notice shall not invalidate the proposed regulation.

(C) Neither subparagraph (A) or (B) of this paragraph nor section 553 of title 5 shall apply in the case of any of the following regulations and any such regulation shall, at the discretion of the Secretary, take effect immediately upon publication of the regulation in the Federal Register:

(i) Any regulation appropriate to carry out the purposes of this chapter which was originally promulgated to carry out the Endangered Species Conservation Act of 1969.

(ii) Any regulation (including any regulation implementing section 1535(g)(2)(B)(ii) of this title) issued by the Secretary in regard to any emergency posing a significant risk to the well-being of any species of fish or wildlife, but only if (I) at the time of publication of the regulation in the Federal Register the Secretary publishes therein detailed reasons why such regulation is necessary, and (II) in the case such regulation applies to resident species of fish and wildlife, the requirements of subsection (b)(1)(A) of this section have been complied with. Any regulation promulgated under the authority of this clause (ii) shall cease to have force and effect at the close of the 120-day period following the date of publication unless, during such 120-day period, the rulemaking procedures which would apply to such regulation without regard to this subparagraph are complied with.

(3) The publication in the Federal Register of any proposed or final regulation which is neces-

sary or appropriate to carry out the purposes of this chapter shall include a summary by the Secretary of the data on which such regulation is based and shall show the relationship of such data to such regulations.

(4) Any proposed or final regulation which specifies any critical habitat of any endangered species or threatened species shall be based on the best scientific data available, and the publication in the Federal Register of any such regulation shall, to the maximum extent practicable, be accompanied by a brief description and evaluation of those activities (whether public or private) which, in the opinion of the Secretary, if undertaken may adversely modify such habitat, or may be impacted by such designation.

(5) A final regulation adding a species to any list published pursuant to subsection (c) of this section shall be published in the Federal Register not later than two years after the date of publication of notice of the regulation proposing such listing under paragraph (B)(i)(I). If a final regulation is not adopted within such two-year period, the Secretary shall withdraw the proposed regulation and shall publish notice of such withdrawal in the Federal Register not later than 30 days after the end of such period. The Secretary shall not propose a regulation adding to such a list any species for which a proposed regulation has been withdrawn under this paragraph unless he determines that sufficient new information is available to warrant the proposal of a regulation. No proposed regulation for the listing of any species published before November 10, 1978, shall be withdrawn under this paragraph before the end of the one-year period beginning on November 10, 1978.

(g) **Recovery plans**

The Secretary shall develop and implement plans (hereinafter in this subsection referred to as "recovery plans") for the conservation and survival of endangered species and threatened species listed pursuant to this section, unless he finds that such a plan will not promote the conservation of the species. The Secretary, in developing and implementing recovery plans, may procure the services of appropriate public and private agencies and institutions, and other qualified persons. Recovery teams appointed pursuant to this subsection shall not be subject to the Federal Advisory Committee Act.

(As amended Pub. L. 95-632, §§ 11, 13, Nov. 10, 1978, 92 Stat. 3764, 3766.)

REFERENCES IN TEXT

The Federal Advisory Committee Act, referred to in subsec. (g), is Pub. L. 92-463, Oct. 6, 1972, 86 Stat. 770, which is set out in the Appendix to Title 5, Government Organization and Employees.

AMENDMENTS

1978—Subsec. (a)(1), Pub. L. 95-632, § 11(1), inserted provision requiring the Secretary, at the time a regulation is proposed, to specify by regulation any habitat of the species involved which is considered a critical habitat providing the species was listed subsequent to Nov. 10, 1978.

Subsec. (b)(4). Pub. L. 95-632, § 11(7), added subsec. (b)(4).

Subsec. (c)(1). Pub. L. 95-632, § 11(2), struck out "and shall" following "if any" and inserted ", and specify any critical habitat within such range" following "endangered or threatened".

Page 1229                    TITLE 16—CONSERVATION                    § 1535

Subsec. (c)(2), Pub. L. 95–632, § 11(6), substituted "within 90 days of the receipt of" for "upon" and "conduct and publish in the Federal Register a review of the status of" for "conduct a review of" and inserted a provision requiring that the review and findings be made and published prior to initiation of any procedures under subsec. (b)(1) of this section.

Subsec. (c)(4), Pub. L. 95–632, § 11(3), added subsec. (c)(4).

Subsec. (f)(2)(A), Pub. L. 95–632, § 11(4)(A), substituted "Except as provided in subparagraph (B), in" for "In".

Subsec. (f)(2)(B), Pub. L. 95–632, § 11(4)(B), (C), added subsec. (f)(2)(B). Former subsec. (f)(2)(B) redesignated (f)(2)(C).

Subsec. (f)(2)(C), Pub. L. 95–632, § 11(4)(C), redesignated former subsec. (f)(2)(B) as (f)(2)(C), and as so redesignated, substituted "Neither subparagraph (A) or (B)" for "Neither subparagraph (A)".

Subsec. (f)(3), Pub. L. 95–632, § 13, substituted "a summary by the Secretary of the data on which such regulation is based and shall show the relationship of such data to such regulations" for "a statement by the Secretary of the facts on which such regulation is based and the relationship of such facts to such regulation".

Subsec. (f)(4),(5), Pub. L. 95–632, § 11(4)(D), added subsec. (f)(4) and (5).

Subsec. (g), Pub. L. 95–632, § 11(5), added subsec. (g).

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 460k–1, 668dd, 670h, 715i, 715s, 1402, 1532, 1534 to 1540 of this title.

§ 1534. Land acquisition

(a) The Secretary, and the Secretary of Agriculture with respect to the National Forest System, shall establish and implement a program to conserve fish, wildlife, and plants, including those which are listed as endangered species or threatened species pursuant to section 1533 of this title. To carry out such a program, the appropriate Secretary—

[See main edition for text of (1) and (2); (b)]

(As amended Pub. L. 95–632, § 12, Nov. 10, 1978, 92 Stat. 3766.)

AMENDMENTS

1978—Subsec. (a), Pub. L. 95–632, among other changes in material preceding par. (1), inserted reference to the Secretary of Agriculture with respect to the National Forest System and substituted the establishment and implementation of a plan to conserve plants for the establishment and implementation of a plan to conserve plants which were concluded in Appendices to the Convention.

§ 1535. Cooperation with the States

[See main edition for text of (a) and (b)]

(c) Cooperative agreements

(1) In furtherance of the purposes of this chapter, the Secretary is authorized to enter into a cooperative agreement in accordance with this section with any State which establishes and maintains an adequate and active program for the conservation of endangered species and threatened species. Within one hundred and twenty days after the Secretary receives a certified copy of such a proposed State program, he shall make a determination whether such program is in accordance with this chapter. Unless he determines, pursuant to

this paragraph, that the State program is not in accordance with this chapter, he shall enter into a cooperative agreement with the State for the purpose of assisting in implementation of the State program. In order for a State program to be deemed an adequate and active program for the conservation of endangered species and threatened species, the Secretary must find, and annually thereafter reconfirm such finding, that under the State program—

(A) authority resides in the State agency to conserve resident species of fish or wildlife determined by the State agency or the Secretary to be endangered or threatened;

(B) the State agency has established acceptable conservation programs, consistent with the purposes and policies of this chapter, for all resident species of fish or wildlife in the State which are deemed by the Secretary to be endangered or threatened, and has furnished a copy of such plan and program together with all pertinent details, information, and data requested to the Secretary;

(C) the State agency is authorized to conduct investigations to determine the status and requirements for survival of resident species of fish and wildlife;

(D) the State agency is authorized to establish programs, including the acquisition of land or aquatic habitat or interests therein, for the conservation of resident endangered or threatened species of fish or wildlife; and

(E) provision is made for public participation in designating resident species of fish or wildlife as endangered or threatened; or

that under the State program—

(i) the requirements set forth in subparagraphs (C), (D), and (E) of this paragraph are complied with, and

(ii) plans are included under which immediate attention will be given to those resident species of fish and wildlife which are determined by the Secretary or the State agency to be endangered or threatened and which the Secretary and the State agency agree are most urgently in need of conservation programs; except that a cooperative agreement entered into with a State whose program is deemed adequate and active pursuant to clause (i) and this clause shall not affect the applicability of prohibitions set forth in or authorized pursuant to section 1533(d) of this title or section 1538(a)(1) of this title with respect to the taking of any resident endangered or threatened species.

(2) In furtherance of the purposes of this chapter the Secretary is authorized to enter into a cooperative agreement in accordance with this section with any State which establishes and maintains an adequate and active program for the conservation of endangered species and threatened species of plants. Within one hundred and twenty days after the Secretary receives a certified copy of such a proposed State program, he shall make a determination whether such program is in accordance with this chapter. Unless he determines, pursuant to this paragraph, that the State program is not in accordance with this chapter, he shall enter into a cooperative agreement with

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

AMERICAN FOREST RESOURCE COUNCIL,　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
H. DALE HALL, Director, U.S. Fish and　　　　)　　　Case No. 1:07-cv-00484 (JDB)
Wildlife Service, DAVID M. VERHEY,　　　　　)
Acting Assistant Secretary for Fish, Wildlife　　)
and Parks, and DIRK KEMPTHORNE,　　　　　)
Secretary of the Interior.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Defendants,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　and　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
AUDUBON SOCIETY OF PORTLAND,　　　　　)
CENTER FOR BIOLOGICAL DIVERSITY,　　　)
CONSERVATION NORTHWEST,　　　　　　　)
ENVIRONMENTAL PROTECTION　　　　　　　)
INFORMATION CENTER, GIFFORD　　　　　　)
PINCHOT TASK FORCE, OREGON WILD,　　　)
SEATTLE AUDUBON SOCIETY, SIERRA　　　)
CLUB, and THE WILDERNESS SOCIETY　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Defendant-Intervenors.　　　)
_____)

**[PROPOSED] ORDER GRANTING DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on cross-motions for summary judgment.  Upon

consideration of the parties' arguments and memoranda, it is hereby ORDERED that:

(1)　　Defendants' Cross-Motion for Summary Judgment is GRANTED;

(2)　　Plaintiff's Motion for Summary Judgment is DENIED; and

(3)　　Plaintiff's Amended Complaint for Declaratory and Injunctive Relief is

　　　　DISMISSED with prejudice.

Dated this __ day of _____, 2007

_____
John D. Bates
United States District Judge