UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN FOREST RESOURCE COUNCIL, | ) ) ) | Civil No. 1:07-cv-00484-JDB |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| H. DALE HALL, Director, United States Fish and Wildlife Service, DAVID M. VERHEY, Acting Assistant Secretary for Fish and Wildlife and Parks, and DIRK KEMPTHORNE, Secretary of Interior, | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| AUDUBON SOCIETY OF PORTLAND, CENTER FOR BIOLOGICAL DIVERSITY, CONSERVATION NORTHWEST, ENVIRONMENTAL PROTECTION INFORMATION CENTER, GIFFORD PINCHOT TASK FORCE, OREGON WILD, SEATTLE AUDUBON SOCIETY, SIERRA CLUB, and THE WILDERNESS SOCIETY, | ) ) ) ) ) ) ) ) ) ) | |
| Defendant-Intervenors. | ) ) ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
AND DEFENDANT-INTERVENORS' MOTIONS FOR SUMMARY JUDGMENT
AND
REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

**Table of Contents**

Introduction ....................................................................................................................................1

Argument .......................................................................................................................................4

I.       THE FWS DECISION TO MAINTAIN THE THREATENED LISTING FOR THE NON-LISTABLE THREE-STATE MURRELET DPS IS REVIEWABLE FINAL AGENCY ACTION .............................................................................................................................4
A. The 2004 FWS decision consummates the agency's decisionmaking process. ...........................5
B. Rights or obligations are determined and legal consequences flow. ................................6
C. Controlling D.C. Circuit precedent establishes reviewability in this case. .................................7
D. The availability of an alternative means to achieve a desired outcome has no bearing on finality. ..............................................................................................................................................12
E. There is no implied preclusion of review for five-year review decisions that overcomes the strong presumption of reviewability of agency action. ...............................................................13

II.     THE FWS DECISION TO MAINTAIN THE THREATENED LISTING FOR THE NON-LISTABLE THREE-STATE MURRELET DPS WAS ARBITRARY AND CAPRICIOUS ..............................................................................................................................................16
A. The court cannot consider a rationale not provided by the agency. .......................................17
B. The *post hoc* rationalization does not actually explain the decision. .......................................18
C. The *post hoc* rationalization contradicts FWS's published five-year review guidance. ...........19

III.    FIVE-YEAR REVIEW DETERMINATIONS, INCLUDING THOSE TO MAINTAIN A LISTING, MUST BE MADE THROUGH RULEMAKING PROCEDURES.................................................................................................................................21
A. Defendants' position contradicts the plain meaning of the statute. .........................................21
B. Requiring the agency to make decisions through rulemaking is not absurd. .........................24
C. No deference is due Defendants' view of the statute. ............................................................24
D. Defendants' "utter failure" to follow rulemaking procedures is not "harmless error." ...........26

IV.    NEPA APPLIES TO A FIVE-YEAR REVIEW DETERMINATION ..............................27

V.     THE COURT SHOULD VACATE THE LISTING OF THE THREE-STATE MURRELET DPS AS THE APPROPRIATE REMEDY FOR DEFENDANTS' VIOLATIONS ESTABLISHED IN THIS CASE ..................................................................................................30

Conclusion ..................................................................................................................................32

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

## Table of Authorities

### Cases

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) ........................................................................13

*AFL-CIO v. Chao*, 496 F.Supp.2d 76 (D.D.C.2007) ...........................................................4,27

*Allied-Signal, Inc. v. United States Nuclear Reg. Comm'n*, 988 F.2d 146 (D.C. Cir.1993) ..........30

*Artichoke Joe's v. Norton*, 216 F.Supp.2d 1084 (E.D. Cal. 2002), *aff'd*, 353 F.3d 712 (9th Cir.
  2003), *cert. denied*, 125 S. Ct. 51 (2004). ...........................................................................16

*\*Bennett v. Spear*, 520 U.S. 154 (1997) .............................................................................4,5

*Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667 (1986) ...........................................13

*Capital Network Sys., Inc. v. Fed. Commc'ns Comm'n*, 3 F.3d 1526 (D.C. Cir. 1993) ..........9,10

*Chevron Oil Co. v. Andrus*, 588 F.2d 1383 (5th Cir.), *reh'g denied* 591 F.2d 1343 (5th Cir.), *cert.
  denied*, 444 U.S. 879 (1979) ............................................................................................15

*Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837 (1984) .................................24

*Christensen v. Harris County*, 529 U.S. 576 (2000). ..............................................................25

*\*Columbia Gas Transmission Corp. v. Fed. Energy Reg. Comm'n*, 448 F.3d 382 (D.C. Cir.
  2006) .............................................................................................................................17

*Commodity Futures Trading Comm'n v. Schor***,** 478 U.S. 833 (1986). ....................................25

*Conn. Dept. of Pub. Util. Control v. Fed. Energy Reg. Comm'n*, 484 F.3d 558 (D.C. Cir. 2007).
  ........................................................................................................................................18

*Fla. Home Builders Ass'n v. Norton*, 496 F.Supp.2d 1330 (M.D. Fla. 2007) .............................24

*\*Fox Television Stations, Inc. v. Fed. Commc'ns Comm'n*, 280 F.3d 1027, *modified on other
  grounds*, 293 F.2d 537 (D.C. Cir. 2002) .......................................................7.8,9,13,14,30,31,32

*Fund For Animals, Inc. v. Thomas*, 127 F.3d 80 (D.C. Cir. 1997) .............................................30

*Goldstein v. Sec. & Exch. Comm'n*, 451 F.3d 873 (D.C. Cir. 2006)............................................21

*Immigration & Nat. Serv. v. St. Cyr*, 533 U.S. 289 (2001) .......................................................25

*Indep. Equip. Dealers Ass'n v. Envtl. Prot. Agency*, 372 F.3d 420 (D.C. Cir. 2004) ................11,12

*Keyspan-Ravenswood, LLC v. Fed. Energy Reg. Comm'n*, 474 F.3d 804 (D.C. Cir. 2007)
  ........................................................................................................................................18

*Marbled Murrelet v. Babbitt*, 83 F.3d 1060 (9th Cir.1996), *cert. denied sub nom. Pacific Lumber
  Co. v. Marbled Murrelet,* 519 U.S. 1108 (1997) ....................................................................5

*Marbled Murrelet v. Babbitt*, 182 F.3d 1091(9th Cir.1999), *cert. denied sub nom. Pacific Lumber
  Co. v. Marbled Murrelet*, 528 U.S. 1115 (2000) ....................................................................5

*Miami Free Zone Corp., Inc. v. Foreign Trade Zones Bd.*, 22 F.3d 1110 (D.C. Cir. 1994)..........15

*Mistick PBT v. Chao*, 440 F.3d 503 (D.C. Cir. 2006) ..............................................................13

*Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8 (D.C. Cir. 2005) ................................11,12

*Nat'l Wildlife Fed'n v. Babbitt*, 835 F. Supp. 654 (D.D.C. 1993) .............................................10

*N. Y. v. U.S. Envtl. Prot. Agency*, 350 F.Supp.2d 429 (S.D.N.Y. 2004) *aff'd in relevant portion*,
  *Nat'l Res. Def. Council v. Johnson*, 461 F.3d 164 (2d Cir. 2006) ......................................10,11

*Pacific Legal Found. v. Andrus*, 657 F.2d 829 (6th Cir. 1981) .............................................28,29

*\*Point Park Univ. v. Nat'l Labor Relations Bd.*, 457 F.3d 42 (D.C. Cir. 2006) ...........................17

*Seattle Audubon Soc'y v. Sutherland*, No. C06-1608MJP (W.D. Wa. August 1, 2007) ...............5

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

-ii-

*Sec. of Labor v. Nat. Cement Co. of Cal.*, - F.3d -, 2007 WL 2067023 (D.C. Cir. 2007) .........................................................................................................................................25
*Southern Co. Services, Inc. v. Fed. Energy Reg. Comm'n*, 416 F.3d 39 (D.C. Cir. 2005)...........17
*\*Sugar Cane Growers Co-op. of Florida v. Veneman*, 289 F.3d 89 (D.C. Cir. 2002)...................26
*Sullivan v. Stroop*, 496 U.S. 478 (1990) ..................................................................................21
*State of Ill., Dept. of Public Aid v. Schweiker*, 707 F.2d 273 (7th Cir. 1983). ..........................15
*TOMAC, Taxpayers of Mich. Against Casinos v. Norton*, 433 F.3d 852 (D.C. Cir. 2006)..........28
*United States Brewers Ass'n, Inc. v. Envtl. Prot. Agency*, 600 F.2d 974 (D.C. Cir. 1979) .......9,15
*United States v. Goldman*, 228 F.3d 942 (8th Cir. 2000), *cert. denied*, 531 U.S. 1175 (2001)....12
*United States v. West Coast Forest Resources Ltd. Partnership*, 2000 WL 298707 (D. Or. March 13, 2000) ...............................................................................................................................7
*Wyo. v. U.S. Dept. of Interior*, 360 F.Supp.2d 1214 (D.Wyo. 2005), *aff'd*, 442 F.3d 1262 (10th Cir. 2006)............................................................................................................................. ..16

**Statutes**

Administrative Procedures Act, 5 U.S.C. §701(a) ...................................................................13
Administrative Procedures Act, 5 U.S.C. §706(2) ....................................................................1
Endangered Species Act, §4(a) ...........................................................................................2,22
Endangered Species Act, §4(b) ..................................................................2,7,16,18,22,23,31
*Endangered Species Act, §4(c)(2)..............................................................1,5,6,12,22,23,26
Endangered Species Act, §9 ..................................................................................................7
National Environmental Policy Act ..................................................................................3,27,29
Pub.L. 83-205 ....................................................................................................................22
Regulatory Flexibility Act, 5 U.S.C. §§ 601 et seq...................................................................21
Unfunded Mandates Reform Act, 2 U.S.C. §§1501 et seq. ......................................................21

**Rules and Regulations**

Fed. R. Civ. P. 56 ...................................................................................................................3
40 C.F.R. §§1501.4(b)........................................................................................................28,29
50 C.F.R. 17.11-17.12 ...........................................................................................................20

**Other Authorities**

U.S. Fish and Wildlife Service, 5-Year Review Guidance: Procedures for Conducting Five Year Reviews Under the Endangered Species Act ....................................................................19
U.S. Fish and Wildlife Service, Endangered Species Listing Handbook ...................................22
U.S. Fish and Wildlife Service Manual Part 030, Section 1.7....................................................22
U.S. Fish and Wildlife Service, Report to Congress on the Recovery of Threatened and Endangered Species, Fiscal Years 2003-2004 ...........................................................................................5

*Denotes authorities chiefly relied on

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

-iii-

**Introduction**

The U.S. Fish and Wildlife Service (FWS) 2004 decision to maintain the threatened listing for the Three-State Marbled Murrelet Population after it found the population is not a Distinct Population Segment (DPS) eligible for listing under the Endangered Species Act (ESA) is reviewable and unlawful.

The FWS agrees its decision was the consummation of the statutorily-mandated five-year review process under §4(c)(2) of the ESA. The decision has the legal consequence of continuing to expose plaintiff American Forest Resource Council (AFRC), its members and other land owners along the entire Pacific coastline to the coercive legal effects of the ESA's criminal and civil sanctions in the daily course of managing millions of acres of land that may contain habitat for marbled murrelets. The FWS decision maintaining these onerous legal duties thus constitutes reviewable final agency action under controlling D.C. Circuit precedent. There is no merit to Defendants' contention that Congress implicitly precluded judicial review of this decision because the ESA expressly authorizes judicial review of certain other ESA listing decisions. This argument runs counter to the strong presumption in favor of judicial review, and comparable implied preclusion arguments have been rejected by the D.C. Circuit and three other circuits.

The FWS decision is arbitrary and capricious under §706(2) of the Administrative Procedures Act. FWS failed to give any contemporaneous explanation for the decision, and a court cannot uphold an explained decision. In this litigation, Defendants' counsel has offered a *post hoc* rationalization for the decision – that it is possible the birds in question might sometime in the

Page 1 -     **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

future be listed as part of a larger population – but even the *post hoc* rationalization does not explain the 2004 decision. Counsel never articulates <u>why</u> the potential need to protect the birds in the future, even if true, justifies continuing to give legal protection as a DPS to this group of birds that FWS has determined cannot legally be protected as a DPS – especially when FWS could at any time invoke the emergency listing procedures that the ESA expressly provides for immediate protection of imperiled species. Counsel's *post hoc* explanation is also contradicted by FWS's published five-year review guidance, which directs that if FWS determines that a species is not listable as a DPS, as occurred here, it should conclude the five-year review without further study.

The 2004 decision was also procedurally defective because it was not the product of notice-and-comment rulemaking. Defendants cling to the untenable view that the statute directing that the five-year review determination "shall be made in accordance with the provisions of ... [§4](b)" only incorporates the substantive requirements of §4(b) but not the procedural requirements of §4(b), an outcome in conflict with the plain meaning of the statutory language. The plain meaning is not absurd, as Defendants suggest, merely because it requires rulemaking for five-year review decisions after FWS has already made an internal decision: the purpose of notice-and-comment rulemaking is to allow the public to influence and improve agency decisions after the agency has already reached a tentative position. Finally, defendants' proffered interpretation of the ESA does not merit the deference Defendants seek because there is no ambiguity in the statute, Defendants' view was not itself the product of notice-and-comment rulemaking, and it has no persuasive force since it appeared in an informal guidance document with no explanation or justification. An

Page 2 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

additional procedural defect in the 2004 decision was the FWS's failure to prepare an environmental assessment to comply with the National Environmental Policy Act (NEPA).

D.C. Circuit precedent establishes that when an agency unlawfully fails to initiate rulemaking to vacate an existing regulation and it is clear the agency can never justify that decision, the court is empowered to vacate the existing regulation as a remedy for agency unlawfulness if the disruption to the agency's program will not be great. Those circumstances exist here, and the court should vacate the 1992 regulation listing the Three-State Murrelet DPS as a threatened species. Neither Defendants nor the intervenors have suggested any plausible reason the FWS can violate the express terms of the ESA by allowing a legally-unlistable DPS to remain listed as a DPS, even if is true that the same birds might in the future require protection as part of a larger population. A remand to allow FWS to search for a justification it can not possibly find is pointless. Nor would vacating the listing rule cause any disruption to the FWS program; FWS retains the power provided in the ESA to impose an immediate emergency listing of the birds if necessary to avoid any significant risk to the well-being of the species. Absent any disruption and with no reasonable future hope of justifying the unlawful decision, immediate vacatur of the marbled murrelet listing rule is warranted.[1]

---

[1]The standard on these summary judgment motions differs from the normal Fed. R. Civ. P. 56 summary judgment standard:

> In a case involving review of a final agency action under the Administrative Procedure Act, U.S.C. § 706 however, the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record. ... Summary judgment thus serves as the mechanism for

(continued...)

Page 3 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

## Argument

I.  **THE FWS DECISION TO MAINTAIN THE THREATENED LISTING FOR THE NON-LISTABLE THREE-STATE MURRELET DPS IS REVIEWABLE FINAL AGENCY ACTION**

Defendants argue that the FWS 2004 decision to maintain threatened status for the Three-State Murrelet DPS is not reviewable final agency action, and therefore this court lacks jurisdiction over Plaintiffs' Fourth Claim challenging the decision as arbitrary and capricious. Memorandum In Opposition to Plaintiffs' Motion For Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment (Defts. Memo.) at 11-15. Controlling Supreme Court and D.C. Circuit precedents show otherwise.

As Defendants acknowledge, the Supreme Court in *Bennett v. Spear*, 520 U.S. 154 (1997) described the two-part test for determining whether an agency action is final for purposes of judicial review:

> As a general matter, two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process, … -it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Id.*, 520 U.S. at 177-78 (citations and quotations omitted).

---

(...continued)

deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.

*AFL-CIO v. Chao*, 496 F.Supp.2d 76, 81-82 (D.D.C. 2007) (quotations and citations omitted).

Page 4 -     **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

A. The 2004 FWS decision consummates the agency's decisionmaking process. Defendants themselves admit – indeed proclaim – that the August 31, 2004 FWS decision marks the consummation of the agency's decisionmaking process for the five-year review under §4(c)(2) of the ESA in this case:

> In 2004 FWS concluded a five-year review of the marbled murrelet in Washington, Oregon, and California …. FWS determined based on that review that there should be no change in status of the three-state murrelet pending the completion of a status review of the marbled murrelet range-wide, even though FWS found that the three-state murrelet did not meet the definition of a distinct population segment ("DPS") under the agency's 1996 DPS policy.

Defts. Memo. at 1 (underlining added). Defendants emphasize the finality of their decision:

> In this case, FWS determined that the marbled murrelet should not be removed from the list of threatened species, but also stated that "[t]here will be no change in the species status pending the completion of a range-wide status review." AR 348. While the second statement might be perceived as an indication that the determination was not complete, this is incorrect. The range-wide status review is a separate process from the five-year review.

Id. at 14 n. 3; id. at 25 ("Here, FWS's five-year review determination was that there should be no change in the status of the three-state murrelet."); Defendants' Answer, ¶27 (denying allegation that "defendant Hall has violated 16 U.S.C. §1533(c)(2)(B), by failing to 'determine on the basis of such review whether any such species should ... be removed from such list.'").[2]

---

[2] AFRC's Second Claim for Relief is premised on the notion that Defendants had not made a §4(c)(2) determination in this case, and judicial intervention was needed to compel a decision. The claim was consistent with FWS' 2003-04 Biennial Report to Congress, in which FWS reported that the five-year review challenged here merely "recommended that the marbled murrelet remain listed as threatened until a range-wide status review for the entire species is completed." U.S. Fish and Wildlife Service, Report to Congress on the Recovery of Threatened and Endangered Species, Fiscal Years 2003-2004 at 14 (available at http://www.fws.gov/endangered/pdfs/recovery_report_2004.pdf) (last visited September 18, 2007) (judicially noticeable). Since Defendants have now contradicted their report to Congress and asserted that they did make a §4(c)(2) determination in this case – not to initiate a delisting rulemaking
(continued...)

**PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

B. <u>Rights or obligations are determined and legal consequences flow.</u>  The FWS decision

to maintain the threatened listing has a profound effect on AFRC, its members and many other

landowners along the Pacific Coast. The continued listing of the marbled murrelet exposes all of

them to the criminal and civil prohibitions of §9 of the ESA every day in the course of managing

their own land that  may be habitat for marbled murrelets.  *Marbled Murrelet v. Babbitt*, 83 F.3d

1060, 1067-68 (9th Cir.1996), *cert. denied sub nom. Pacific Lumber Co. v. Marbled Murrelet,* 519

U.S. 1108 (1997) (affirming preliminary injunction obtained by Environmental Protection

Information Center, a defendant-intervenor in this case, under §9 of the ESA preventing landowner

from logging 440 acres of private timber land that might be used by marbled murrelets); *Marbled*

*Murrelet v. Babbitt*, 182 F.3d 1091, 1093 (9th Cir.1999), *cert. denied sub nom. Pacific Lumber Co.*

*v. Marbled Murrelet*, 528 U.S. 1115 (2000) (landowner not entitled to recover $670,000 in attorney

fees expended to successfully defend claims that logging on the landowner's land would

unlawfully take marbled murrelets and violate other sections of ESA); *Seattle Audubon Soc'y v.*

*Sutherland*, No. C06-1608MJP (W.D. Wa. August 1, 2007) (issuing preliminary injunction at

request of another defendant-intervenor in this case, preventing a private landowner from removing

trees on more than 14,000 acres of private timber land that may be habitat for a threatened species);

*United States v. West Coast Forest Resources Ltd. Partnership*, 2000 WL 298707 (D. Or.  March

_____

(...continued)

– there is no need for the precise relief requested in the Second Claim since the court has power through alternate
remedies to achieve the goal sought by AFRC.  For this reason AFRC will withdraw its Second Claim for Relief so long
as Defendants continue to concede they made a §4(c)(2) determination in this case.

Page 6 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND
           DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND
           REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

13, 2000) (determining after three years of litigation by FWS that a landowner would not violate §9 of the ESA by logging 92 acres of private timberland that provided occasional habitat for a threatened species). These threats would not exist if FWS had issued a proposed rule delisting the marbled murrelet in 2004, which would by law have resulted in a final decision within 12-18 months, §4(b)(4)(E), the inevitable outcome of which would be a delisting decision based on the non-listability of the Three-State Murrelet DPS.

     C. <u>Controlling D.C. Circuit precedent establishes reviewability in this case</u>. D.C. Circuit precedent demonstrates that the FWS decision to leave the threatened listing in place for the Three-State Murrelet DPS was reviewable final agency action.[3]  The D.C. Circuit's decision in *Fox Television Stations, Inc. v. Fed. Commc'ns Comm'n*, 280 F.3d 1027, *modified on other grounds*, 293 F.2d 537 (D.C. Cir. 2002) is most directly on point. In *Fox Television*, a statute required the agency to "review" its existing rules biennially to determine whether any rule should be amended or repealed – comparable to the required ESA 5-year review FWS performed here. The agency conducted its biennial review of two agency rules (the "NTSO and CBCO Rules") and determined in a "1998 Report" "not to repeal or to modify" the rules, *Id*. at 1034 – comparable to FWS's maintain-status-quo decision here. The court rejected the agency's argument its decision was not final agency action:

---

[3] While Defendants discuss at length (Defts. Memo at 12-13) whether an FWS decision at the conclusion of a five-year review to <u>initiate</u> a rulemaking to delist, downlist or uplist a species is final agency action, that issue is not relevant to this case where the FWS decision was that it would <u>not</u> initiate any rulemaking. In any event, it seems self-evident that a decision to initiate a notice-and-comment rulemaking stands in a far different position from a finality standpoint than a decision that the agency will not take any further action.

Page 7 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

There is no question a Commission determination not to repeal or to modify a rule, after giving notice of and receiving comment upon a proposal to do so, is a final agency action subject to judicial review. … Equally clear, an agency's denial of a petition to initiate a rulemaking for the repeal or modification of a rule is a final agency action subject to judicial review. ... The question presented here is whether the Commission's determination not to repeal the NTSO and CBCO Rules, made pursuant to § 202(h) after issuing a "Notice of Inquiry" and receiving comment, is likewise a final agency action subject to judicial review.

The Commission first appears to contend that only a decision made pursuant to an adjudicative or rulemaking proceeding is final. The Commission fails, however, either to offer support for this argument or to acknowledge that we have held other types of agency actions to be final and reviewable….

Second, the Commission argues that the 1998 Report is not final because the agency intends to continue considering the ownership rules. That, however, does not mean the determination is not "final" as a matter of law. The 1998 Report is the Commission's last word on whether, as of 1998, the Rules were still "necessary in the public interest as the result of competition."

Finally, the Commission says the 1998 Report does not impose an obligation or deny a right because the petitioners would receive no immediate relief if they were to prevail in their present challenge; all they could get would be an order requiring the Commission to initiate a rulemaking. We shall have more to say below about the relief to which the petitioners are entitled. For now it is sufficient to observe that by the Commission's own account its decision is, in effect, at the least a decision not to initiate a rulemaking, and it is established that "an agency's refusal to institute [rulemaking] proceedings has sufficient legal consequence to meet the second criterion of the finality doctrine." … Therefore we conclude, as we must, that the decision under review - holding that the NTSO and CBCO Rules were necessary in the public interest - is a final agency action.

*Id.* at 1037-38.

The court also rejected the argument that the plaintiffs had not suffered harm simply because the status quo was continued – as FWS argues here:

Page 8 -      **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

> [T]he petitioners will indeed be harmed if we do not review the Commission's decision now. Although they could challenge the Rules by other means, retention of the Rules in the interim significantly harms both the networks and Time Warner. As we have said, the NTSO Rule constrains Fox and Viacom from entering into or completing certain specific transactions, and the CBCO Rule prevents Time Warner from acquiring television stations in certain markets where it would like to do so.

*Id.* at 1039 (discussing harm in the context of ripeness). The continuation of existing harm is harm.

In *Capital Network Sys., Inc. v. Fed. Commc'ns Comm'n,* 3 F.3d 1526, 1530 (D.C. Cir. 1993), the agency refused to initiate the rulemaking sought by the plaintiffs, but claimed its decision was not final because it had begun to consider other means to achieve the goal it believed the plaintiffs sought. The court described the agency's position as: "In response to this request for apples, the FCC promised oranges … while giving assurances that what had been promised would be found as satisfactory as what had been sought." The court held that taking up "oranges" did nothing to reduce the finality of the agency's decision not to adopt "apples," and held that refusal to initiate rulemaking sought by the plaintiff was reviewable final agency action.

In *United States Brewers Ass'n, Inc. v. Envtl. Prot. Agency*, 600 F.2d 974 (D.C. Cir. 1979), after the plaintiff group had failed to challenge a new regulation within the 90 day statutory review period, the group petitioned the agency to repeal the regulation. The agency denied the petition and left the existing regulation in place. When the plaintiff challenged the decision to leave the regulation in place, the agency claimed its decision was not reviewable. The court found the decision was reviewable under the statute allowing challenge of "action by the Administrator":

Page 9 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

"The Administrator's refusal to repeal his regulation was, for jurisdictional purposes, equivalent to its promulgation and therefore reviewable." *Id*. at 978.

In *Nat'l Wildlife Fed'n v. Babbitt*, 835 F. Supp. 654 (D.D.C. 1993), the court found that an agency announcement in the Federal Register that it would take no further rulemaking action under a particular statute was reviewable final agency action, rejecting the agency's contention that merely maintaining the status quo is not final agency action. *Id*. at 661.

In *N. Y. v. U.S. Envtl. Prot. Agency,* 350 F.Supp.2d 429 (S.D.N.Y. 2004) *aff'd in relevant portion*, *Nat'l Res. Def. Council v. Johnson*, 461 F.3d 164, 172 (2d Cir. 2006), the court found that an agency decision to leave in place an existing pesticide use policy (known as a "RED") was reviewable final agency action, rejecting all the same arguments Defendants present here:

> Defendants' assertion that the EPA's actions were not "final" because they left in place existing tolerances, rather than modifying or revoking them through new regulations, is unavailing. As the NRDC plaintiffs correctly point out, "the fact that the EPA maintained the same tolerances for these foods at the conclusion of what the agency itself calls an 'exhaustive scientific and regulatory effort' does not strip the agency's actions of finality or effect." … Courts reviewing agency determinations to preserve existing regulations have routinely found that such determinations may be subject to review… The fact that the agency chose to leave the existing tolerances in place in these cases, therefore, does not by itself preclude judicial review.

> Defendants' further contention that the challenged determinations were not final because they were announced through the issuance of a RED, rather than a regulation ... is equally meritless. … [T]he issuance of a RED, whether it be one revoking, modifying, or leaving in place a tolerance, constitutes the agency's final determination, at the conclusion of a statutorily mandated review process, on the safety of the tolerance in question. There is nothing that would indicate that such a determination is merely "tentative or interlocutory": Once the RED has been issued, no further action is required of the agency, absent the filing of a petition

Page 10 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

appealing that tolerance. The challenged determinations thus marked the culmination of the review process mandated under section 408(q), and discharged the EPA's legal duty under the FQPA to reassess tolerances according to a new, more stringent set of criteria. Moreover, the determinations clearly have a direct impact on legal rights and obligations: They determine the continued permissibility of moving the treated foods in interstate commerce, and provide the EPA's official assurance that these foods, when treated at the established tolerance levels, are safe.

*N. Y. v. U.S. Envtl. Prot. Agency,* 350 F.Supp.2d at 435-36 (citations omitted).

Notwithstanding these precedents, Defendants claim the FWS decision is not reviewable because "it does not change any existing legal obligations." Defts. Memo. at 14, citing *Indep. Equip. Dealers Ass'n v. Envtl. Prot. Agency*, 372 F.3d 420 (D.C. Cir. 2004) and *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8 (D.C. Cir. 2005). Neither of these cases supports Defendants' position here.

*Indep. Equip. Dealers Ass'n v. Envtl. Prot. Agency*, 372 F.3d 420 was a challenge to an informal agency letter restating a previously-announced interpretation of an existing regulation, which the court ruled did not meet the "rights or obligations have been determined, or from which legal consequences will flow" prong of the finality standard:

The answer seems obvious once we examine the concrete impact the EPA Letter had on IEDA and its members - in short, none whatsoever. As discussed above, the EPA Letter merely restated in an abstract setting - for the umpteenth time - EPA's longstanding interpretation of the Part 89 certificate of conformity regulations. The Letter neither announced a new interpretation of the regulations nor effected a change in the regulations themselves. The Letter was purely informational in nature; it imposed no obligations and denied no relief. Compelling no one to do anything, the letter had no binding effect whatsoever - not on the agency and not on the regulated community. It was, as EPA describes it, "the type of workaday advice letter that agencies prepare countless times per year in dealing with the regulated community."

Page 11 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

*Id*. at 427.

In *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, the plaintiff challenged "the FWS's promulgation of a survey protocol ... that provides a methodology for the detection of an endangered subspecies of butterfly in certain areas of southern California." *Id*. at 9. The survey protocol had no legal effect, was not binding or coercive on anyone, did not provide a safe harbor, and had no force in an enforcement proceeding; for these reasons the court found the protocol was not final agency action. *Id*. at 14-17.

Neither a "purely informational" "workaday advice letter" restating agency policy "in an abstract setting – for the umpteenth time" nor a non-coercive, non-binding, unenforceable survey protocol has any similarity to the FWS determination challenged here, which is mandated by §4(c)(2)(B) of the ESA, formally concludes the required five-year review process, discharges a legal duty of the FWS, has legal effect (terminating the §4(c)(2) process and starting a new five year waiting period for the next required review) and leaves in place the existing coercive controls on private citizens (ESA take prohibitions) created solely by the listing of the Three-State Murrelet DPS.[4]

D. The availability of an alternative means to achieve a desired outcome has no bearing on finality. Nor, contrary to Defendants' argument (Defts. Memo. at 15) does the fact that a citizen

_____

[4] Defendants' argument that the determination is also not final because the statute requires it to decide whether a species "should"(rather than "shall") be delisted or reclassified, Defts. Memo at 13, fails because here Defendants admit their decision concluded the five-year review process, and in any event courts sometimes hold that "should" means "shall." *See United States v. Goldman*, 228 F.3d 942, 944 (8th Cir. 2000), *cert. denied*, 531 U.S. 1175 (2001).

Page 12 -     **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

may have an alternative route to seek delisting have any bearing on the whether the five-year review determination is final agency action. A similar argument was rejected in *Fox Television Stations, Inc. v. Fed. Commc'ns Comm'n*, 280 F.3d at 1039:

> [T]he Commission argues that the petitioners will not be harmed if the *1998 Report* is not subject to review because they can seek relief from the operation of the rules in other ways - a petition for a rulemaking or a request for a waiver
> …
> Although they could challenge the Rules by other means, retention of the Rules in the interim significantly harms both the networks and Time Warner.

    E. <u>There is no implied preclusion of review for five-year review decisions that overcomes the strong presumption of reviewability of agency action.</u> Invoking the doctrine of *expressio unius est exclusion alterius*, Defendants also argue that a five-year review decision is not reviewable final agency action because elsewhere in the ESA Congress expressly provided for judicial review of agency decisions to reject a citizen listing petition, while it did not expressly do so for a five-year review determination. Defts. Memo. at 14-15. Whether viewed as an argument against reviewability under 5 U.S.C. §701(a)(1), as it is more commonly raised, or as an argument against final agency action, this argument has no merit whatever.

> [T]here is a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 67 (1986). "[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967) ….

*Mistick PBT v. Chao*, 440 F.3d 503, 509 (D.C. Cir. 2006) (additional citations omitted).

Page 13 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

The D.C. Circuit has twice rejected comparable arguments that the *expressio unius est exclusio alterius* maxim is sufficient to overcome the strong presumption of reviewability of agency action. In *Fox Television Stations, Inc. v. Fed. Commc'ns Comm'n*, 280 F.3d 1027, the court rejected the agency's argument that the court lacked jurisdiction over the challenged determinations because in the same statute Congress expressly provided for judicial review of some agency actions and therefore implicitly intended to preclude review of other determinations, and further that the agency's jurisdictional interpretation of the statute it administers is entitled to deference:

> In light of the presumption that final agency action is reviewable, we must reject the Commission's argument that the text and structure of the 1996 Act preclude judicial review. The contrasts the Commission draws between § 202(c) and § 202(h), and between § 252 and § 202(h), fall short of the "clear and convincing evidence" of congressional intent needed to foreclose review.
>
> Nor is an agency's interpretation of a statutory provision defining the jurisdiction of the court entitled to our deference under *Chevron*.

*Id*. at 1038-39. In an earlier case, the court held:

> [T]he Board argues that the Act's provision for judicial review of its revocation decisions, 19 U.S.C. § 81r(c) (1988), precludes APA review of any other Board action. We do not think much of this contention, which seems to rest on an attenuation of the maxim *expressio unius est exclusio alterius*. The maxim presumes that the legislature has spoken on an entire topic, usually by specifically listing its components, but has chosen to remain silent on a particular subset of the topic, leading to the inference that silence implies exclusion. … Here, Congress has spoken to only one particular instance of judicial review, and the Board asks us to infer from the general silence that Congress meant to exclude judicial review of all other actions. Such an inference strains the logic of the maxim and, more important, contradicts the traditional presumption of judicial review of agency action.

Page 14 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

*Miami Free Zone Corp., Inc. v. Foreign Trade Zones Bd.*, 22 F.3d 1110, 1112 n.2 (D.C. Cir. 1994).[5]

Other courts have rejected the same argument:

Nothing much can be inferred from the fact that Congress did not specify a method for judicial review of disallowances, even though earlier in section 1316 it had specified such a method for determinations of plan nonconformity. Not every silence is pregnant; *expressio unius est exclusio alterius* is therefore an uncertain guide to interpreting statutes ....

*State of Ill., Dept. of Public Aid v. Schweiker*, 707 F.2d 273, 277 (7th Cir. 1983).

Interior contends that because Congress explicitly provided for judicial review elsewhere in the OCS Lands Act, its failure so to provide in this case is telling. But the maxim *expressio unius est exclusio alterius* has been denied conclusive effect in this area. .... In any event, a rule of statutory construction could not provide the "clear and convincing evidence" necessary to support an inference of nonreviewability.

*Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1390-91 (5th Cir.) (citation omitted), *reh'g denied* 591 F.2d 1343 (5th Cir.), *cert. denied* 444 U.S. 879 (1979) .

[T]he federal defendants' implicit reliance on the legal maxim *expressio unius est exclusio alterius*-the expression of one implies the exclusion of others-to argue that the inclusion of specific remedies for some parties impliedly precludes all other parties and all other APA claims is not warranted.  ... The starting point of preclusion analysis is "the strong presumption that Congress intends judicial review of administrative action." ... This presumption is inconsistent with the federal defendants' reliance on a robust *expressio unius* doctrine because it would create the reverse presumption, one against APA review for most statutes.

---

[5]  In *United States Brewers Ass'n, Inc. v. Envtl. Prot. Agency*, 600 F.2d 974, the court noted that its finality determination quoted above was "fortified in our conclusion that we have jurisdiction by the general presumption of reviewability of administrative action. ... . In view of this presumption we are reluctant to reach a conclusion that might insulate the Guidelines from any judicial review."  *Id*. at 979 (citation omitted).

Page 15 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

*Artichoke Joe's v. Norton*, 216 F.Supp.2d 1084, 1113 (E.D. Cal. 2002) (citation omitted), *aff'd*, 353 F.3d 712 (9th Cir. 2003), *cert. denied*, 125 S. Ct. 51 (2004).

Here, the case for applying the *expressio unius* doctrine to preclude review of a five-year review determination is non-existent. Congress created a unique petition process in the ESA for a citizen to request a listing, and provided that an agency decision to reject a petition after preliminary review or after publishing a listing proposal for comment is subject to judicial review. §4(b)(3)(C)(ii))(B); §4(b)(6)(B)(ii).   The petition listing process is legally distinct from the alternative listing process initiated by the agency without a citizen petition.  "The regulations promulgated by the Secretary include two basic mechanisms that trigger a determination to change the status of a species: petition or status review."  *Wyo. v. U.S. Dept. of Interior*, 360 F.Supp.2d 1214 (D.Wyo. 2005), *aff'd*, 442 F.3d 1262 (10th Cir. 2006).  Provision of express judicial review of agency responses to a citizen petition cannot possibly lead to an inference that Congress intended to preclude judicial review of agency actions that are not taken in response to a citizen petition.

## II.   THE FWS DECISION TO MAINTAIN THE THREATENED LISTING FOR THE NON-LISTABLE THREE-STATE MURRELET DPS WAS ARBITRARY AND CAPRICIOUS

The Defendants' Memorandum contains a remarkable omission:  Defendants do not claim the record contains <u>any explanation</u> by FWS for its decision to maintain the threatened listing for the murrelet DPS it found was not legally eligible for listing as a DPS.  Defts. Memo. at 15-19 (argument under heading "Even if the Determination is Final Agency Action, it is Reasonable and Supported by the Administrative Record").

Page 16 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

Instead of pointing to any rationale the agency actually gave, Defendants' counsel attempts to articulate a rationale the agency might have given, having to do with the possibility that the birds in question might sometime in the future be listed as part of a larger population. Defts. Memo. at 16. This approach fails for three fundamental reasons.

A. The court cannot consider a rationale not provided by the agency. First, this attempt to explain for the first time in court what the agency failed to explain in its decision is fatally flawed as a matter of basic administrative law. "Nor can our Court fill in critical gaps in the Board's reasoning. We can only look to the Board's stated rationale. We cannot sustain its action on some other basis the Board did not mention." *Point Park Univ. v. Nat'l Labor Relations Bd.*, 457 F.3d 42, 50 (D.C. Cir. 2006). "Because this court cannot sustain agency action on grounds other than those adopted by the agency in the administrative proceedings, the absence of a valid rationale renders [the challenged agency] orders arbitrary and capricious." *Southern Co. Services, Inc. v. Fed. Energy Reg. Comm'n*, 416 F.3d 39, 48 (D.C. Cir. 2005) (citations and quotations omitted). "It is a fundamental precept of administrative law that we may not accept appellate counsel's *post hoc* rationalizations for agency action." *Conn. Dept. of Pub. Util. Control v. Fed. Energy Reg. Comm'n*, 484 F.3d 558, 560 (D.C. Cir. 2007). Since FWS provided no "stated rationale" for its decision to maintain the listing of the unlistable population, nothing its counsel can present in this court can rescue that decision. "[A] conclusion supported with *no* explanation is the epitome of arbitrary and capricious decisionmaking." *Columbia Gas Transmission Corp. v. Fed. Energy Reg.*

**PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

*Comm'n*, 448 F.3d 382, 387 (D.C. Cir. 2006) (citations and quotations omitted, emphasis in original).

Nor can the court blindly defer to FWS's "expert judgment," Defts. Memo. at 15-16, where there is no evidence FWS exercised any judgment. "We will defer to the Commission's judgment in technical matters within its expertise, but only when the Commission has in fact exercised its judgment. … While we acknowledge our deference to the agency's expertise in most cases, we cannot defer when the agency simply has not exercised its expertise." *Keyspan-Ravenswood, LLC v. Fed. Energy Reg. Comm'n*, 474 F.3d 804, 812 (D.C. Cir. 2007) (citation and quotation omitted).

B. The *post hoc* rationalization does not actually explain the decision. Second, counsel's suggested justification for the unexplained agency decision – that perhaps in the future the same birds might again become protected as members of a larger population of birds that could be listed as threatened or endangered -- does not in fact explain the 2004 decision even if it is true. Counsel cannot explain why a group of birds that cannot legally be listed as a DPS should continue to receive legal protection as a DPS – contrary to the express words of the ESA – simply because these same birds might again be protected in the future as part of a larger population. If the birds need protection in the future, the ESA gives FWS the power at any time, with no prior notice to the public, to order an immediate emergency listing if necessary to avoid "a significant risk to the well-being of any species of fish and wildlife." §4(b)(7). Counsel's suggested rationalization includes

Page 18 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

no explanation why the current illegal application of the ESA should continue while the express statutory mechanism for prompt protection of an imperiled species goes unused.

    C.   The *post hoc* rationalization contradicts FWS's published five-year review guidance.

In addition, counsel's *post hoc* rationalization for continuing the listing of the unlistable DPS is contrary to the final version of the very agency guidance document for which defendants ask the court to grant deference.  Defendants included in the administrative record (AR 352-361) an excerpt of a 2004 "confidential draft for Service(s) review only" of "5-Year Review Guidance," and seek deference for its views.  Defts. Memo. at 12, 25.  Oddly, Defendants failed to cite or provide the final 5-Year Review Guidance document issued in 2005.[6]  That document describes the conduct of the five-year review process in a manner that precludes the FWS from relying on the *post hoc* explanation Defendants' counsel is asking the court to accept here.

    The 5-Year Review Guidance states that for a listed DPS "the 5-year review begins with ensuring that the listed entity is appropriate."  5-Year Review Guidance at 2-5.  The recommended review template instructs FWS staff that the DPS determination is a threshold finding to continue the scientific review, and "[i]f the new information indicates the DPS listing is no longer valid, consider the 5-year review completed …."  Review Guidance at 59 (5-Year Review Template, page 3).  Here, FWS determined the Three-State Murrelet Population is not a listable DPS, yet -- if

---

[6] The guidance document, "5-Year Review Guidance: Procedures for Conducting Five Year Reviews Under the Endangered Species Act," was published jointly with the National Marine Fisheries Service, and can be found on that agency's website.  http://www.nmfs.noaa.gov/pr/pdfs/laws/guidance_5_year_review.pdf (last visited September 12, 2007).

Page 19 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP                             Mark C. Rutzick, Inc.
One Main Place                            4912 Shadow Valley Dr.
101 Southwest Main Street, Suite 1100         Fairfax, Virginia 22030
Portland, Oregon  97204-3219             Phone/Fax: 703-865-8418
Telephone 503-228-2525

counsel's *post hoc* justification is believed – the agency allowed it to remain listed based on some speculation about some other population of birds.

The 5-Year Review Guidance explicitly warns against allowing the possibility that the listed entity may be protectable as part of a different entity to influence the determination of the status of the listed population, unless the status review contemporaneously evaluates the other entity (which Defendants admit did not occur here[7]): "[T]he 5-year review must be conducted for, and arrive at a conclusion as to the appropriate classification of, the currently listed species as described in the List (50 CFR 17.11-17.12). An alternative is to do a separate status review which analyzes both the appropriate entity(s) for listing as well as the conservation status of those entities." Final 5-Year Review Guidance at 1-6 (underlining added).

The 5-Year Review Guidance rules out the very action that defense counsel is asking the court to believe FWS took here – continuing threatened status for a population that is not a listable DPS on the off chance that the same birds might be eligible for listing as part of a larger entity that FWS has not to date considered for listing. Even if the court were to believe counsel's *post hoc* rationalization was the actual reason for FWS's decision to allow an unlistable population to remain listed as threatened, the proffered explanation is itself arbitrary and capricious and must be rejected.[8]

---

[7] August 31, 2007 marked the end of the third year in which the supposed "range-wide" review of the marbled murrelet has been pending, with no indication any conclusion is foreseen.

[8] Defendants-Intervenors stray even farther from settled principles of administrative law in arguing paradoxically that the FWS decision should be upheld because FWS was wrong to find the Three-State Murrelet Population is not a
(continued...)

Page 20 - **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

III.    **FIVE-YEAR REVIEW DETERMINATIONS, INCLUDING THOSE TO MAINTAIN A LISTING, MUST BE MADE THROUGH RULEMAKING PROCEDURES[9]**

A.  <u>Defendants' position contradicts the plain meaning of the statute.</u>  "We ordinarily presume that the same words used in different parts of a statute have the same meaning." *Goldstein v. Sec. & Exch. Comm'n*, 451 F.3d 873, 882 (D.C. Cir. 2006).  This is the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (quotations omitted).  In §4 of the ESA Congress twice ordered the Secretary to "determine" a conclusion: 1) initially, whether a species is endangered or threatened; and 2) at the conclusion of a five-year review, whether the species is still endangered or threatened.  Congress similarly used the word "determination" twice: to describe the FWS initial decision whether a species is endangered or threatened, and, at the conclusion of the five-year review, to describe the FWS decision whether the species is still endangered or threatened.  The words "determine" and "determination" are presumed to mean the same in both subsections of §4.

---

[8]  (...continued)
listable DPS.  Deft-Int. Memo at 23-28.  There is no basis in administrative law to uphold an unexplained agency decision on the ground that another part of the same decision was incorrect.  Further, to the extent Defendant-Intervenors rely on their attached exhibits that are not part of the administrative record, the court may not consider these documents even if they had any bearing on the issues in this case, which they do not.

[9] If AFRC prevails on this point, its Fifth Claim challenging to the 2004 decision under the Regulatory Flexibility Act, 5 U.S.C. §§ 601 et seq., and the Unfunded Mandates Reform Act, 2 U.S.C. §§1501 et seq., would become moot, as the 2004 decision would be voided.  If AFRC does not prevail on this point, its Fifth Claim would necessarily also fail.  Thus, the Court has no need to address AFRC's Fifth Claim at this time.

Page 21 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

Subsection 4(c)(2)(B) of the ESA requires FWS to "determine" on the basis of a five-year review of a listed species "whether [the] species should … be removed from [the] list." The final sentence of §4(c)(2) states: "Each determination under subparagraph (B) shall be made in accordance with the provisions of subsection (a) and (b)." Defendants contend this sentence really means that each determination shall be made "in accordance with <u>some of</u> the provisions of subsection (a) and (b)." Defendants' position is contrary to the plain meaning of the statutory words.[10]

Section 4(a) directs that the Secretary "shall by regulation promulgated in accordance with subsection (b) determine whether any species is an endangered species or a threatened species." Section 4(b) is entitled "Basis for Determinations." It imposes a substantive duty – to make determinations based "solely on the best scientific and commercial data available," §4(b)(1), and a procedural duty – to make those determinations using the prescribed rulemaking steps. §4(b)(4)-(6).[11] Defendants find themselves in the awkward position of agreeing that the substantive "best

---

[10] Defendants' claim that FWS regional directors and other low level staff have authority to sign five-year review determinations, Defts.' Memo at 19-21, is premised on the contention that rulemaking procedures do not apply to five-year review determinations, and fails because that contention is incorrect. The decision to maintain a species on the threatened list is every bit as much as an exercise of "listing authority" as an initial listing decision, and can only be made by the two named officials with delegated authority to make listing decisions (Assistant Secretary for Fish and Wildlife and Parks and FWS Director), Endangered Species Listing Handbook at ii, 138; Fish and Wildlife Service Manual Part 030 (March 10, 1993), Section 1.7.

[11] Defendants' argument (Defts. Memo. at 24) that Congress did not intend to incorporate §4(b) rulemaking procedures into §4(c)(2) because §4(b)(4) was enacted in 1982 four years after §4(c)(2) had been enacted in 1978 is both misleading and irrelevant. It is misleading because the initial 1973 Act incorporated certain rulemaking procedures into §4(b), *see* Pub.L. 83-205 (available at *http://training.fws.gov/EC/Resources/Advanced_Sec_7/June_2005/ESA_ Legislative_History/Part_1_pages_24-44.pdf*), so when the five-year review provisions now in §4(c)(2) were enacted in 1978, the reference to §4(b) did incorporate some of the rulemaking procedures Defendants claim do not apply to §4(c)(2) determinations. The argument is also irrelevant because Defendants have the interpretative logic backwards:
(continued...)

Page 22 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

scientific data available" duty in §4(b)(1) applies to §4(c)(2) determinations, but at the same time arguing that the procedural rulemaking requirements in §4(b)(4)-(6) do not. Yet they offer no textual basis to explain the inconsistent application of §4(b) to a §4(c)(2) determination.

Defendants' position also leads to the perverse result illustrated in this case: a decision to delist or downlist a listed species, and relieve the public of some or all of the coercive burdens of listing, would only occur after rulemaking procedures, as would a decision to increase those coercive burdens by uplisting a species to endangered status, but a decision to extend the current coercive burdens on the public by maintaining an existing listing can be made in secret for improper reasons or (as here) no reason at all, with the public having no participation in the decision except through costly judicial review after the decision is made. The statutory words do not support this inconsistent result since each of these five-year review decisions "determine[s] whether any species is an endangered species or a threatened species" – the §4(a) trigger for the application of §4(b) rulemaking procedures, and they all must be made in the same procedural manner.

Defendants' inconsistent half-a-loaf interpretation of "determine" and "determination" in §4(c)(2) – the substantive rules of §4(b) apply but the procedural rules do not – simply has no basis in the statute. The plain meaning of the statute is that a §4(c)(2) determination whether a species should continue to be listed as endangered or threatened is governed by the same substantive <u>and</u>

---

(...continued)

when Congress enacted §4(b)(4)-(6) in 1982, it is presumed to have done so with the knowledge that the existing text of §4(c)(2) would apply the new provisions to §4(c)(2) determinations, yet it did not amend §4(c)(2) to avoid that result.

Page 23 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

procedural rules as a §4(a)(1) determination whether a species should initially be listed as endangered or threatened.

B. <u>Requiring the agency to make decisions through rulemaking is not absurd.</u>  Perhaps recognizing the facial implausibility of their statutory interpretation, Defendants claim the plain meaning of the statute would lead to "absurd results contrary to Congress' intent."  Defts. Memo at 24.  The absurdity, Defendants suggest, is to require them to follow rulemaking procedures after they have already made up their mind to maintain the listed status of a species.  *Id*. at 25.   Under that logic, <u>all</u> rulemaking is absurd because the agency has already decided what it wants to do when it publishes a proposed rule.  Yet the very point of rulemaking procedures is to allow the public to participate in and influence agency decisions rather than grant unbridled power to unelected agency officers.  Allowing the public to participate in FWS five-year review decisions is no more absurd that any of the hundreds of other rulemaking requirements Congress has imposed on agency decisions.[12]

C. <u>No deference is due Defendants' view of the statute.</u>  No more availing is Defendants' argument that their view of the statute is entitled to "<u>Chevron</u> step two" deference.[13]  Defts. Memo. at 25.  First, the court need not ever reach the second step of deference analysis in this case because

_____

[12]  Nor is it absurd to conclude that the statutory language requires all five-year review determinations to be made with rulemaking procedures, as Defendants argue on page 25, because the extra work would be burdensome on FWS.  If complying with the law is burdensome to FWS, the burden is due to its stubborn refusal for the past 30 years to comply with the statutory five-year review requirement.  *See, e.g., Fla. Home Builders Ass'n v. Norton*, 496 F.Supp.2d 1330, 1333 (M.D. Fla. 2007) (FWS admits failure to conduct five-year reviews for 89 species).  Burdensomeness is a matter for Congress to address, not the courts.
[13] *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

Page 24 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

the statutory words have an unambiguous plain meaning. *Sec. of Labor v. Nat. Cement Co. of California*, - F.3d -, 2007 WL 2067023 *6 (D.C. Cir. 2007) (no deference where statutory language has plain meaning). "We only defer ... to agency interpretations of statutes that, applying the normal tools of statutory construction, are ambiguous." *Immigration & Nat. Serv. v. St. Cyr,* 533 U.S. 289, 320 n. 45 (2001) (citation and quotation omitted).

Even if the court detected an ambiguity in the language, the FWS interpretation merits no deference. Defendants ask the court to grant deference to "a draft guidance document," Defts Memo at 25. As already noted, the cited draft guidance document has been supplanted by a final guidance document that Defendants fail to cite. Preliminary agency views in a draft document are entitled to no weight. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 845 (1986).

Nor is the agency's assertion in the final 5-Year Review Guidance document that "a 5-year review does not involve rulemaking," 5-Year Review Guidance at 1-2, entitled to any deference. The final guidance document does not merit *Chevron* deference because it was not adopted through notice-and-comment rulemaking or any equivalent formal process. *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ( "[I]nterpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant *Chevron*-style deference." ).

Such informal agency expressions are "entitled to respect ... but only to the extent that those interpretations have the power to persuade." *Christensen v. Harris County*, 529 U.S. at 587 (internal quotation and citation omitted). The statutory interpretation presented in the final 5-Year

Page 25 -   **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

Review Guidance has no "power to persuade" for the simple reason that the document presents no explanation or justification for the view that "a 5-year review does not involve rulemaking."

Indeed, the 5-Year Review Guidance patently contradicts the plain language of §4(c)(2)(B), which as noted expressly requires a "determination" following the conclusion of the five-year review (which in this case Defendants insist they made). The 5-Year Review Guidance excuses the FWS from making a "determination" following a five-year review, instead calling for the agency to make a "recommendation on whether reclassification of the species is indicated." 5-Year Review Guidance at 1-3. A recommendation is not a determination. A document which can ignore a plain statutory mandate has no power to "persuade" anyone of anything.

D. Defendants' "utter failure" to follow rulemaking procedures is not "harmless error."

Finally, Defendants assert their wholesale failure to follow any of the required rulemaking requirements is mere "harmless error" that should be overlooked. The D.C. Circuit has rejected such an argument:

> [A]n utter failure to comply with notice and comment cannot be considered harmless if there is any uncertainty at all as to the effect of that failure.
>
> Here the government would have us virtually repeal section 553's requirements: if the government could skip those procedures, engage in informal consultation, and then be protected from judicial review unless a petitioner could show a new argument-not presented informally-section 553 obviously would be eviscerated. The government could avoid the necessity of publishing a notice of a proposed rule and perhaps, most important, would not be obliged to set forth a statement of the basis and purpose of the rule, which needs to take account of the major comments-and often is a major focus of judicial review.

*Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 96-97 (D.C. Cir. 2002).

Page 26 -     **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND
            DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND
            REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

This standard "substantially lessens if not altogether eliminates a challenging party's burden, for there will rarely if ever be no uncertainty as to the error's effect, and the party is not even required to identify additional considerations [it] would have raised in a comment procedure." *AFL-CIO v. Chao*, 496 F.Supp.2d at 89 (quotations omitted).

Here, AFRC has plainly shown the effect of Defendants' rulemaking abdication is severe: if AFRC had been given the opportunity to comment on a proposal to maintain the threatened status for the Three-State Murrelet Population even though it is not a listable DPS (and Defendants never claim AFRC had that opportunity either formally or informally), it would have provided FWS all the arguments it has presented here why such an approach is flatly illegal. FWS would have been required to consider these comments and explain the basis on which it chose to reject them, if it had in fact made that decision. Without rulemaking procedures, AFRC had no chance to influence the decision before it was made. Defendants' wholesale failure to comply with rulemaking procedures cannot be considered harmless in this context.

## IV. NEPA APPLIES TO A FIVE-YEAR REVIEW DETERMINATION

The Council on Environmental Quality (CEQ) regulations implementing NEPA require that unless a federal agency has already determined that it is required to prepare an environmental impact statement (EIS) under NEPA, 42 U.S.C. §4332(2)(C), for a proposed federal action, or a "categorical exclusion" applies, the agency must prepare an environmental assessment (EA) to determine if the proposed action is likely to significantly impact the environment and therefore requires preparation of an EIS:

Page 27 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

In determining whether to prepare an environmental impact statement the Federal agency shall:

(a) Determine under its procedures supplementing these regulations (described in § 1507.3) whether the proposal is one which:

(1) Normally requires an environmental impact statement, or
(2) Normally does not require either an environmental impact statement or an environmental assessment (categorical exclusion).

(b) If the proposed action is not covered by paragraph (a) of this section, prepare an environmental assessment (§ 1508.9).

40 C.F.R. §§1501.4(b).  Contrary to this regulation, Defendants concede they did not prepare an EIS or an EA for their determination to maintain the listing of the Three-State Murrelet DPS, and do not claim any categorical exclusion excuses NEPA compliance.

Defendants maintain that despite the plain language of the CEQ regulation, they are not required to comply with the regulation based on *Pacific Legal Found. v. Andrus*, 657 F.2d 829 (6th Cir. 1981), which found NEPA compliance excused for an ESA listing decision because the listing decision must be based solely on the five enumerated statutory criteria, and an EIS "would not serve the purposes" of NEPA.  *Id.* at 836.  The decision did not address the requirement for an EA, or the effect of the CEQ regulations, which are either binding or due "substantial deference" by a reviewing court.  *TOMAC, Taxpayers of Mich. Against Casinos v. Norton*, 433 F.3d 852, 861 (D.C. Cir. 2006).

Defendants' position is untenable because they have taken some pains to argue that a five-year review determination is <u>not</u> a listing decision, and to attempt (after the fact) to justify the five-

Page 28 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

year review determination in this case on a basis that is <u>not</u> one of the five enumerated statutory criteria for listing – the speculation that perhaps in the future the same birds might again become protected as members of a larger population of birds that could be listed as threatened or endangered.  Thus, under Defendants' view of this case the reasoning of *Pacific Legal Found. v. Andrus* does not apply to this decision.

Most importantly, the *Pacific Legal Found. v. Andrus* decision is not consistent with current judicial interpretation of statutes and regulations as shown above – that courts must enforce the plain meaning of a statute or regulation, and implied exemptions can be discerned only where the words of the statute or regulation are ambiguous.  There is no ambiguity here:  since an EIS was not prepared for the §4(c)(2) determination and no categorical exclusion applies, the CEQ regulations require that Defendants "shall … prepare an environmental assessment." 40 C.F.R. §§1501.4(b).  They failed to do so.  This failure violates NEPA.

Nor can Defendants escape the duty to prepare an EA by presenting yet another *post hoc* rationalization here – that the five-year review determination in this case was not a "major federal action" since it left in place the existing status quo.  Defts. Memo. at 29.  FWS never presented this explanation in the five-year review document, and indeed made no mention of NEPA anywhere in the document.  The purpose of an EA is to determine whether the proposed action is a "major federal action[] significantly affecting the  human environment" requiring an EIS under 42 U.S.C. §4332(2)(C).  Defendants cannot escape NEPA compliance by assuming they know the answer an

Page 29 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

EA is designed to give them. *Fund For Animals, Inc. v. Thomas*, 127 F.3d 80 (D.C. Cir. 1997) does not address an agency's obligation to prepare an EA, and does not aid Defendants here.

**V.    THE COURT SHOULD VACATE THE LISTING OF THE THREE-STATE MURRELET DPS AS THE APPROPRIATE REMEDY FOR DEFENDANTS' VIOLATIONS ESTABLISHED IN THIS CASE**

AFRC has demonstrated that Defendants gave no justification for the decision to maintain the threatened listing for the Three-State Murrelet DPS that it had decided is not a listable DPS, that its counsel's *post hoc* rationalization could not have justified the decision even if the FWS had actually employed the proffered rationale, and that there is no justification for the decision. In this circumstance the Court has the power to vacate the existing listing rule to remedy the FWS's arbitrary and capricious conduct, and should exercise that power.[14]

*Fox Television Stations, Inc. v. Fed. Commc'n Comm'n.*, 280 F.3d 1027, holds that a court reviewing an agency's decision declining to institute a rulemaking to vacate an existing rule has "the power to require the [agency] to vacate a rule it had improperly retained." *Id.* at 1048. "The decision whether to vacate depends on the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *Id.*, quoting *Allied-Signal, Inc. v. United States Nuclear Reg. Comm'n,* 988 F.2d 146 (D.C. Cir.1993).

---

[14] AFRC did not explicitly seek this remedy in its Amended Complaint, but did seek "such other relief as the court deems just and equitable." Amended Complaint, Prayer For Relief, ¶6. Defendants' complete inability to articulate even as a *post hoc* rationalization any plausible reason for its decision to retain the threatened listing has provided the legal basis for the additional remedy requested herein.

Page 30 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

The *Fox Television Stations, Inc.* court exercised that power to vacate the improperly-retained "CBCO Rule":

> [N]either the Commission nor the intervenors gave any plausible reason for believing the CBCO Rule is necessary …. Although the Commission presumably made its best effort, the reasons it gave … for retaining the CBCO Rule were at best flimsy, and its half-hearted attempt to defend its decision in this court is but another indication that the CBCO Rule is a hopeless cause.
>
> Nor does it appear that vacating the CBCO Rule will be disruptive of the agency's regulatory program. …[T]he agency [can] re-promulgate the Rule [if it] is able to justify doing so  ….
>
> Because the probability that the Commission would be able to justify retaining the CBCO Rule is low and the disruption that vacatur will create is relatively insubstantial, we shall vacate the CBCO Rule.

*Id*. at 1052-53.

The circumstances are similar here:  Defendants offer only a patently unpersuasive *post hoc* rationalization for the unexplained decision, surely indicating any defense of the decision "is a hopeless cause." Further, any disruption to the agency program would be minor at worst.  As noted above, FWS has the power at any time, with no prior notice to the public, to order an immediate emergency listing if necessary to avoid "a significant risk to the well-being of any species of fish and wildlife."  §4(b)(7).  FWS can use this power instantly if any actual threat to the marbled murrelet species were to come into existence. And of course FWS retains the sole power to complete its "range-wide review" of the marbled murrelet species which has languished invisibly within the agency for over three years.  "Because the probability that the [FWS] would be able to justify retaining the [listing] is low and the disruption that vacatur will create is relatively

Page 31 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

insubstantial," *Fox Television Stations, Inc. v. Fed. Commc'ns Comm'n*, 280 F.3d at 1053, this

court should order vacatur of the rule listing the Three-State Murrelet DPS as a threatened species.

<u>Conclusion</u>

AFRC's motion for summary judgment should be granted, Defendants' and Defendant-

Intervenors' motions should be denied, and the court should vacate the 1992 regulation listing the

Three-State Murrelet DPS as a threatened species.

Dated this 21st day of September, 2007.

By:    /s/  Mark C. Rutzick

James T. McDermott, D.C. Bar No. 404886
jmcdermott@balljanik.com
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland OR 97204
Telephone:  (503) 228-2525
Facsimile:  (503) 226-3910

Mark C. Rutzick, *Pro Hac Vice*
markrutzick@cox.net
Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, VA 22030
Telephone/Facsimile: (703) 865-8418
Attorneys for Plaintiff American Forest
Resource Council

Page 32 -    **PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND
DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND
REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2007 I caused the following document:

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT to be filed by ECF, and served electronically through the CM/ECF system upon the following attorneys enrolled to receive such notice:

Meredith L. Flax
Jean E. Williams
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7369
Washington, D.C. 20044-7369

Patti A. Goldman
Kristen L. Boyles
Joshua Osborne-Klein
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104

DATED this 21st day of September, 2007.

_____/s/ MARK C. RUTZICK_____
Mark C. Rutzick

**PLAINTIFF'S MEMORANDUM IN OPP. TO DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTIONS FOR SUM. JUDG. AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUM. JUDG.**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN FOREST RESOURCE COUNCIL, | ) ) | Civil No.  1:07-cv-00484-JDB |
| Plaintiff, | ) | |
| vs. | ) | |
| H. DALE HALL, Director, United States Fish and Wildlife Service, DAVID M. VERHEY, Acting Assistant Secretary for Fish and Wildlife and Parks, and DIRK KEMPTHORNE, Secretary of Interior, | ) ) ) ) ) ) | |
| Defendants, | ) | |
| and | ) ) | |
| AUDUBON SOCIETY OF PORTLAND, CENTER FOR BIOLOGICAL DIVERSITY, CONSERVATION NORTHWEST, ENVIRONMENTAL PROTECTION INFORMATION CENTER, GIFFORD PINCHOT TASK FORCE, OREGON WILD, SEATTLE AUDUBON SOCIETY, SIERRA CLUB, and THE WILDERNESS SOCIETY, | ) ) ) ) ) ) ) ) ) | |
| Defendant-Intervenors. | ) ) | |

**PLAINTIFF'S STATEMENT RESPONDING TO DEFENDANTS' AND DEFENDANT-INTERVENORS' STATEMENTS OF MATERIAL FACTS NOT IN DISPUTE**

Plaintiff American Forest Resource Council (AFRC) submits this statement in compliance with Local Rule 56.1, which  requires an opposition to a motion for summary judgment to "be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include

Page 1 -     **PLAINTIFF'S RESPONSE TO DEFENDANTS' AND DEFENDANT-INTERVENORS' STATEMENTS  OF MATERIAL FACTS NOT IN DISPUTE**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

references to the parts of the record relied on to support the statement." AFRC has herewith filed its opposition to Defendants' and Defendant-Intervenors' cross-motions for summary judgment.

AFRC does not contend that there are any material facts in this case as to which "there exists a genuine issue necessary to be litigated." As this is a case seeking judicial review under the Administrative Procedures Act, 5 U.S.C. § 706, the court's review is based on the agency's administrative record without *de novo* factfinding:

> Under Fed.R.Civ.P. 56(c), summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* In a case involving review of a final agency action under the Administrative Procedure Act, 5 U.S.C., however, the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record. ... Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." ... Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.

*AFL-CIO v. Chao*, 496 F.Supp.2d 76, 81-82 (D.D.C. 2007) (quotations and citations omitted).

AFRC accordingly responds jointly to Defendants' Statement of Material Facts Not In Dispute and Defendant-Intervenors' Statement of Undisputed Material Facts as follows:

To the extent Defendants and Defendant-Intervenors rely on documents in the administrative record, the documents speak for themselves and no particular portions are more "material" than any other. To the extent Defendants and Defendant-Intervenors rely on documents or information that are not in the administrative record, such documents or information are not

Page 2 -    **PLAINTIFF'S RESPONSE TO DEFENDANTS' AND DEFENDANT-INTERVENORS' STATEMENTS OF MATERIAL FACTS NOT IN DISPUTE**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

material as a matter of law as they cannot form a basis for the court's judicial review of the agency

action challenged in this case.

Dated this 21st day of September, 2007.

By:    /s/ Mark C. Rutzick

       James T. McDermott, D.C. Bar No. 404886
       jmcdermott@balljanik.com
       BALL JANIK LLP
       101 SW Main Street, Suite 1100
       Portland OR 97204
       Telephone:  (503) 228-2525
       Facsimile:  (503) 226-3910

       Mark C. Rutzick, *Pro Hac Vice*
       markrutzick@cox.net
       Mark C. Rutzick, Inc.
       4912 Shadow Valley Dr.
       Fairfax, VA 22030
       Telephone/Facsimile: (703) 865-8418

Page 3 -    **PLAINTIFF'S RESPONSE TO DEFENDANTS' AND DEFENDANT-INTERVENORS' STATEMENTS  OF MATERIAL FACTS NOT IN DISPUTE**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2007 I caused the following document: PLAINTIFF'S RESPONSE TO DEFENDANTS' AND DEFENDANT-INTERVENORS' STATEMENTS OF MATERIAL FACTS NOT IN DISPUTE to be filed by ECF, and served electronically through the CM/ECF system upon the following attorneys enrolled to receive such notice:

Meredith L. Flax
Jean E. Williams
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7369
Washington, D.C. 20044-7369

Patti A. Goldman
Kristen L. Boyles
Joshua Osborne-Klein
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104

DATED this 21st day of September, 2007.

_____/s/  Mark C. Rutzick_____
Mark C. Rutzick

Page 4 -    **PLAINTIFF'S RESPONSE TO DEFENDANTS' AND DEFENDANT-INTERVENORS' STATEMENTS OF MATERIAL FACTS NOT IN DISPUTE**

Ball Janik LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Mark C. Rutzick, Inc.
4912 Shadow Valley Dr.
Fairfax, Virginia 22030
Phone/Fax: 703-865-8418