UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN FOREST RESOURCE COUNCIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| H. DALE HALL, Director, U.S. Fish and | ) | Case No. 1:07-cv-00484 (JDB) |
| Wildlife Service, DAVID M. VERHEY, | ) | |
| Acting Assistant Secretary for Fish, Wildlife | ) | |
| and Parks, and DIRK KEMPTHORNE, | ) | |
| Secretary of the Interior. | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AUDUBON SOCIETY OF PORTLAND, | ) | |
| CENTER FOR BIOLOGICAL DIVERSITY, | ) | |
| CONSERVATION NORTHWEST, | ) | |
| ENVIRONMENTAL PROTECTION | ) | |
| INFORMATION CENTER, GIFFORD | ) | |
| PINCHOT TASK FORCE, OREGON WILD, | ) | |
| SEATTLE AUDUBON SOCIETY, SIERRA | ) | |
| CLUB, and THE WILDERNESS SOCIETY | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| | ) | |

**REPLY IN SUPPORT OF DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

PAGE

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    FIVE-YEAR REVIEW DETERMINATIONS, AND THIS DETERMINATION IN
      PARTICULAR, ARE NOT CHALLENGEABLE FINAL AGENCY ACTION . . . . . . . 2

      A.    Five-Year Review Determinations Are Not Final Agency Action . . . . . . . . . . . 2

      B.    The Three-State Murrelet Five-Year Review Determination, in Particular, is
            Not Final Agency Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      C.    Congress Did Not Intend for Courts to Review Five-Year Review
            Determinations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.   EVEN IF THE THREE-STATE MURRELET FIVE-YEAR REVIEW
      DETERMINATION IS FINAL AGENCY ACTION, THE DETERMINATION IS
      REASONABLE AND SUPPORTED BY THE RECORD . . . . . . . . . . . . . . . . . . . . . . . 7

III.  A FIVE-YEAR REVIEW DETERMINATION IS NOT A RULEMAKING . . . . . . . . . 10

      A.    It is Clear that Congress Did Not Intend FWS to Proceed via Rulemaking
            When it Makes Five-Year Review Determinations . . . . . . . . . . . . . . . . . . . . . . . 11

      B.    Under Chevron Step Two, FWS's Interpretation of the Statute Should be
            Upheld as Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      C.    Plaintiff Has Failed to Meet Its Burden to Show that Any Procedural Error
            Was Not Harmless . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.   NEPA DOES NOT APPLY TO FIVE-YEAR REVIEW DETERMINATIONS . . . . . . 18

V.    REGIONAL DIRECTOR ALLEN APPROPRIATELY SIGNED THE FIVE-YEAR
      REVIEW DETERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

TABLE OF AUTHORITIES

CASES                                                                              PAGE

AFL-CIO v. Chao, 496 F. Supp. 2d 76 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

American Wildlands v. Kempthorne, 478 F. Supp. 2d 92 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . 16

Barnhart v. Walton, 535 U.S. 212 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Bennett v. Spear, 520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Biodiversity Legal Found. v. Babbitt, 146 F.3d 1249 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . 16

Blincoe v. FAA, 37 F.3d 462 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Capital Network Sys. v. F.C.C., 3 F.3d 1526 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Chevron v. Natural Res. Def. Council, 467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . 11, 12, 14, 15

Citizens Against Rails-to-Trails v. Surface Transp. Bd., 267 F.3d 1144(D.C. Cir. 2001) . . . . . 20

City of New York v. Watkins, 757 F. Supp. 72 (D.D.C. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Coal. for Noncommercial Media v. FCC, 249 F.3d 1005 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . 23

Defenders of Wildlife v. Gutierrez, 484 F. Supp. 2d 44 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . 9

Dep't of Transp. v. Public Citizen, 541 U.S. 752 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Endangered Species Comm. v. Babbitt, 852 F. Supp. 32 (D.D.C. 1994) . . . . . . . . . . . . . . . . . . 23

Fox Television Stations, Inc. v. FCC, 280 F.3d 1027 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . 3, 4, 5

Franklin v. Massachusetts, 505 U.S. 788 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fund for Animals v. Thomas, 127 F.3d 80 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Gerber v. Norton, 294 F.3d 173 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Hecla Mining Co. v. EPA, 12 F.3d 164 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Idaho Farm Bureau Fed. v. Babbitt, 58 F.3d 1392 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 23

-ii-

Indep. Equip. Dealers Ass'n v. EPA, 372 F.3d 420 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . 3, 4

Indep. Ins. Agents of Am. v. Hawke, 211 F.3d 638 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 6

Karuk Tribe of Cal. v. U.S. Forest Serv., 379 F. Supp. 2d 1071 (N.D. Cal. 2005) . . . . . . . . . . 20

Maine Public Utilities Comm'n v. FERC, 454 F.3d 278 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . 11

Mashpee Wampanoag Tribal Council v. Norton, 336 F.3d 1094 (D.C. Cir. 2003) . . . . . . . . . . 16

Mova Pharm. Corp. v. Shalala, 140 F.3d 1060 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 13

Mylan Laboratories v. Thompson, 389 F.3d 1272 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . 15

Nat'l Ass'n of Home Builders v. Norton, 415 F.3d 8 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . 3, 4

Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 127 S.Ct. 2518 (2007) . . . . . . . . . . . . 9

Nat'l Ass'n of Homebuilders v. Norton, 2004 WL 3740765 (D. Ariz. June 28, 2004) . . . . . . . 23

Pacific Gas & Elec. Co. v. Federal Power Comm'n, 506 F.2d 33 (D.C. Cir. 1974) . . . . . . . . . . 7

Pacific Legal Found. v. Andrus, 657 F.2d 829 (6th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Pennzoil Co. v. FERC, 645 F.2d 394, 399 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Shook v. District of Columbia Fin. Responsibility and Management Assistance Auth., 132 F.3d
    775 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Skidmore v. Swift & Co., 323 U.S. 134 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Sugar Cane Growers Coop. of Fla. v. Veneman, 289 F.3d 89 (D.C. Cir. 2002) . . . . . . . . . . . . 17

Transohio Sav. Bank v. Director, Office of Thrift Supervision, 967 F.2d 598
    (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Trout Unlimited v. Lohn, 2007 WL 1730090 (D. Or. June 13, 2007) . . . . . . . . . . . . . . . . . . . . 21

Trudeau v. Federal Trade Commission, 456 F.3d 178 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . 6

Wolpaw v. Commissioner of Internal Revenue, 47 F.3d 787 (6th Cir. 1995) . . . . . . . . . . . . . . 17

Zuni Public Schools District No. 89 v. Department of Education, 127 S. Ct. 1534 (2007) . . . . 12

STATUTES

5 U.S.C. § 553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

16 U.S.C. § 1532(20) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
16 U.S.C. § 1533(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19
16 U.S.C. § 1533(b)(3)(C)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
16 U.S.C. § 1533(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
16 U.S.C. § 1533(b)(6)(B)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
16 U.S.C. § 1533(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

FEDERAL REGULATIONS

40 C.F.R. § 1500.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
50 C.F.R. § 424.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7
50 C.F.R. § 424.21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

LEGISLATION

1978 H.R. Rep. 95-1625, 1978 U.S.C.C.A.N. 9453 (Sept. 25, 1978) . . . . . . . . . . . . . . . . . . . . 13

Defendants, by and through undersigned counsel, hereby submit the following reply in support of Defendants' cross-motion for summary judgment. For the reasons set forth below and in Defendants opening brief, Defendants' cross-motion for summary judgment should be granted, and Plaintiff's Amended Complaint should be dismissed.

## INTRODUCTION

In this case, Plaintiff American Forest Resource Council ("Plaintiff" or "AFRC") is attempting to challenge the U.S. Fish and Wildlife Service's ("FWS") five-year review determination that there should be no change in the threatened status of the marbled murrelet in Washington, Oregon, and California ("three-state murrelet") pending the completion of a status review of the marbled murrelet range-wide, even though FWS found that the three-state murrelet did not meet the definition of a distinct population segment ("DPS") under the agency's 1996 DPS Policy. However, five-year review determinations, and in particular, the five-year review determination for the three-state murrelet, are not challengeable final agency action. Five-year review determinations are not agency actions by which rights or obligations have been determined, or from which legal consequences will flow. In addition, the five-year review determination for the three-state murrelet does not mark the consummation of the agency's decisionmaking, as the status review of the marbled murrelet range-wide is still pending. In any case, the basis for FWS's five-year review determination on the three-state murrelet is reasonable and supported by the record, not presented *post hoc* to the Court. As the record shows, the threats that led FWS to list the three-state murrelet in 1992 continue, and FWS could not implement a change in status before analyzing whether the listed entity constitutes a significant portion of the species' range.

-1-

FWS's five-year review determination on the three-state murrelet likewise suffers no procedural infirmities. The Endangered Species Act ("ESA") does not require FWS to follow the rulemaking requirements of the Administrative Procedure Act ("APA") when it makes five-year review determinations, but only when it implements a determination to change the status of a species. FWS is also not required to comply with the procedural requirements of the National Environmental Policy Act ("NEPA") when it makes five-year review determinations, because five-year review determinations are not "major federal actions" and because FWS is constrained by the ESA to consider only certain statutorily enumerated factors. Finally, the five-year review determination for the three-state murrelet was appropriately signed by Regional Director David Allen, who is given such authority by the FWS Manual.

In sum, FWS's five-year review determination for the three-state murrelet is not challengeable, but to the extent the Court disagrees, both the substance of the determination and the procedures used in making the determination should be upheld.[1]

## ARGUMENT

I.    **FIVE-YEAR REVIEW DETERMINATIONS, AND THIS DETERMINATION IN PARTICULAR, ARE NOT CHALLENGEABLE FINAL AGENCY ACTION.**

A.    **Five-Year Review Determinations Are Not Final Agency Action.**

Defendants have already explained why none of the determinations FWS may make at the conclusion of a five-year review are final agency action. Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Cross-Motion for

---

[1] Defendants note that they do not address Plaintiff's Second and Fifth Claims for Relief, as Plaintiff has abandoned these claims. Plaintiff's Memorandum in Opposition to Defendants' and Defendant-Intervenors' Motions for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment (Doc. 29) ("Plf's Opp") at 5, n.2 & 21, n.9.

Summary Judgment (Doc. 28) ("Defs' MSJ") at 11-15. Plaintiff fails to address, and thus implicitly concedes, that where FWS's five-year review determination is to change the status of a species (either delist, uplist, or downlist), there is no final agency action. Relying primarily on Fox Television Stations, Inc. v. FCC, 280 F.3d 1027 (D.C. Cir. 2002) ("Fox"), Plaintiff nonetheless argues that a five-year review determination not to change the status of a species is a final agency action. However, Fox is distinguishable both as a matter of law based on this Circuit's subsequent decisions in Indep. Equip. Dealers Ass'n v. EPA, 372 F.3d 420 (D.C. Cir. 2004) ("IEDA"), and Nat'l Ass'n of Home Builders v. Norton, 415 F.3d 8 (D.C. Cir. 2005) ("NAHB"), as well as factually.

The case law in this Circuit regarding agency action that maintains the status quo has been somewhat inconsistent. In Fox, the D.C. Circuit, focusing on the second prong of final agency action (whether the agency action is one by which rights or obligations have been determined, or from which legal consequences will flow), examined whether the FCC's determination not to repeal two of its rules after issuing a "Notice of Inquiry" and receiving comments constituted final agency action. The Court concluded that it was because the agency had conceded its action was "at the least a decision not to initiate a rulemaking, and it is established that an agency's refusal to initiate rulemaking proceedings has sufficient legal consequence to meet the second criterion of the finality doctrine." Fox, 280 F.3d at 1038 (citation and internal quotations omitted).

Subsequently, in IEDA and NAHB, the D.C. Circuit, also focusing on the second prong of final agency action, examined whether a letter from the Environmental Protection Agency to a regulated entity regarding its interpretation of certain Clean Air Act regulations and whether

FWS's issuance of a survey protocol for detecting the ESA-listed quino checkerspot butterfly constituted final agency action.  In both cases, as in <u>Fox</u>, the agency action was a decision that the agency claimed did not change the status quo.  However, in <u>IEDA</u> and <u>NAHB</u>, in contrast to <u>Fox</u>, the D.C. Circuit concluded that the agency action in question did not constitute final agency action because neither action effected a certain change in legal obligations.  372 F.3d at 428; 415 F.3d at 15.  To the extent there is a conflict between these cases, the later-decided interpretation – that an agency decision to maintain the status quo is not final agency action – should control.

In addition to being legally distinguishable, <u>Fox</u> is also factually distinguishable.  Indeed, in <u>Fox</u> the D.C. Circuit limited its holding to the facts of the case when it framed the issue as "whether the Commission's determination not to repeal the NTSO and CBCO Rules, made pursuant to § 202(h) after issuing a 'Notice of Inquiry' and receiving comment, is likewise a final agency action subject to judicial review."  280 F.3d at 1037.  The Court held that the FCC's determination was final agency action because it was at least a decision not to initiate rulemaking.  An FWS five-year review determination not to change the status of a listed species, in contrast, is a determination that reclassification of the species is not indicated, not a decision not to initiate a rulemaking.  Even if FWS determined to change the status of a species, a rulemaking would not necessarily follow, as the agency has the discretion not to actually implement that determination via a proposed rule.  50 C.F.R. § 424.16 (as a result of a five-year review determination, "the Secretary <u>may</u> propose revising the lists") (emphasis added).  Moreover, contrary to Plaintiff's claim, Plf's Opp at 7, even if FWS initiates a rulemaking by proposing a rule to change the status of a species, it is entirely uncertain whether FWS's final decision will be to adopt the proposed change in status.  Since the determination here is not a

-4-

decision not to initiate a rulemaking as in <u>Fox</u>, <u>Fox</u> does not control and the Court should conclude that a five-year review determination not to change the status of a species is not final agency action.

**B.    The Three-State Murrelet Five-Year Review Determination, in Particular, is Not Final Agency Action.**

Even if the Court were to determine that a five-year review determination not to change the status of a species is final agency action, it should still conclude that the five-year review determination for the three-state murrelet is not final agency action because it does not mark the consummation of the agency's decisionmaking.  Although Defendants completed a five-year review determination for the three-state murrelet in 2004, they also stated that their determination not to change the status of the species was contingent on a range-wide status review.  AR 348.  Accordingly, the five-year review determination here is not the culmination of the agency's decision-making process or FWS's last word on the status of the species.  <u>Bennett v. Spear</u>, 520 U.S. 154, 177-78 (1997) (to be reviewable under APA, the action must not be of a merely tentative or interlocutory nature); <u>Franklin v. Massachusetts</u>, 505 U.S. 788, 797 (1992) ("An agency action is not final if it is only 'the ruling of a subordinate official,' or 'tentative.' The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties.") (internal citation omitted); <u>Capital Network Sys. v. F.C.C.</u>, 3 F.3d 1526, 1530 (D.C. Cir. 1993) (agency's refusal to embark on requested rulemaking will be deemed final "if, and only if, that refusal terminally and completely resolved 'the case before the agency.'") (citation omitted); <u>compare Fox</u>, 280 F.3d at 1037-38 ("The 1998 Report is the Commission's <u>last word</u> on whether, as of 1998, the Rules were still 'necessary in the public interest as the result of competition.'").  FWS's decision is not

-5-

final agency action, and thus Plaintiff's Fourth Claim for Relief fails to state a claim for which

relief can be granted. <u>Trudeau v. Federal Trade Commission</u>, 456 F.3d 178, 185 (D.C. Cir.

2006).

      **C.**      **Congress Did Not Intend for Courts to Review Five-Year Review Determinations.**

      Finally, as Defendants have already explained, the fact that Congress did not provide for

judicial review of five-year review determinations, but did provide for such review of final

regulations or withdrawals of proposals to implement listing and five-year review

determinations, is evidence that five-year review determinations are not final agency action.

Defs' MSJ at 14-15 (citing <u>Indep. Ins. Agents of Am. v. Hawke</u>, 211 F.3d 638, 644 (D.C. Cir.

2000) for the proposition that the *expressio unius* canon is useful in the appropriate context).

Plaintiff's citation to cases where *expressio unius* arguments were rejected are unavailing, Plf's

Opp at 13-16, as the inquiry is specific to the facts of each particular case.  <u>Id.</u>; <u>Shook v. District</u>

<u>of Columbia Fin. Responsibility and Management Assistance Auth.</u>, 132 F.3d 775, 782 (D.C.

Cir. 1998) ("The maxim's [expressio unius] force in particular situations depends entirely on

context," and "will turn on whether, looking at the structure of the statute and perhaps its

legislative history, one can be confident that a normal draftsman when he expressed 'the one

thing' would have likely considered the alternatives that are arguably precluded.").

      In this case, the structure of the statute confirms that Congress did not intend for five-

year review determinations to be subject to judicial review.  The ESA provides for judicial

review when FWS implements a five-year review or listing determination by promulgating a

regulation or publishing a withdrawal, but does not provide for such review of five-year review

determinations themselves.[2]  Compare 16 U.S.C. § 1533(b)(3)(C)(ii) and (b)(6)(B)(ii) with 16

U.S.C. § 1533(c)(2).  Accordingly, Congress made clear in drafting section 4 of the ESA that

five-year review determinations are preliminary determinations of whether a reclassification of

the species is indicated, not the consummation of the agency's action.[3]  In accord, FWS views

the implementation of five-year review determinations as discretionary.  50 C.F.R. § 424.16; AR

352.  Although an agency's own characterization of its action as non-final is not determinative, it

does provide an indication of the nature of the action.  Blincoe v. FAA, 37 F.3d 462, 464 (9th

Cir. 1994); Pacific Gas & Elec. Co. v. Federal Power Comm'n, 506 F.2d 33, 39 n.20 (D.C. Cir.

1974); Pennzoil Co. v. FERC, 645 F.2d 394, 399 (5th Cir. 1981).  In sum, Congress' failure to

provide for judicial review of five-year review determinations is further evidence that such

determinations are not challengeable final agency action.

## II.   EVEN IF THE THREE-STATE MURRELET FIVE-YEAR REVIEW DETERMINATION IS FINAL AGENCY ACTION, THE DETERMINATION IS REASONABLE AND SUPPORTED BY THE RECORD.

As Defendants explained in their opening brief, Defs' MSJ at 15-19, even if the Court

were to find that FWS's five-year review determination is challengeable final agency action, the

determination is reasonable and supported by the administrative record.  In sum, as Defendants

explained, the record shows that FWS correctly determined not to change the status of the three-

---

[2] Which shows that the petition process provides the Congressionally-intended avenue for generating final agency actions on five-year review determinations.

[3] Furthermore, it is not uncommon for Congress to require an agency to complete certain tasks that are not subject to judicial review. See, e.g., Hecla Mining Co. v. EPA, 12 F.3d 164, 165-66 (9th Cir. 1993) (finding EPA's approval of impaired water "lists" under the Clean Water Act, § 304(l), to not be final agency action because "listing decisions are merely preliminary steps in the § 304(l) process") (citations omitted).

state murrelet as a threatened species pending a range-wide status review because: (1) the three-state murrelet population is continuing to decline (AR 425); (2) the recovery criteria for delisting the three-state murrelet population have not been met (AR 337); (3) the threats to the three-state murrelet population have not changed such that the population no longer meets the definition of a threatened species (AR 341); and (4) FWS has already considered (AR 887, 913) and must definitively determine (AR 318, 320) whether the three-state population constitutes a "significant portion of [the species'] range," 16 U.S.C. § 1532(20).

Notwithstanding this record-supported explanation, Plaintiff argues that Defendants did not claim the record contains any explanation to support FWS's decision and that instead counsel for Defendants provided the Court with a *post hoc* rationalization for the decision.  Plf's Opp at 16-18.  Plaintiff appears to incorrectly believe that FWS had to provide the explanation for its decision on the same page as the determination itself.  The Court's review is not limited, however, to the one page where FWS said it had determined not to change in status of the three-state murrelet pending a range-wide status review.  See 5 U.S.C. § 706 (judicial review of agency action is based on a "review [of] the whole record or those parts of it cited by a party . . . .").  The five-year review, which accompanies the determination and serves as the basis for the determination, explains that the recovery criteria for delisting the three-state murrelet population have not been met (AR 337) and that the threats to the three-state murrelet population have not changed such that the population no longer meets the definition of a threatened species (AR 341).  Similarly, the consultant report supporting the five-year review concluded that the three-state murrelet population is continuing to decline.  AR 425.

In addition to the continuing threats to the three-state murrelet population, FWS also

concluded that it had to address whether the population constitutes a significant portion of the species' range. While FWS had previously considered this issue, it had not done so definitely. FWS explained this conclusion in a press release issued the same day as the five-year review determination. AR 318 ("the question of whether the [three-state murrelet population] constitutes a significant portion of the range of the species, or whether the species as a whole is at risk of extinction, must be addressed before we take any action to affect the status of the murrelet as a threatened species under the Endangered Species Act."). See also AR 320 (letter of the same date stating that FWS was "retaining Federal listing status for the marbled murrelet until we can complete a range-wide review of the species to determine whether it is in danger of extinction throughout all or a significant portion of its range."). Given that another court had ordered FWS to list the three-state murrelet population because FWS had already determined the population qualified as a significant portion of the species' range, it would have been arbitrary and capricious for FWS to have implemented a determination to delist the population without addressing this issue. See AR 902 (Marbled Murrelet v. Lujan, No. C91-522R (W.D. Wash., Sept. 17, 1992)); AR 326 (five-year review noting court's ruling in Lujan). In sum, FWS's explanation is supported by the record and is more than adequate. See Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 127 S.Ct. 2518, 2530 (2007) (Courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (citation and internal quotations omitted); Defenders of Wildlife v. Gutierrez, 484 F. Supp. 2d 44, 54 (D.D.C. 2007) (though National Marine Fisheries Service explanation for denying rulemaking petition to protect ESA-listed species "may have been lacking in detail" and was "rather bare," court could not conclude that decision was arbitrary and capricious).

Plaintiff also erroneously argues that Defendants' explanation contradicts FWS's five-year review guidance. Plf's Opp at 19-20. As an initial matter, Plaintiff is incorrect that Defendants cited to the wrong five-year review guidance document. Id. Plaintiff mistakenly asserts that the version of the guidance it cites is the final document, when in fact it is a later draft. See July 18, 2006 Memorandum (attached hereto).[4] More importantly, the version Plaintiff cites was issued in 2006, and thus post-dates the decision being challenged in this case, which was made in 2004. Defendants therefore cited to and included the appropriate version of the guidance in the administrative record for this five-year review determination.

Even if the later version of the guidance did apply, it does not contradict Defendants' decision. The guidance, including the parts cited by Plaintiff, is meant to be generic and not tailored to specific or unique situations, such as the one here. Here, FWS was completing the three-state murrelet five-year review pursuant to a settlement agreement with AFRC. Because it was acting under a short deadline, FWS was unable to take the alternative suggested course of analyzing both whether the three-state murrelet was appropriately listed as a DPS and whether it should be listed as a significant portion of the species' range or as a different entity. Instead, FWS first appropriately analyzed whether the three-state murrelet was correctly listed as a DPS. Although FWS determined that the three-state murrelet did not meet the criteria for listing as a DPS, it had previously concluded the listed entity could also be listed as a significant portion of the species' range. This information combined with the continued threats to the listed entity, led FWS to conclude it could not change the status of the listed entity until it addressed the issue of

---

[4] Defendants include this memorandum solely to refute Plaintiff's claim that the extra-record guidance document it introduced to the Court is not final.

whether the listed entity should remain listed as a significant portion of the species' range or whether all or some other portion of the species should be listed.

## III.    A FIVE-YEAR REVIEW DETERMINATION IS NOT A RULEMAKING.

There is no dispute that the ESA requires FWS to make a five-year review determination "in accordance with the provisions of subsection (a) and (b) of this section."  16 U.S.C. § 1533(c)(2).   The parties disagree, however, over whether this phrase requires FWS to make a five-year review determination "by regulation" or according to the rulemaking requirements of APA § 553, 5 U.S.C. § 553.  Defendants have already explained that Plaintiff's argument that FWS must proceed via rulemaking fails under either step of the Chevron analysis, that requiring FWS to proceed via rulemaking would lead to absurd results, and that, in any event, any error is harmless because FWS provided sufficient notice and comment on the five-year review determination at issue here.  Plaintiff's response fails to refute these arguments.  Accordingly, the Court should dismiss Plaintiffs' Third Claim for Relief.

### A.    It is Clear that Congress Did Not Intend FWS to Proceed via Rulemaking When it Makes Five-Year Review Determinations.

By arguing only about the meaning of the plain language of the statute, Plaintiff's Chevron step one argument inappropriately ignores the legislative history, text, structure, and purpose of the statutory provision at issue.  Maine Public Utilities Comm'n v. FERC, 454 F.3d 278, 282 (D.C. Cir. 2006) (under Chevron step one, the Court is not confined to the text of the statute, but "applies the traditional tools of statutory interpretation in determining congressional intent, looking to the text, structure, purpose, and legislative history of a statute.") (citing Chevron v. Natural Res. Def. Council, 467 U.S. 837, 842-43 & n.9 (1984)); see also Zuni Public Schools District No. 89 v. Department of Education, 127 S. Ct. 1534, 1550 (2007) ("There is no

reason why [the court] must confine [itself] to, or begin [its] analysis with, the statutory text if other tools of statutory construction provide better evidence of congressional intent with respect to the precise point at issue."). However, even if the Court were limited to the plain language of the statute, Defendants are correct that the statute does not require FWS to make a five-year review determination via rulemaking.

The plain language of ESA section 4 requires the Secretary to proceed by regulation when he implements a determination to list or delist a species in the first instance, or when he implements a change in the status of an already listed species. Specifically, section 4(a) states that "the Secretary shall by regulation promulgated in accordance with subsection (b) of this section determine whether any species is an endangered species or a threatened species because of any of the following factors . . . ." 16 U.S.C. § 1533(a)(1). Section 4(b), in turn, requires the Secretary to propose a regulation "to implement a determination, designation, or revision referred to in subsection (a)(1) or (3) . . . ." 16 U.S.C. § 1533(b)(5). When FWS makes 90-day and 12-month findings under section 4(b)(3)(A) and 4(b)(3)(B) (or on its own initiative reviews the status of a species), it utilizes the five factors set out in section 4(a)(1), but is not required to proceed by regulation because it is not implementing a determination to list or delist, but only making a preliminary determination on the status of the species. Similarly, when FWS makes a five-year review determination, it is making a preliminary determination on whether reclassification of the species may or may not be indicated, not implementing that determination.

In this case, FWS followed the requirement to proceed by regulation when it implemented its determination to list the three-state marbled murrelet in 1992. See 57 Fed. Reg. 45328 (Oct. 1, 1992) (AR 887). Likewise, if FWS implements a determination to change the

status of the three-state murrelet it will proceed via the rulemaking requirements of section

4(b)(5) & (6). When FWS makes a five-year review determination that no change in listing

status is warranted, however, nothing is required to implement that determination, since it simply

leaves the existing listing rule in place.

Plaintiff ignores these statutory scheme arguments, and also ignores the legislative

history, which are equally relevant under <u>Chevron</u> step one. As Defendants have explained, the

legislative history evidences that Congress wanted FWS to apply the criteria of section 4(a)(1)

when it made a five-year review determination. Defs' MSJ at 24 (citing 1978 H.R. Rep. 95-

1625, 1978 U.S.C.C.A.N. 9453, 9467 (Sept. 25, 1978)). It also provides evidence that Congress

at that time was concerned with ensuring notice and comment when a species was proposed to be

listed, but said nothing about notice and comment for five-year review determinations.[5] 1978

U.S.C.C.A.N. at 9454, 9464, 9466, 9467-68.

Thus, even if the Court were to agree with Plaintiff that the plain language of the statute

suggests that FWS is required to follow rulemaking requirements when it makes five-year review

determinations, the legislative history shows this absurd result was not "the intention of the

drafters." <u>Mova Pharm. Corp. v. Shalala</u>, 140 F.3d 1060, 1068 (D.C. Cir. 1998) (citations

omitted). Requiring FWS to follow the requirements of APA § 553 would lead to absurd results

because FWS would either have to go through notice and comment twice – once for the five-year

review determination, and once when it implements a five-year review determination to change

_____

[5] While it is true that there was a notice provision in the statute at the time the five-year review
requirement was added to the ESA, Plf's Opp at 22 n. 11, that provision by its terms only applied
when the Secretary added or removed a species from the lists, not to five year-review
determinations.

the status of a species – or FWS would have to issue a regulation saying that a listed species should be listed. In essence, since a determination not to change the status of a species is the only determination where formal rulemaking will not necessarily follow, Plaintiff is suggesting that the statute requires FWS to proceed through formal rulemaking for every five-year review determination just in case in the end it concludes that the status of the species should not change.

Furthermore, Plaintiff is incorrect, Plf's Opp at 23-24, that proceeding through rulemaking is necessary to allow the public to participate in and influence the agency's five-year review determinations or that FWS maintains listings in secret. FWS's regulations require FWS to provide notice of five-year reviews. 50 C.F.R. § 424.21. The challenged three-state murrelet five-year review determination is an example showing that FWS provides adequate notice and opportunity for comment on five-year review determinations. AR 875, 861. Plaintiff took full advantage of this opportunity and submitted extensive comments. AR 733, 749, 794, 863. Accordingly, the Court should follow the intention of the drafters and require FWS to proceed via rulemaking only when it implements a determination to change the status of a species.

### B.    Under <u>Chevron</u> Step Two, FWS's Interpretation of the Statute Should be Upheld as Reasonable.

The Court need not reach <u>Chevron</u> step two since "Congress has directly spoken to the precise question at issue." <u>Chevron</u>, 467 U.S. at 842. To determine whether to proceed to step two the question is not, as Plaintiff states, whether "the statutory words have an unambiguous plain meaning," Plf's Opp at 25, but whether "the intent of Congress is clear," since if it is clear "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Id.</u> at 842-43. If the Court were to analyze the statute under <u>Chevron</u> step two, the agency's interpretation that the statute does not require FWS to make five-year review

-14-

determinations via regulation is reasonable and entitled to deference.

As Defendants stated in their opening brief, Defs' MSJ at 25-26, their long-standing interpretation that a five-year review determination is not a rulemaking is embodied in its draft five-year review guidance document. Plaintiff is incorrect, Plf's Opp at 25, that this document has been supplanted by a final guidance document, or that, even if it had been, the draft guidance would not be entitled to any weight since it was the guidance in effect at the time the decision challenged here was reached. In any case, the 2006 version of the guidance is consistent with the 2004 version in stating the agency's position that five-year review determinations are not rulemakings.

Furthermore, Plaintiff is mistaken that there is a blanket rule that informal agency expressions do not merit Chevron deference. Plf's Opp at 25. The D.C. Circuit has followed the Supreme Court's test for determining the deference due to agency interpretations that have not gone through formal rulemaking:

> Whether a court should give [Chevron] deference depends in significant part upon the interpretive method used and the nature of the question at issue. In Barnhart the Court concluded that "the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time all indicate that Chevron provides the appropriate legal lens through which to view the legality of the Agency interpretation here at issue."

Mylan Laboratories v. Thompson, 389 F.3d 1272, 1279-80 (D.C. Cir. 2004) (quoting Barnhart v. Walton, 535 U.S. 212, 222 (2002)).

A consideration of these factors here also "all indicate that Chevron provides the appropriate legal lens." Barnhart, 535 U.S. at 222. First, the five-year review guidance aims to fill the interstice between commands in the ESA, including section 4(c)(2)'s command to make

-15-

five-year review determinations "in accordance with the provisions of subsection (a) and (b),"

and the commands in the referenced subsections.  Second, FWS has unequivocal expertise

regarding five-year review determinations.  See, e.g., American Wildlands v. Kempthorne, 478

F. Supp. 2d 92, 96 (D.D.C. 2007) (FWS expertise in the area of wildlife conservation and

management entitles FWS to a strong presumption in favor of upholding its decisions).  Third,

the question of what procedures FWS must follow when it makes five-year review

determinations is very important to administration of the statute, given FWS's need to ensure the

most efficient use of its limited resources.  See Mashpee Wampanoag Tribal Council v. Norton,

336 F.3d 1094, 1101 (D.C. Cir. 2003) (agencies are in a unique position to allocate their

resources in the optimal way); Biodiversity Legal Found. v. Babbitt, 146 F.3d 1249, 1255 (10th

Cir. 1998) ("Congress left to the Service the difficult task of ordering the Service's work to both

fulfill the purpose of the ESA and comply with the statute's non-discretionary mandates.").

Fourth, five-year review determinations are undeniably complex, as they often require FWS to

make determinations based on limited and contradictory information.  Fifth, FWS has given

careful consideration to the question of whether it must proceed via rulemaking when it makes

five-year review determinations, as reflected in the draft guidance.  AR 352, 354, 359.  In sum,

as in Barnhart and Mylan Laboratories, these factors all point to the fact that FWS's

interpretation in its five-year review guidance that five-year review determinations are not

rulemakings is entitled to Chevron deference.  At a minimum, even if the Court determines the

guidance does not warrant Chevron deference, it should at least give the agency's interpretation

in the five-year review guidance deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944),

based on its "power to persuade."  Id. at 140, abrogation recognized by Wolpaw v.

<u>Commissioner of Internal Revenue</u>, 47 F.3d 787, 790-91 (6th Cir. 1995).

### C. Plaintiff Has Failed to Meet Its Burden to Show that Any Procedural Error Was Not Harmless.

Defendants asserted in their opening brief that, even if the Court were to find that FWS's failure to proceed via formal rulemaking was an error, the error was harmless because Plaintiff had sufficient notice of and opportunity to comment on the challenged determination. Plaintiff claims the failure to follow rulemaking requirements was not harmless error because of Defendants' "utter failure" to provide notice of and an opportunity to comment on the precise determination here, i.e., to maintain the status of the three-state murrelet while FWS conducts a range-wide status review of the species, even though FWS concluded the listed entity is not a DPS. Plf's Opp at 26-27 (citing <u>Sugar Cane Growers Coop. of Fla. v. Veneman</u>, 289 F.3d 89, 96 (D.C. Cir. 2002)). However, because Defendants did not utterly fail to provide notice and comment, Plaintiff had the burden to show "how it might have responded if given the opportunity" and that it "could mount a credible challenge to the rule on remand." <u>AFL-CIO v. Chao</u>, 496 F. Supp. 2d 76, 89-90 (D.D.C. 2007) (quoting <u>Gerber v. Norton</u>, 294 F.3d 173, 182, 184 (D.C. Cir. 2002)). Plaintiff has failed to meet this burden and thus the Court should find that any procedural error was harmless.

The situation here is far from an "utter failure" to comply with notice and comment. <u>Id.</u> There is no dispute that Defendants twice provided notice announcing the five-year review of the three-state murrelet and soliciting any new information on the species since its original listing in 1992. AR 875, 861. The notice informed the public that FWS intended to complete a five-year review that could result in a separate action to propose a change to the listed entity, that there could be no change in the status of the listed entity, and that FWS would be considering whether

-17-

the listed entity was appropriately listed as a DPS.  Id.  There is also no dispute that AFRC

responded to both notices by providing extensive comments to FWS, AR 863, 733, including

arguments on why the three-state murrelet does not qualify as a DPS, AR 869-871, 765-783, a

list of options that could permit FWS to "provide ESA protection for the same or a larger group

of marbled murrelets under a different legal rationale and a new rulemaking," AR 783-784, and

arguments against adopting each of these options, AR 783-790.  While FWS's notices may not

have been exactly in the form of a proposed determination not to change the status of the three-

state murrelet pending a range-wide status review, the information provided in the notices was

sufficient to alert the public of this possibility.

Since FWS adequately complied with notice and comment, Plaintiff had the burden to

show "how it might have responded if given the opportunity" and that it "could mount a credible

challenge to the rule on remand."  Id.  Plaintiff has argued only that "it would have provided

FWS all the arguments it has presented here why such an approach is flatly illegal."  Plf's Opp at

27.  Plaintiff's argument that it is "flatly illegal" for FWS to leave the murrelet listed while

considering the species' range-wide status contradicts the position AFRC took in its comments

to FWS during the five-year review, however.  There, AFRC acknowledged that, if FWS failed

to consider the option of listing the species based on the "significant portion of its range"

rationale, "there is a risk that the resulting decision would be found to be arbitrary and

unexplained" under current case law.  AR 788.  Accordingly, the Court should conclude that any

error was harmless.

## IV.    NEPA DOES NOT APPLY TO FIVE-YEAR REVIEW DETERMINATIONS.

Plaintiff erroneously asserts that NEPA applies to five-year review determinations

-18-

because the Council on Environmental Quality's ("CEQ") NEPA regulations require federal

agencies to prepare either an environmental assessment ("EA"), environmental impact statement

("EIS"), or find that a categorical exclusion applies, and Defendants have done none of these.

Plf's Opp at 27-30.  Plaintiff's argument fails on two grounds.  First, where, as here, there is no

"major federal action," NEPA does not apply at all and thus FWS was not required to prepare an

EA or EIS or find that its action qualifies for a categorical exclusion.  Second, even if a five-year

review determination could be considered a "major federal action," the Court should extend the

holding of Pacific Legal Found. v. Andrus, 657 F.2d 829 (6th Cir. 1981) ("PLF") that NEPA

does not apply to listing determinations to five-year review determinations because FWS is

constrained in making both determinations to consider only the five statutorily enumerated

factors in ESA § 4(a)(1), 16 U.S.C. § 1533(a)(1).

     In their opening brief, Defendants provided the Court with an alternative basis for

dismissing Plaintiff's NEPA claim on the grounds that a decision to maintain the status quo does

not constitute a "major federal action" under NEPA.  Defs' MSJ at 29 (citing Fund for Animals

v. Thomas, 127 F.3d 80, 84 (D.C. Cir. 1997)).  In response, Plaintiff claims that Fund for

Animals does not aid Defendants because it only addresses an agency's obligation to prepare an

EIS, not an EA.  Plf's Opp at 29-30.  While Fund for Animals may have been about an EIS, its

statement that agency decisions that maintain the status quo do not constitute "major federal

actions" under NEPA comports with case law holding that if there is no "major federal action,"

the action does not fall within NEPA at all and so there is no need to prepare an EA or EIS.

Karuk Tribe of Cal. v. U.S. Forest Serv., 379 F. Supp. 2d 1071, 1099 (N.D. Cal. 2005) ("the

most important threshold question is whether the action falls within NEPA in the first place.  If

there is no 'major federal action,' that is the end of the inquiry; the agency need not prepare an

EIS or EA.") (citing Citizens Against Rails-to-Trails v. Surface Transp. Bd., 267 F.3d 1144,

1151 (D.C. Cir. 2001)); see also Dep't of Transp. v. Public Citizen, 541 U.S. 752, 771 (2004)

(agency did not have to consider effects of action by a third party in an EA where agency had no

discretion to prevent that action). Since a decision to maintain the status quo is not a "major

federal action," and if there is no "major federal action" there is no obligation to prepare an EA

or EIS, NEPA does not apply to the five-year review determination for the three-state murrelet,

which determined that there be no change in status of the listed entity pending a range-wide

status review.[9]

Even if the five-year review determination could be considered a "major federal action,"

the Court should extend the holding of the Sixth Circuit in PLF and find that NEPA does not

apply to five-year review determinations. Plaintiff argues that PLF "is not consistent with

current judicial interpretation of statutes and regulations," Plf's Opp at 29, though Defendants

could not discern what, if any, authority Plaintiff relied on in making this statement. Indeed, it

appears to Defendants that the opposite is true. In Trout Unlimited v. Lohn, No. CV05-1128-

JCC, 2007 WL 1730090, *13 (D. Or. June 13, 2007), which Defendants cited in their opening

brief, Defs' MSJ at 28, and Plaintiff failed to address on reply, a district court extended the

---

[9] Plaintiffs are incorrect that Defendants' argument is a *post hoc* rationalization. As the Sixth
Circuit explained in PLF, the decision not comply with NEPA's requirements is a "pure question
of law" and the agency was not required to make such a decision because it would not serve the
purposes of arbitrary and capricious review. 657 F.2d at 841. In any case, FWS formalized its
position after PLF, based on recommendations from CEQ, "that Section 4 listing actions are
exempt from NEPA review 'as a matter of law.'" 48 Fed. Reg. 49244 (Sept. 21, 1983). Even
though five-year review determinations are not listing determinations, the reason for the
exemption is the same in both cases – that FWS is constrained by the five statutorily enumerated
factors in ESA section 4(a)(1).

reasoning of <u>PLF</u> to a National Marine Fisheries Service guidance document designed to help the Secretary of Commerce make listing determinations. The same reasoning applies here – because there is a direct statutory conflict between NEPA section 4332(2)(C) and ESA section 4(a)(1), FWS cannot consider the factors set forth in NEPA when it makes a five-year review determination, and so requiring FWS to comply with NEPA under these circumstances would be a waste of resources.[7] <u>See</u> <u>Public Citizen</u>, 541 U.S. at 767. Plaintiff did not object to FWS's lack of NEPA documentation on its listing determination for the three-state murrelet in 1992, and should not be heard to complain of the similar lack of NEPA documentation for FWS's five-year review determination.

## V.     REGIONAL DIRECTOR ALLEN APPROPRIATELY SIGNED THE FIVE-YEAR REVIEW DETERMINATION.

Although Plaintiff has once again conceded that Defendants completed the five-year review determination for the three-state murrelet, Plf's Opp at 5, n.2, it confusingly continues to assert that the determination is invalid because it was signed by a Regional Director, who Plaintiff contends has not been delegated authority to sign such determinations. Plf's Opp at 22, n. 10. Plaintiff's argument makes no sense. Plaintiff cannot both concede that Defendants completed the determination, and also claim the determination is ultra vires. <u>See</u> <u>Transohio Sav.</u> <u>Bank v. Director, Office of Thrift Supervision</u>, 967 F.2d 598, 621 (D.C. Cir. 1992) ("Agency actions beyond delegated authority are ultra vires, and courts must invalidate them.") (citations and internal quotations omitted); <u>City of New York v. Watkins</u>, 757 F. Supp. 72, 77 (D.D.C.

---

[7] Plaintiff's reliance on the CEQ regulations is similarly unavailing. The regulations themselves state that they are not applicable to or binding on federal agencies "where compliance would be inconsistent with other statutory requirements." 40 C.F.R. § 1500.3.

1991), aff'd, 956 F.2d 1175 (Em. App. 1992) (Corporation Counsel acted ultra vires in executing a waiver, as she had no authority to sign and thus the waiver was null and void).

In any case, Plaintiff is incorrect that Defendants' argument that FWS Regional Directors have been delegated authority to sign five-year review determinations "is premised on the contention that rulemaking procedures do not apply to five-year review determinations." Plf's Opp at 22, n. 10. As Defendants explained in their opening brief, the FWS Manual clearly indicates that Regional Directors have delegated authority over all FWS ecological services programs, including five-year review determinations, regardless of whether FWS is required to proceed via rulemaking or not. Defs' MSJ at 20 (citing AR 884 & 886).

## VI.    REMAND, NOT VACATUR, IS THE APPROPRIATE REMEDY.

Although Defendants continue to reserve their right to separately brief the appropriate remedy should such briefing be necessary, they also continue to maintain that if the Court rules in Plaintiff's favor on any of its remaining claims, the appropriate relief would be a remand to the agency, not an order requiring FWS to delist the three-state murrelet or an order vacating the listing. Plaintiff wisely does not persist in its request that the Court require FWS to delist the three-state murrelet. See Defs' MSJ at 32. However, Plaintiff argues for the first time on reply that the Court should vacate the listing rule, rather than remand, because FWS allegedly will not be able to provide a rational basis for its decision and "any disruption to the agency program would be minor at worst." Plf's Opp at 31. To the extent the Court even considers and argument newly raised on reply, Plaintiff is wrong on both accounts. See Coal. for Noncommercial Media v. FCC, 249 F.3d 1005, 1010 (D.C. Cir. 2001) (raising new argument in a reply brief is too late).

As an initial matter, the listing rule is not before the Court. To the extent there is any

action before the Court, it is only the five-year review determination.  Any remedy must be

limited to that determination, and not the underlying listing rule.  To the extent that the Court

would even consider the extraordinary remedy of vacating the listing rule as to remedy for a

five-year review determination violation, the Court should recognize that this remedy is

disfavored even when a listing rule, itself, has been challenged and found invalid.  <u>Nat'l Ass'n of

Homebuilders v. Norton</u>, No. CIV 00-0903-PHX-SRB, 2004 WL 3740765, *5 (D. Ariz. June 28,

2004) (citing <u>Endangered Species Comm. v. Babbitt</u>, 852 F.Supp. 32, 41 (D.D.C. 1994)) ("if the

Court vacates the Listing Rule and FWS later determines that the Arizona pygmy-owl population

should be relisted as endangered, the unprotected population may have suffered irreversible

harm in the intervening time. . . . temporary delisting of an animal, even for a short period of

time, might encourage landowners to take action that might be prohibited in the future."); <u>see

also</u> <u>Idaho Farm Bureau Fed. v. Babbitt</u>, 58 F.3d 1392, 1405-1406 (9th Cir. 1995) ("The

equitable concerns weigh toward leaving the listing rule in place while FWS remedies its

procedural error and considers anew whether to list the Springs Snail.").  Where, as here, FWS

has already concluded that there are continuing threats to the species, and that the species does

not meet the recovery criteria for delisting, there is no basis for disturbing the listing rule.  Any

relief ordered by this Court should be limited to a remand of the five-year review determination.

<b><u>CONCLUSION</u></b>

For all the foregoing reasons, as well as the reasons set forth in Defendants' opening

brief, the Court should grant Defendants' Motion for Summary Judgment, deny Plaintiff's

Motion for Summary Judgment, dismiss Plaintiff's Amended Complaint with prejudice, and

enter judgment in favor of Defendants.

-23-

Dated: October 19, 2007                  Respectfully submitted,

                                         RONALD J. TENPAS
                                         Acting Assistant Attorney General

                                         JEAN E. WILLIAMS, Chief
                                         LISA L. RUSSELL, Assistant Chief


                                         _____/s/ *Meredith L. Flax*_____
                                         MEREDITH L. FLAX, Trial Attorney (DCB 468016)
                                         U.S. Department of Justice
                                         Environment and Natural Resources Division
                                         Wildlife and Marine Resources Section
                                         P.O. Box 7369
                                         Washington, D.C. 20044-7369
                                         Telephone: (202) 305-0404
                                         Facsimile: (202) 305-0275
                                         Meredith.Flax@usdoj.gov

OF COUNSEL:

Eric W. Nagle
Office of the Solicitor
Pacific Northwest Regional Office
500 N.E. Multnomah St., Suite 607
Portland, OR 97232



**UNITED STATES DEPARTMENT OF COMMERCE**
**National Oceanic and Atmospheric Administration**
NATIONAL MARINE FISHERIES SERVICE
Silver Spring, MD 20910

JUL 1 8 2006


MEMORANDUM FOR:    Division Chiefs
                   Regional Administrators
                   Science Center Directors

FROM:              James H. Lecky, Director
                   Office of Protected Resources

SUBJECT:           Interim Guidance for Conducting ESA 5-Year Status Reviews /
                   Call for 5-Year Review Plan
                   (**RESPONSE DUE**: September 15, 2006)

Thank you for your comments on the draft 5-Year Review Guidance.  Your comments were
incorporated into the latest version of the guidance, the Interim 5-Year Review Guidance, which
will serve as the interim until the guidance is cleared by DOI (FWS is currently working under
the same interim guidance).  A copy of the guidance is attached, and is also available on the web
at: http://www.nmfs.noaa.gov/pr/5-year reviews/.

I ask each region, and the Endangered Species and Marine Mammal and Sea Turtle Divisions in
Headquarters to coordinate with each other and the Science Centers to develop a schedule to
complete 5-year reviews, and identify leads for the review.  A list of species and suggested lead
regions is attached.

A 5-year review should be completed for each listed species within the next 5 years.  Those
species for which a status review has recently been completed (such as Pacific salmonids) will
not need to have a 5-year review completed for another 5 years.  Please keep in mind that a status
review can serve as a 5-year review so long as all the standards for a 5-year review have been
met.  A short template has been added to the guidance, which can be completed to ensure that all
standards for 5-year reviews have been met in a status review (and to provide a means to
recommend future actions).

Please submit your schedule to Angela Somma, Chief, Division of Endangered Species, by
September 15, 2006, and contact her at 301-713-1401 with any questions.

Attachment




Printed on Recycled Paper