PATTI GOLDMAN (DCB# 398565)
KRISTEN L. BOYLES (WSB #23806)
JOSHUA OSBORNE-KLEIN (WSB #36736)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
(206) 343-7340
(206) 343-1526 *[FAX]*
pgoldman@earthjustice.org
kboyles@earthjustice.org
josborne-klein@earthjustice.org

*Attorneys for Defendant-Intervenors*

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FOREST RESOURCE COUNCIL, ) | Case No.  1:07-cv-00484-JDB |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| H. DALE HALL, Director, United States Fish and ) | |
| Wildlife Service, DAVID M. VERHEY, Acting Assistant ) | |
| Secretary for Fish and Wildlife and Parks, and DIRK ) | |
| KEMPTHORNE, Secretary of Interior, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| AUDUBON SOCIETY OF PORTLAND, CENTER FOR ) | |
| BIOLOGICAL DIVERSITY, CONSERVATION ) | |
| NORTHWEST, ENVIRONMENTAL PROTECTION ) | |
| INFORMATION CENTER, GIFFORD PINCHOT TASK ) | |
| FORCE, OREGON WILD, SEATTLE AUDUBON ) | |
| SOCIETY, SIERRA CLUB, and THE WILDERNESS ) | |
| SOCIETY, ) | |
| ) | |
| Defendant-Intervenors. ) | |

## AUDUBON'S REPLY IN SUPPORT OF CROSS-MOTION
## FOR SUMMARY JUDGMENT

TABLE OF CONTENTS

INTRODUCTION ......................................................................................................1

ARGUMENT ...........................................................................................................3

    I.      THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION
           OVER AFRC'S CLAIMS...............................................................................3

          A.      The ESA Does Not Require FWS to Implement Determinations
                Made in the Course of a Status Review. ........................................3

          B.      The ESA Does Not Require That FWS Subject the Status Review
                to Notice and Comment. ...............................................................6

    II.     5-YEAR STATUS REVIEWS ARE NOT A FINAL AGENCY
           ACTIONS. ....................................................................................................8

    III.    NEPA IS INAPPLICABLE TO THE STATUS REVIEW PROCESS. ...............13

    IV.    THE COURT SHOULD NOT VACATE THE MARBLED MURRELET
           LISTING. ....................................................................................................15

          A.      Vacatur Is Unavailable Because FWS's Decision to Maintain the
                Tri-State Listing Was Reasonable. ...........................................16

                1.      FWS did not resolve the issue of whether the tri-state
                        population may be listed because it occupies a significant
                        portion of the marbled murrelet's range. .....................................16

                2.      FWS erred in concluding that the tri-state population was
                        not a DPS. ....................................................................................18

          B.      Vacating the Listing Would Speed the Extinction of the Murrelet. ..........20

CONCLUSION.......................................................................................................22

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

TABLE OF AUTHORITIES

CASES

Bennett v. Spear,
    520 U.S. 154 (1997)..............................................................................................2, 9

Biodiversity Legal Foundation v. Badgley,
    284 F.3d 1046 (9th Cir. 2002) ..........................................................................21

Building Industry Legal Defense Foundation v. Norton,
    231 F. Supp. 2d 100 (D.D.C. 2002)..................................................................22

Capital Network System v. Federal Communications Commission,
    3 F.3d 1526 (D.C. Cir. 1993) ............................................................................12

Colorado Farm Bureau Federation v. U.S. Forest Service,
    220 F.3d 1171 (10th Cir. 2000) ..........................................................................9

Committee for Automobile Responsibility v. Solomon,
    603 F.2d 992 (D.C. Cir. 1979)..........................................................................14

Coos County Board of County Commissioners v. Norton,
    2006 WL. 1720496 (D. Or. June 19, 2006) ........................................................2

Coos County Board of County Commissioners v. Norton,
    No. 06-6010-HO, 2006 WL 1720496 (D. Or. June 19, 2006)............................6

DRG Funding Corp. v. Secretary of Housing & Urban Development,
    76 F.3d 1212 (D.C. Cir. 1996)....................................................................11, 12

Defenders of Wildlife v. Norton,
    239 F. Supp. 2d 9 (D.D.C. 2002) ......................................................................17

Defenders of Wildlife v. Norton,
    258 F.3d 1136 (9th Cir. 2001) ..........................................................................17

District of Columbia v. Schramm,
    631 F.2d 854 (D.C. Cir. 1980) ..........................................................................14

Douglas County v. Babbitt,
    48 F.3d 1495 (9th Cir. 1995) ............................................................................14

Fox Television Stations v. Federal Communications Commission,
    280 F.3d 1027 (D.C. Cir. 2002).................................................................. passim

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Fox Television Stations v. Federal Communications Commission,
       293 F.3d 537 (D.C. Cir. 2002) ...........................................................................16

Fund for Animals v. Thomas,
       127 F.3d 80 (D.C. Cir. 1997) .............................................................................14

Idaho Farm Bureau Federation v. Babbitt,
       58 F.3d 1392 (9th Cir. 1995) .............................................................................21

Independent Equipment Dealers Association v. Environmental Protection Agency,
       372 F.3d 420 (D.C. Cir. 2004) ...........................................................................12

Karst Environmental Education and Protection, Inc. v. Environmental Protection
       Agency,
       475 F.3d 1291 (D.C. Cir. 2007) .........................................................................13

Marbled Murrelet v. Lujan,
       No. C91-522R (W.D. Wash. September 17, 1992) ......................................3, 17

National Association of Home Builders v. Norton,
       298 F. Supp. 2d 68 (D.D.C. 2003) ..................................................................2, 8

National Association of Home Builders v. Norton,
       340 F.3d 835 (9th Cir. 2003) .............................................................................19

National Association of Home Builders v. Norton,
       415 F.3d 8 (D.C. Cir. 2005) ...............................................................................11

National Wildlife Federation v. Babbitt,
       835 F. Supp. 654 (D.D.C. 1993) ........................................................................13

New York v. Environmental Protection Agency,
       350 F. Supp. 2d 429 (S.D.N.Y. 2004)................................................................12

Oregon Natural Resources Council v. Allen,
       476 F.3d 1031 (9th Cir. 2007) ...........................................................................11

Pacific Legal Foundation v. Andrus,
       657 F.2d 829 (6th Cir. 1981) .......................................................................14, 15

Sierra Club v. Andrus,
       581 F.2d 895 (D.C. Cir. 1978),
       rev'd on other grounds, 442 U.S. 347 (1979)....................................................14

Sugar Cane Growers Cooperative of Florida v. Veneman,
       289 F.3d 89 (D.C. Cir. 2002) .............................................................................16

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Tennessee Valley Authority v. Hill,
     437 U.S. 153 (1978)..................................................................................4, 11, 20

Trout Unlimited v. Lohn,
     No. CV05-1128-JCC, 2007 WL 1730090 (W.D. Wash. June 13, 2007).........................15

United States Brewers Association v. Environmental Protection Agency,
     600 F.2d 974 (D.C. Cir. 1979) .........................................................................13

United States v. Swan,
     275 F.3d 272 (3rd Cir. 2002) ...........................................................................4

Wyoming v. Department of Interior,
     360 F. Supp. 2d 1214 (D. Wyo. 2005),
     aff'd, 442 F.3d 1262 (10th Cir. 2006) .........................................................4, 8, 9

## STATUTES

5 U.S.C. § 551(13) ......................................................................................9

5 U.S.C. § 704 ..........................................................................................8

16 U.S.C. § 1532(20) ..................................................................................16

16 U.S.C. § 1533(a)(1) ..................................................................................6

16 U.S.C. § 1533(a)(2) ..................................................................................6

16 U.S.C. § 1533(a)(3) ..................................................................................6

16 U.S.C. § 1533(b)(3) ..................................................................................8

16 U.S.C. § 1533(b)(3)(A) ..............................................................................7

16 U.S.C. § 1533(b)(4) ..............................................................................7, 12

16 U.S.C. § 1533(b)(5) ..................................................................................7

16 U.S.C. § 1533(b)(7) .............................................................................21, 22

16 U.S.C. § 1533(c)(2)..................................................................................3

16 U.S.C. § 1540(g)(1)(B) ..............................................................................8

28 U.S.C. § 2401(a) ................................................................................10, 15

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

42 U.S.C. § 4332(2) ........................................................................................................13

Pub. L. 104-104, 110 Stat. 110, § 202(h) (1996) ...........................................................10

## REGULATIONS

40 C.F.R. § 1501.3 ..........................................................................................................13

40 C.F.R. § 1501.4(c) ......................................................................................................13

50 C.F.R. § 424.11 ....................................................................................................5, 10

50 C.F.R. § 424.11(c) .......................................................................................................5

50 C.F.R. § 424.11(d) ....................................................................................5, 8, 10, 12

## MISCELLANEOUS

48 Fed. Reg. 49,244 (Oct. 25, 1983)...............................................................................14

57 Fed. Reg. 45,328 (Oct. 1, 1992)..................................................................................17

61 Fed. Reg. 4,722 (Feb. 7, 1996) ...................................................................................18

62 Fed. Reg. 13,134 (Mar. 18, 1998)...............................................................................19

AUDUBON'S REPLY IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT   - v -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

INTRODUCTION

Marbled murrelets in Washington, Oregon, and California have been protected under the Endangered Species Act ("ESA") since 1992.  In all that time – over 15 years – neither plaintiff American Forest Resource Council ("AFRC") nor anyone else has ever petitioned to delist the marbled murrelet.  The reason why is clear: there is no scientific dispute that the tri-state murrelet population is declining and warrants protection as a threatened species.  The 2004 Evaluation Report and scientific portion of the 2004 Status Review confirmed that murrelets in Washington, Oregon, and California face extinction within the next 40 to 100 years.[1]  The best science mandate of the ESA requires the continued protection of marbled murrelets.

Faced with a scientifically credible listing, AFRC has brought this case to side-step the best available science and the requirements of the law.  AFRC seeks the Court's aid in its quest to delist the murrelet without following <u>any</u> of the procedures of the ESA – going so far as to ask for the first time in its reply brief that the Court immediately delist the murrelet.  Defendant-intervenors Audubon Society of Portland <u>et al.</u> ("Audubon") respectfully ask the Court to resist AFRC's invitation to delist the murrelet for four reasons.

First, because AFRC has not petitioned to delist the tri-state murrelet population, this Court does not have subject matter jurisdiction over AFRC's claims.  AFRC notably fails to

---

[1] Evaluation Report at 3-52 (ER at 462).  In the 2004 Evaluation Report, completed to aid FWS in its status review, independent scientists determined that the tri-state population has continued to decline by approximately 4% to 7% per year since the 1992 listing.  Evaluation Report at 6-28 (ER at 665); <u>see also</u> 2004 Status Review at 18, 21 (ER at 338, 341).  Furthermore, the United States Geological Survey ("USGS") recently determined that marbled murrelets in British Columbia and Alaska are also imperiled, estimating that the marbled murrelet population in Alaska has declined more than 70% during the past 20 years and that the British Columbia population is declining at a rate of 5.8% to 31% per year.  USGS Status Review at 139 (ER at 193); <u>see also</u> <u>id.</u> at 1 (ER at 055) (estimating that suitable nesting habitat for the marbled murrelet had declined by 15% in Alaska and 33% to 49% in British Columbia over the last 50 years).

AUDUBON'S REPLY IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT   - 1 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

mention Coos County Bd. of County Comm'rs v. Norton, 2006 WL 1720496 (D. Or. June 19, 2006), in which the district court determined it lacked subject matter jurisdiction in a case focused on the same status review for the same tri-state population.

Second, the 2004 Status Review is not a final agency action amenable to judicial review. While FWS has completed the 2004 Status Review, it is not an action "by which rights or obligations have been determined, or from which legal consequences will flow." See Bennett v. Spear, 520 U.S. 154, 177-78 (1997); see also Nat'l Ass'n of Home Builders v. Norton, 298 F. Supp. 2d 68, 76 (D.D.C. 2003). AFRC's alleged trump card, Fox Television Stations v. FCC, 280 F.3d 1027 (D.C. Cir. 2002), is not analogous to this case, let alone "controlling." See AFRC Reply Br. at 7.

Third, AFRC's challenge under the National Environmental Policy Act ("NEPA") similarly fails for lack of final agency action, as well as contravening established case law concerning the scope of NEPA and the interplay between NEPA and the ESA.

Finally, AFRC's newly requested remedy – that the Court immediately vacate the 1992 marbled murrelet listing – illustrates AFRC's disregard for the ESA's statutory scheme and its failure to link its alleged injury to the relief sought. If the Court finds the 2004 Status Review final, reviewable, and wanting,[2] the appropriate remedy is to vacate the 2004 Status Review, not the 1992 listing decision for which the statute of limitations has long since run. AFRC also refuses to acknowledge that the Washington district court ordered FWS to list the tri-state population of marbled murrelets as threatened based on Washington, Oregon, and California

---

[2] It is important to note that Audubon is defending the listing of the murrelet, not the 2004 Status Review. If status reviews were final agency actions subject to judicial review, Audubon might challenge the 2004 Status Review itself for the reasons discussed in Audubon's Opening Brief at 23-27.

AUDUBON'S REPLY IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT   - 2 -

being a significant portion of the marbled murrelet's range. <u>Marbled Murrelet v. Lujan</u>, No. C91-522R, slip op. at 12 (W.D. Wash. September 17, 1992) (ER at 913). While the question of the status of murrelets as a DPS is important, equally important is the issue of significant portion of the range, an issue that AFRC fails to address.

AFRC's interpretation of the ESA is without merit: the plain language, legislative history, public policy, and relevant precedent all undermine AFRC's claims. For the reasons discussed below and in its opening brief, Audubon respectfully asks the Court to deny AFRC's motion for summary judgment and grant Audubon's cross-motion.

ARGUMENT

I.    THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER AFRC'S CLAIMS.

AFRC challenges two of FWS's alleged inactions. First, AFRC faults FWS for failing to delist the tri-state population after concluding in the 2004 Status Review that the tri-state population did not qualify as a DPS. Second, AFRC claims that FWS failed to subject the 2004 Status Review to notice and comment procedures. The ESA, however, mandates neither action. Because the ESA and APA only give this Court jurisdiction to review non-discretionary listing actions, the Court does not have subject matter jurisdiction over AFRC's claims.

A.    <u>The ESA Does Not Require FWS to Implement Determinations Made in the Course of a Status Review.</u>

Section 4(c)(2) of the ESA requires FWS to conduct status reviews of listed species every five years and "determine on the basis of such review whether any such species *should*—(i) be removed from such list; (ii) be changed in status from an endangered species to a threatened species; or (iii) be changed in status from a threatened species to an endangered species." 16 U.S.C. § 1533(c)(2) (emphasis added).

AUDUBON'S REPLY IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT  - 3 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

AFRC argues that section 4(c)(2) requires FWS to delist the tri-state population; however, the only support AFRC provides to establish a mandatory delisting obligation is its half-hearted suggestion that the "should" Congress wrote into section 4(c)(2)(B) really means "shall."  See AFRC Opp. at 12 n.4 (citing United States v. Goldman, 228 F.3d 942, 944 (8th Cir. 2000)).  Although the Goldman court interpreted use of "should" in federal sentencing guidelines to create a mandatory sentencing obligation, subsequent decisions have interpreted the same "should" at issue in Goldman as being permissive.  See, e.g., United States v. Swan, 275 F.3d 272, 279 (3rd Cir. 2002) (finding the reasoning in Goldman to be "questionable in light of the basic principles of statutory interpretation that require us to be guided by the enacting authority's choice of words").  In Swan, the Third Circuit noted that "[i]n the legal context 'should . . . ordinarily impl[ies] duty or obligation; although usually no more than an obligation of propriety or expedience, or a moral obligation,' while shall '[a]s used in statutes, contracts, or the like . . . is generally imperative or mandatory' and is inconsistent with a concept of discretion.'"  275 F.3d at 279 (quoting Black's Law Dictionary 1379, 1375 (6th ed. 1990)) (ellipses and brackets in original).  Consistent with plain meaning of "should," the only court to actually consider whether the language of section 4(c)(2) imposes non-discretionary obligations concluded that "the only mandatory aspect of the status review provision is that one must take place every five years."  Wyoming v. Dep't of Interior, 360 F. Supp. 2d 1214, 1229 n.17 (D. Wyo. 2005), aff'd, 442 F.3d 1262 (10th Cir. 2006) (per curium).

Furthermore, AFRC's interpretation of section 4(c)(2) is contradicted by the context and purpose of the ESA.  It is beyond dispute that Congress intended the ESA to be a precautionary statute, favoring protection of wild species in their natural habitats.  See, e.g., Tennessee Valley

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

<u>Auth. v. Hill</u>, 437 U.S. 153, 184 (1978).  The regulation governing delisting furthers this intent

by providing that a delisting decision is permissive:

> The factors considered in delisting a species are those in [50 C.F.R. § 424.11(c)] of this section as they relate to the definitions of endangered or threatened species. Such removal must be supported by the best scientific and commercial data available to the Secretary after conducting a review of the status of the species.  A species *may be delisted only if* such data substantiate that it is neither endangered nor threatened for one or more of the following reasons:
>
> (1)    Extinction. . . .
>
> (2)    Recovery. . . .
>
> (3)    Original data for classification in error. . . .

50 C.F.R. § 424.11(d) (emphasis added).  AFRC has not challenged this delisting regulation or

alleged that any of these delisting criteria are satisfied.  Instead, in its original complaint, AFRC

erroneously relied on non-existent draft revisions to the ESA regulations as authority for its

argument that FWS was obligated to delist the tri-state population.  <u>Compare</u> AFRC Complaint

at ¶ 31 (Docket 1) ("50 C.F.R. § 424.11 imposes a non-discretionary duty that '[t]he Secretary

*shall delist* a species if [a] status review determines that a species no longer meets the criteria in

section 4(a)(1).'") (emphasis and brackets in original complaint); <u>with</u> 50 C.F.R. § 424.11(d) ("A

species *may be delisted only if* [the best scientific and commercial data available] substantiate

that it is neither endangered nor threatened for one or more of the following" specifically

enumerated criteria.") (emphasis added); <u>see</u> <u>also</u> Audubon's Partial Motion to Dismiss (Apr. 30,

2007) (Docket 12).  AFRC's belief of how the status review process should work is irrelevant;

the language and purpose of the ESA establish that implementation of status review

determinations is discretionary.

AUDUBON'S REPLY IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT   - 5 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

B.     The ESA Does Not Require That FWS Subject the Status Review to Notice and Comment.

AFRC next argues that FWS must engage in notice and comment procedures when it conducts status reviews, as if a status review was itself a regulation instead of a recommendation for future regulatory action.  Specifically, AFRC contends that the language in section 4(c)(2) providing that "[e]ach determination under subparagraph (B) shall be made in accordance with the provisions of [sections 4(a) and 4(b)]" incorporates procedural requirements into the status review process.  AFRC Opp. at 21-27.  AFRC has failed to identify a single procedural requirement from sections 4(a) or (b) applicable to the status review process.

ESA section 4(a)(1) provides the criteria FWS is to consider in making listing determinations and clarifies that listing modifications must be made "by regulation promulgated in accordance with [section 4(b)]."  16 U.S.C. § 1533(a)(1).  This provision does not impose any independent procedural requirements but merely incorporates the procedures of section 4(b). 16 U.S.C. § 1533(a)(1).[3]

The provisions of section 4(b) impose both procedural and substantive mandates on FWS when it wishes to list a species or modify a listing; however, the procedural obligations of section 4(b) are all expressly predicated on either the filing of a citizen petition or the initiation of rulemaking, neither of which has occurred in this case.  Indeed, in a case involving precisely the same facts as those at issue here, the district court for the District of Oregon held that it did not have jurisdiction over status review determinations in the absence of a citizen petition.  Coos County Bd. of County Comm'rs v. Norton, No. 06-6010-HO, 2006 WL 1720496, at *1-2 (D. Or.

---

[3] The remaining portions of section 4(a) impose requirements not at issue in this case: section 4(a)(2) requires coordination between the Departments of Interior and Commerce in listing activities; section (a)(3) generally requires FWS and NMFS to designate critical habitat concurrently with a species listing.  16 U.S.C. §§ 1533(a)(2), (a)(3).

AUDUBON'S REPLY IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT   - 6 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

June 19, 2006) (Exhibit A to Audubon's Opening Brief).  AFRC does not provide any explanation for why this Court's conclusion should differ from the <u>Coos County</u> court's decision; AFRC does not bother to mention the case at all.

While the <u>Coos County</u> court focused on the procedures of section 4(b)(3), all of the procedural requirements of section 4(b) are expressly predicated on either a citizen petition or initiation of rulemaking, neither of which has occurred for the tri-state population.  <u>E.g.</u>, 16 U.S.C. § 1533(b)(3)(A) ("To the maximum extent practicable, within 90 days *after receiving a petition* of an interested person . . . the Secretary shall make a finding . . . .") (emphasis added); 16 U.S.C. § 1533(b)(4) (APA rulemaking requirements "shall apply to *any regulation promulgated* to carry out the purposes of this chapter") (emphasis added); 16 U.S.C. § 1533(b)(5) (Establishing timetables and notice and comment procedures "[w]ith respect to *any regulation proposed* by the Secretary to *implement a determination*, designation, or revision referred to in [sections 4(a)(1) or 4(a)(3)] . . . .") (emphasis added).  AFRC has not explained how any of the above provisions are applicable to status reviews.

The language of section 4(b)(5) actually undermines AFRC's claim that the status review process is subject to the procedural requirements of section 4(b).  <u>See</u> AFRC Opp. at 22.  Section 4(b)(5) makes it clear that "determination" made under section 4(a)(1), which AFRC claims is identical to the "determination" required under section 4(c)(2), must be "implement[ed]" by the initiation of rulemaking before the notice and comment procedures of section 4(b) are triggered. 16 U.S.C. § 1533(b)(5).  Because FWS has not yet proposed rulemaking to implement the status review determinations, and AFRC has not petitioned FWS to delist the tri-state population, the Court lacks subject matter jurisdiction and AFRC's claims must be dismissed.

*          *          *

AUDUBON'S REPLY IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT   - 7 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

The Court's subject matter jurisdiction is limited to reviewing FWS's compliance with the procedural and substantive provisions of the ESA that impose mandatory, not discretionary, duties.  16 U.S.C. § 1540(g)(1)(B).  The actions or inactions that AFRC challenges in this case are discretionary under section 4 of the ESA.  In the absence of a citizen petition, section 4(c)(2) and the implementing regulations expressly give FWS discretion in deciding whether to implement status review determinations.  See 16 U.S.C. § 1533(c)(2); 50 C.F.R. § 424.11(d); Wyoming, 360 F. Supp. 2d at 1229 n.17.  The procedural requirements in section 4(b) are inapplicable to the status review process because they are expressly triggered by either the filing of a citizen petition (missing here) or FWS's initiation of rulemaking (also missing here). 16 U.S.C. §§ 1533(b)(3)-(6); Audubon's Opening Brief at 19-22.  The Court should deny AFRC's motion for summary judgment because AFRC has failed to identify any non-discretionary listing obligations that FWS has violated. [4]

II.    5-YEAR STATUS REVIEWS ARE NOT A FINAL AGENCY ACTIONS.

Only "final agency actions" are subject to judicial review under the APA or ESA.  See 5 U.S.C. § 704; see also Nat'l Ass'n of Home Builders, 298 F. Supp. 2d at 76, aff'd, Nat'l Ass'n

---

[4] AFRC has stated that it "will withdraw" its Second Claim for Relief, see AFRC Opp. at 5 n.2. In addition, AFRC now admits that its Unfunded Mandates Reform Act and Regulatory Flexibility Act claims "would become moot" if AFRC prevails and "would necessarily . . . fail" if the Court finds that the rulemaking procedures of section 4(b) are inapplicable to the status review process.  AFRC's Opp. at 21 n.9.  For the same reasons, AFRC appears to have conceded that its improper delegation claim is either invalid or moot.  Id. at 22 n.10.

Regardless of whether AFRC has waived or abandoned any of these claims, they are all based on the faulty premise that FWS has a mandatory obligation to implement status review determinations by initiating rulemaking to delist the tri-state population.  As discussed below and in Audubon's Opening Brief, AFRC has failed to identify any valid authority supporting an interpretation of the ESA that imposes such obligations.  Audubon's Opening Brief at 19-22. For the same reasons that the Court lacks subject matter jurisdiction and the 2004 Status Review is not a reviewable final agency action, all of the claims AFRC has brought in this case, in their many manifestations, are without merit.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

of Home Builders v. Norton, 415 F.3d 8, 13 (D.C. Cir. 2005); Audubon's Opening Brief at 16-

19.  According to the Supreme Court, "two conditions must be satisfied for agency action to be

'final': First, the action must mark the consummation of the agency's decisionmaking process –

it must not be of a merely tentative or interlocutory nature.  And second, the action must be one

by which rights or obligations have been determined, or from which legal consequences will

flow."  Bennett v. Spear, 520 U.S. 154, 177-78 (1997).  Here, the determinations made in the

2004 Status Review are not final because no legal consequences flow from those

recommendations.

        At the outset, AFRC has erroneously asserted that there is a "presumption of

reviewability" when considering whether the 2004 Status Review is a final agency action.

AFRC Opp. at 13.  AFRC errs by conflating the finality inquiry with overall reviewability

analysis.  The presumption of reviewability applies only to those agency actions that are final.

Compare AFRC Opp. at 1, 13; with Fox Television Stations, Inc. v. FCC, 280 F.3d 1027, 1038

(D.C. Cir. 2002) ("In light of the presumption that *final* agency action is reviewable, we must

reject the Commission's argument that the text and structure of the 1996 Act preclude judicial

review.") (emphasis added).  Furthermore, the cases AFRC cites make it clear that AFRC has the

burden of proving finality.  See, e.g., Wyoming, 360 F. Supp. 2d at 1227 ("Plaintiffs have the

burden of identifying specific federal conduct and explaining how it is a 'final agency action'

within the meaning of 5 U.S.C. § 551(13)."); Colorado Farm Bureau Fed'n v. U.S. Forest

Service, 220 F.3d 1171, 1173 (10th Cir. 2000) (same).

        AFRC contends that the 2004 Status Review was a final agency action because it

"expose[ed] plaintiff American Forest Resource Council (AFRC), its members and other land

owners along the entire Pacific coastline to the coercive legal effects of the ESA's criminal and

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

civil sanctions in the daily course of managing millions of acres of land that may contain habitat for marbled murrelets." AFRC Opp. at 1; see also id. at 6-7. This alleged legal consequence, if proven, would stem from the 1992 tri-state population listing, not the 2004 Status Review, and the period for challenging the listing expired long ago. See 28 U.S.C. § 2401(a).

        In an attempt to reopen the window for challenging the listing, AFRC argues that the 2004 Status Review is a final agency action under Fox Television. That case involved Federal Communications Commission ("FCC") decisions to maintain television ownership regulations despite Congress's order that FCC deregulate the industry. 280 F.3d at 1033-34. Congress had commanded FCC to review its television station ownership rules every two years and ordered that FCC "'shall repeal or modify any regulation it determines to be no longer in the public interest.'" Id. (quoting Pub. L. 104-104, 110 Stat. 110, § 202(h) (1996)) (emphasis added). Unlike the deregulation statute at issue in Fox Television, the ESA does not require FWS to delist a species if it finds that the species is not a DPS; rather, "a species *may be delisted only if*" the best available science "substantiate[s] that it is neither endangered nor threatened" because of specifically enumerated factors. 50 C.F.R. § 424.11(d) (emphasis added). While legal consequences obviously flowed from the determination at issue in Fox Television, triggering the "shall repeal" mandate of the deregulation statute, the same is not true concerning FWS's delisting obligations under the ESA.[5]

────────────────────────

[5] AFRC's reliance on Fox Television might be more persuasive if the unpromulgated draft revisions to the ESA regulations were actually in force (although such regulations would likely violate the statute). Those draft revisions would have arguably imposed a mandatory obligation for FWS to delist upon finding that a species does not qualify as a DPS. Compare Pub. L. 104-104, 110 Stat. 110, § 202(h) (1996) (FCC "*shall repeal* or modify any regulation it determines to be no longer in the public interest."); with AFRC Complaint at ¶ 31 (Docket 1) ("50 C.F.R. § 424.11 imposes a non-discretionary duty that '[t]he Secretary *shall delist* a species if [a] status review determines that a species no longer meets the criteria in section 4(a)(1).'") (emphasis and brackets in original complaint). As that regulatory change has not happened and the actual

AUDUBON'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT - 10 -

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA 98104
(206) 343-7340

Moreover, Congress intended the ESA to be precautionary and designed the statute to "afford endangered species the highest of priorities." <u>Oregon Natural Res. Council v. Allen</u>, 476 F.3d 1031, 1033 (9th Cir. 2007) (citation omitted); <u>see also</u> <u>Tennessee Valley Auth.</u>, 437 U.S. at 184 ("The plain intent of Congress in enacting [the ESA] was to halt and reverse the trend toward species extinction, whatever the cost.  This is reflected not only in the stated policies of the Act, but in literally every section of the statute.").  In contrast, the <u>Fox Television</u> court likened the legislative intent for the deregulation statute "to Farragut's order at the battle of Mobile Bay ('Damn the torpedoes!  Full speed ahead.') . . . ."  280 F.3d at 1044.  Interpreting the status review process as a final agency action under <u>Fox Television</u> would frustrate Congress's intent to favor protection of species.

Additional D.C. Circuit precedent establishes that an administrative action is not final if the associated legal consequences would be contingent on future agency actions.  For example, in <u>DRG Funding Corp. v. Secretary of Housing & Urban Dev.</u>, 76 F.3d 1212 (D.C. Cir. 1996), the D.C. Circuit held that an agency "determination" that HUD had authority to affect offsets against its own liability was not final agency action because the order did "not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action."  <u>Id.</u> at 1214; <u>Nat'l Ass'n of Home Builders</u>, 415 F.3d at 15 (agency action is not final "if the practical effect of the agency action is not a certain change in the legal obligations of a party . . . ."); <u>id.</u> ("Practical consequences, such as the threat of having to defend itself in an administrative hearing should the agency actually decide to pursue enforcement, are

regulation mimics the discretionary language of the statute, <u>Fox Television</u> is of no help to AFRC.  <u>See</u> Audubon's Partial Motion to Dismiss (Apr. 30, 2007) (Docket 12).

AUDUBON'S REPLY IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT  - 11 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

insufficient to bring an agency's conduct under our purview.") (citing <u>Indep. Equip. Dealers Ass'n v. EPA</u>, 372 F.3d 420 (D.C. Cir. 2004)) (brackets in original).

For the reasons discussed above, status review determinations have no legal effect until FWS decides to implement them through the rulemaking procedures of section 4(b). <u>See</u>, <u>e.g.</u>, Letter from Regional Director Allen to Scott Horngren at 1 (ER at 320) ("Any delisting or reclassification of the marbled murrelet under the Endangered Species Act will require a separate rulemaking, involving public notice and comment."). In order to implement a delisting, FWS would be required to show that the best available science indicated that the tri-state population was not a threatened species, determine that the tri-state population was not entitled to listing under the "significant portion of the range" provisions of the ESA, publish a proposed delisting regulation, accept and review comments on the proposal, and wait at least 90 days before finalizing the delisting. 16 U.S.C. § 1533(b)(4)-(5); 50 C.F.R. § 424.11(d); <u>cf.</u> <u>DRG Funding</u>, 76 F.3d at 1215.

The cases that AFRC relies upon to establish finality are inapposite. First, in <u>New York v. EPA</u>, 350 F. Supp. 2d 429, 435 (S.D.N.Y. 2004), the court determined that a pesticide registration eligibility decision ("RED") leaving pesticide tolerances in place was final because, unlike a status review determination, once EPA issues a RED "no further action is required of the agency, absent the filing of a petition appealing that tolerance." <u>Id.</u> at 435. To the contrary, under the ESA's statutory scheme, further action must occur to uplist, downlist, or delist a species.

Second, two of the cases cited by AFRC involve agency action on a petition – a step absent here. <u>See</u> <u>Capital Network Sys. v. FCC</u>, 3 F.3d 1526, 1530 (D.C. Cir. 1993) (finding FCC's denial of petition for enforcement of telephone billing rates was a final agency action);

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

United States Brewers Ass'n v. EPA, 600 F.2d 974, 978 (D.C. Cir. 1979) (finding that EPA's final order denying a petition to repeal a rule was equivalent to the promulgation of a rule and therefore a final agency action). Finally, unlike FWS's position on the 5-Year Status Review, in National Wildlife Fed'n v. Babbitt, 835 F. Supp. 654, 660-61 (D.D.C. 1993), finality was established because the agency conceded that the action at issue was a rule.

In light of the extensive additional procedures that would be necessary to complete a delisting and the absence of a delisting petition, the 2004 Status Review is not a judicially reviewable final agency action, and Audubon asks the Court to deny AFRC's motion for summary judgment.

## III.    NEPA IS INAPPLICABLE TO THE STATUS REVIEW PROCESS.

AFRC's National Environmental Policy Act ("NEPA") claim fails for the same reason: NEPA compliance hinges on there being a final agency action. See Karst Envtl. Educ. and Prot., Inc. v. EPA, 475 F.3d 1291, 1295 (D.C. Cir. 2007) ("In the NEPA context, the 'final agency action' required by the APA must also be a 'major federal action' under NEPA.") (citation omitted). Because the 2004 Status Review is not a final agency action, there is no duty to comply with NEPA, and the Court should dismiss this claim as well.

Even if the Court were to hold that the 2004 Status Review was a final action, NEPA is inapplicable because it is not a "major Federal action." NEPA requires that an agency prepare an environmental impact statement ("EIS") only for "major Federal actions significantly affecting the quality of the human environment," 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1501.3.[6] In the 2004 Status Review, FWS recommended that the tri-state population listing be maintained

---

[6] Alternatively, NEPA requires an agency to prepare an environmental assessment ("EA") followed by a Finding of No Significant Impact ("FONSI") for major Federal actions. 40 C.F.R. §§ 1501.4(c), (e), 1508.9.

AUDUBON'S REPLY IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT   - 13 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

pending further study.  Agency "actions" to maintain the *status quo* do not constitute major

federal actions under NEPA.  Fund for Animals v. Thomas, 127 F.3d 80, 84 (D.C. Cir. 1997)

("Because the new national policy maintained the substantive status quo, it cannot be

characterized as a 'major federal action' under NEPA."); see also District of Columbia v.

Schramm, 631 F.2d 854, 862 (D.C. Cir. 1980) ("The[r]e being no 'major Federal action,' the

Agency was not required to prepare an environmental impact statement.") (footnote omitted);

Comm. for Auto Responsibility v. Solomon, 603 F.2d 992, 1002-03 (D.C. Cir. 1979) ("The duty

to prepare an EIS normally is triggered when there is a proposal to change the status quo.");

Sierra Club v. Andrus, 581 F.2d 895, 902 (D.C. Cir. 1978) ("In general . . . if there is no proposal

to change the status quo, there is in our view no 'proposal for legislation' or 'other major Federal

action' to trigger the duty under NEPA to prepare an EIS."), rev'd on other grounds, 442 U.S.

347 (1979).  The 2004 Status Review tentatively recommended maintenance of the existing

marbled murrelet listing; it was not a major federal action triggering NEPA obligations.

   NEPA is also inapplicable because interposition of NEPA procedures on the status

review process would be inconsistent with the purposes and mandates of the ESA.  See, e.g.,

Pacific Legal Found. v. Andrus, 657 F.2d 829, 836 (6th Cir. 1981) (NEPA is inapplicable to ESA

listing actions because "the statutory mandate of ESA prevents [FWS] from considering the

environmental impact when listing a species as endangered or threatened.").[7]  The Pacific Legal

court reasoned that the ESA-mandated listing criteria and best science requirement precluded

FWS from considering other factors in making listing decisions, including those factors required

under NEPA.  Id.; see also id. at 838 ("An impact statement is not necessary to evaluate the

priority [FWS] is to give to listing species as Congress has already done it."); Douglas County v.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Babbitt, 48 F.3d 1495, 1503 (9th Cir. 1995) (NEPA is inapplicable if the NEPA procedures would be "redundant" or "superfluous" to those already mandated under other statutes); Trout Unlimited v. Lohn, No. CV05-1128-JCC, 2007 WL 1730090, at *12-15 (W.D. Wash. June 13, 2007) (NEPA is inapplicable to specific policy providing guidance for future ESA listing actions).[8]  The Court should be "reluctant to make NEPA more of an obstructionist tactic to prevent environment-enhancing action . . . ."  Pacific Legal, 657 F.2d at 838.

IV.    THE COURT SHOULD NOT VACATE THE MARBLED MURRELET LISTING.

For the first time in its reply brief, AFRC asks the Court to "vacate the 1992 regulation listing the Three-State Murrelet DPS as a threatened species."  AFRC Opp. at 32.  However, AFRC has not challenged that listing and the 6-year statute of limitations for such a challenge expired long ago.  See 28 U.S.C. § 2401(a).  Furthermore, the narrow circumstances in which courts vacate underlying regulations based on challenges to secondary agency actions are not present.  Even if AFRC were to prevail on any of its claims – which it should not – vacatur of the underlying 1992 tri-state population listing is not an available remedy.  Instead, the appropriate remedy would be to remand for FWS to conduct another status review.  See, e.g., Fox Television, 280 F.3d at 1047 ("Under the APA reviewing courts generally limit themselves to remanding for further consideration an agency order wanting an explanation adequate to sustain it.").

---

[7] FWS has formally adopted the Pacific Legal holding.  48 Fed. Reg. 49,244 (Oct. 25, 1983) ("Section 4 listing actions are exempt from NEPA as a 'matter of law.'").

[8] AFRC contends that FWS has taken an "untenable" position by arguing that the 2004 Status Review is not subject to NEPA under Pacific Legal while maintaining that the 2004 Status Review is not a "listing decision."  AFRC Opp. at 28-29.  This argument was squarely rejected in Trout Unlimited, in which the court found that NMFS's Hatchery Listing Policy ("HLP") was exempt from NEPA under the reasoning of Pacific Legal and Douglas County even though the HLP provided guidance for future salmon and steelhead listings and was not itself a listing decision.  2007 WL 1730090 at *13-15.

Earthjustice
705 Second Ave., Suite 203
Seattle, WA  98104
(206) 343-7340

A.     Vacatur Is Unavailable Because FWS's Decision to Maintain the Tri-State Listing Was Reasonable.

The D.C. Circuit has defined the narrow circumstances in which a court may vacate an underlying regulation as opposed to the challenged secondary decision.  In Fox Television, the appellate court affirmed that "'[t]he decision whether to vacate depends on the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed.'"  280 F.3d at 1048 (quoting Allied-Signal, Inc. v. Nuclear Regulatory Comm'n, 988 F.2d 146, 150-51 (D.C. Cir. 1993)); see also Sugar Cane Growers Coop. of Florida v. Veneman, 289 F.3d 89, 98 (D.C. Cir. 2002).  The D.C. Circuit determined that the courts should not vacate a rule if the parties defending it can offer any persuasive justification for the rule, even if that justification is *post hoc*.  Fox Television, 280 F.3d at 1048-49, 1052-53; see also Fox Television Stations v. FCC, 293 F.3d 537, 541 (D.C. Cir. 2002).  Here, any deficiencies in the 2004 Status Review were not serious because there are at least two persuasive reasons for continued maintenance of the tri-state population listing.  First, FWS was obligated to maintain the listing because tri-state population occupies a significant portion of the marbled murrelet's range.  Second, FWS erred in concluding that the tri-state population did not qualify as a DPS.

1.     *FWS did not resolve the issue of whether the tri-state population may be listed because it occupies a significant portion of the marbled murrelet's range.*

Under the ESA, there are two situations in which FWS may list a population smaller than a taxonomic species or subspecies.  First, as discussed below, a population may be listed if it qualifies as a DPS.  Second, a population may be listed if it occupies a "significant portion of the range" of the species or subspecies.  See, e.g., 16 U.S.C. § 1532(20) (defining "threatened species" as "any species which is likely to become an endangered species within the foreseeable

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

future throughout all or a significant portion of its range"); see also Defenders of Wildlife v. Norton, 239 F. Supp. 2d 9, 18-21 (D.D.C. 2002); Defenders of Wildlife v. Norton, 258 F.3d 1136, 1140-45 (9th Cir. 2001); see generally Memorandum from Office of the Solicitor, U. S. Department of Interior, re: The Meaning of "In Danger of Extinction Throughout All or a Significant Portion of its Range" (ER at 003-022).

In reviewing Audubon's 1992 petition for listing of the marbled murrelet, the district court for the Western District of Washington determined that the tri-state population qualified for listing because it constituted a significant portion of the marbled murrelet's range. Marbled Murrelet v. Lujan, No. C91-522R, slip op. at 12 (W.D. Wash. September 17, 1992) (ER at 913) ("[T]he court concludes that, based on the uncontradicted findings that the marbled murrelet qualifies for listing as a threatened species throughout a significant portion of its range within the meaning of the ESA, there is no need to consider the alternative basis of whether the tri-state population is a distinct population segment which might qualify for protection under the ESA."). When FWS listed the tri-state population following the district court ruling, it confirmed that "[t]he three states encompass roughly one-third of the geographic area occupied by this subspecies, comprising a significant portion of its range." 57 Fed. Reg. 45,328 (Oct. 1, 1992) (ER at 887). AFRC has never contested the conclusion that tri-state population occupies a significant portion of the marbled murrelet's range.

In the 2004 Status Review, FWS did not revisit the significant portion of the range issue. Nor could it have, considering that the coasts of Washington, Oregon, and California constitute approximately 18% of the marbled murrelet's geographical range but only 2.3% of marbled murrelets currently reside in the tri-state region. Evaluation Report at 6-27 (ER at 664). Because FWS did not alter the significant portion of the range determination in the 2004 Status Review,

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

the 1992 tri-state population listing remains valid regardless of the population's qualification as a

DPS.  Therefore, vacatur of the listing would not be an available remedy even if AFRC were to

prevail on some of its claims.

2.     *FWS erred in concluding that the tri-state population was not a DPS.*

A population may also be listed under the ESA if it qualifies as a DPS.  In determining

whether a population is "discrete," and therefore might constitute a DPS, the 1996 DPS Policy

authorizes FWS to consider whether a population "is delineated by international governmental

boundaries within which differences in control of exploitation, management of habitat,

conservation status, or regulatory mechanisms exists that are significant in light of section

4(a)(1)(D) of the Act."  61 Fed. Reg. 4,722, 4,725 (Feb. 7, 1996).  In the 2004 Status Review,

FWS concluded the tri-state population did not qualify as a DPS because Canada's 2003

enactment of the Species at Risk Act ("SARA") meant there were no significant differences in

control of exploitation, management of habitat, conservation status, or regulatory mechanisms

between the U.S. and Canada.  2004 Status Review at 15-16 (ER at 335-36).  But see Draft 2004

Status Review at 11-13 (finding tri-state population of murrelets both discrete and significant)

(Audubon Opening Br. Exhibit C); Letter from Acting Regional Director of FWS Region 1 to the

Director of FWS at 2 (explaining political interference in murrelet status review) (Audubon

Opening Br. Exhibit D).  As Audubon explained in its opening brief, FWS reached this

conclusion by misapplying the DPS Policy and by making inaccurate assumptions of the

effectiveness of Canada's endangered species laws.  Audubon's Opening Brief at 23-28.

First, FWS's application of the DPS Policy in the 2004 Status Review was inconsistent

with its usual court-sanctioned application of that policy.  In the 2004 Status Review, FWS

determined that the significant differences in marbled murrelet abundance across the

international border was insufficient to qualify the tri-state population as discrete.  2004 Status

AUDUBON'S REPLY IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT   - 18 -

Review at 16 (ER at 336).  This was a departure from FWS's customary application of the DPS

Policy.  See, e.g., Nat'l Ass'n of Home Builders v. Norton, 340 F.3d 835, 843 (9th Cir. 2003)

("'[D]ifferences in conservation status' mean 'differences in the number of owls' on either side

of the border."); 62 Fed. Reg. 13,134 (Mar. 18, 1998) (finding "significant differences between

the United States and Mexico in regard to the species' conservation status" where "the

population in Baja California is not likely to be in danger of extirpation within the foreseeable

future because there are significantly more animals there than occur in the United States").

        Second, FWS's application of the DPS Policy ran counter to the advice of the Solicitor

and FWS's own guidance documents.  In the 2004 Status Review, FWS considered current

differences in "regulatory mechanisms" when it should have considered what differences would

exist after implementation of the delisting.  See Letter from Acting Regional Director of FWS

Region 1 to the Director of FWS at 2 (Exhibit D to Audubon's Opening Brief) (suggesting "that

the conclusion reached by the Department on the [marbled murrelet] 5-year review was based on

an incorrect 'discreteness' analysis under the DPS policy, as it compared current levels of legal

protection in the United States (Endangered Species Act) and Canada (Species at Risk Act),

rather than comparing the levels that would exist if the species were not listed in the United

States").  Indeed, in the status review guidance document AFRC cites in its opposition brief,

AFRC Opp. at 19 n.6, FWS adopts the Solicitor's recommendation with respect to application of

the DPS Policy.  5-Year Review Guidance: Procedures for Conducting 5-Year Reviews Under

the Endangered Species Act, at 1-6 n.4, available at http://www.nmfs.noaa.gov/pr/pdfs/laws/

guidance_5_year_review.pdf (last viewed Oct. 5, 2007) ("In assessing whether the population is

'discrete' based on an international border across which there are significant differences in

control of exploitation, management of habitat, conservation status, or regulatory mechanisms,

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

the analysis should rest on any differences that would exist if the DPS were not listed under the ESA.").

Third, FWS overestimated the efficacy of Canada's efforts to protect the marbled murrelet. In the Draft Status Review for the tri-state population, FWS concluded that the tri-state population was a DPS because of differences in the conservation status of the marbled murrelet in the U.S. and Canada, differences in management practices between the U.S. and Canada, and differences in regulatory mechanisms between the two nations. Draft Status Review at 11-12 (Exhibit C to Audubon's Opening Brief). In the 2007 USGS Status Review, USGS agreed with the conclusions in the Draft Status Review, noting significant differences in habitat management practices between British Columbia and the United States despite enactment of SARA. USGS Status Review at 139 (ER at 193). Skepticism of Canadian efforts to protect marbled murrelets proved to be warranted; there is now considerable evidence that SARA and other Canadian wildlife laws do not provide protections comparable to those provided by the ESA. For example, SARA applies only to federal lands but approximately 80% of the Canadian nesting habitat for murrelets falls under provincial jurisdiction. Also, Canada has yet to promulgate a marbled murrelet recovery strategy despite a June 5, 2007 deadline; critical habitat for the marbled murrelet has not been identified in Canada; and SARA's prohibitions against harming critical habitat are unenforceable. Audubon's Opening Brief at 23-28. Canada's failure to protect its marbled murrelet population gives yet another justification for maintaining the tri-state listing regardless of the adequacy of the 2004 Status Review.

B.    Vacating the Listing Would Speed the Extinction of the Murrelet.

In considering the equities, the focus must be on the potential harm to the marbled murrelet in the absence of ESA safeguards. See Tennessee Valley Auth. v. Hill, 437 U.S. 153, 194 (1978) (An "examination of the language, history, and structure" of the ESA indicates

AUDUBON'S REPLY IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT   - 20 -

"beyond doubt that Congress intended endangered species to be afforded the highest of priorities."); see also Biodiversity Legal Found. v. Badgley, 284 F.3d 1046, 1056-57 (9th Cir. 2002) (issuing injunction to effectuate congressional purpose behind the ESA's listing provisions). In Idaho Farm Bureau Federation v. Babbitt, 58 F.3d 1392, 1405 (9th Cir. 1995), the Ninth Circuit left a legally flawed ESA listing in place during remand because of the species' plight and the desire to avoid disrupting protective efforts.

Here, the equities balance in favor of maintaining the listing because marbled murrelet populations are in perilous decline. Evaluation Report at 3-52 (ER at 462) (tri-state population likely to become extinct within 100 years); id. at 6-28 (ER at 665) (tri-state population continues to decline approximately 4% to 7% per year); USGS Status Review at 139 (ER at 193) (marbled murrelet population in Alaska has declined more than 70% during the past 20 years and that the British Columbia population is declining at a rate of 5.8% to 31% per year); see also id. at 1 (ER at 055); 2004 Status Review at 18, 21 (ER at 338, 341). Destruction of murrelet habitat was the primary reason for the species' listing in 1992 and "[i]t is unrealistic to expect that the species will recover before there is significant improvement in the amount and distribution of suitable nesting habitat." Evaluation Report at 6-34 (ER at 672).

Nonetheless, AFRC asserts that vacatur of the underlying listing is appropriate in this case because "vacating the listing rule [would not] cause any disruption to the FWS program; FWS retains the power provided in the ESA to impose an immediate emergency listing of the birds if necessary to avoid any significant risk to the well-being of the species." AFRC Opp. at 3. Implicit in this argument is an admission that delisting of the marbled murrelet could result in an "emergency posing a significant risk to the well-being" of the marbled murrelet. See 16 U.S.C. § 1533(b)(7).

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

AFRC cannot seriously suggest that the murrelet might be delisted and then re-protected through an emergency listing without disruption.  An emergency listing must be accompanied by publication of "detailed reasons why such regulation is necessary" and "shall cease to have force and effect at the close of the 240-day period following the date of publication unless, during such 240-day period, the rulemaking procedures which would apply to such regulation without regard to this paragraph are complied with."  16 U.S.C. § 1533(b)(7).  Accordingly, the adoption of an emergency listing, by itself, would consume significant agency resources.

Moreover, the murrelet would not be protected during the time it takes FWS to adopt the emergency listing and at the end of the 240-day emergency listing period (unless FWS were able to complete the rulemaking procedures for a final listing during that period).  Without a listing in place, the programs to protect the marbled murrelet would end, and marbled murrelet habitat would be destroyed.  This case is unlike Building Indus. Legal Defense Found. v. Norton, 231 F. Supp. 2d 100 (D.D.C. 2002), because vacating the marbled murrelet listing, as opposed to vacating a critical habitat designation, would completely remove ESA protections; without the listing there would be no "overlapping regulatory structures" to provide protection for the murrelet.  Cf. id. at 106-07.  Without the ESA listing and the protections that flow from that listing, both federal and private murrelet habitat could be destroyed; AFRC has made no secret of its desire to log old-growth murrelet habitat.  See Complaint, No 02-6087-AA, at ¶¶ 6-9 (Exhibit B to Audubon's Opening Brief).

## CONCLUSION

This Court should not countenance AFRC's attempt to short-circuit the carefully crafted scheme Congress devised for reviewing ESA listings.  Especially when the extinction of a species is at stake, the Court should decline to peremptorily delist the marbled murrelet.  For the

AUDUBON'S REPLY IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT   - 22 -

reasons discussed above and in Audubon's opening brief, Audubon respectfully asks the Court to grant its motion for summary judgment and deny that of AFRC.

Respectfully submitted this 19th day of October, 2007.

/s/ Joshua Osborne-Klein

PATTI GOLDMAN (DCB# 398565)
KRISTEN L. BOYLES (WSB #23806)
JOSHUA OSBORNE-KLEIN (WSB #36736)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104
(206) 343-7340
(206) 343-1526 *[FAX]*
pgoldman@earthjustice.org
kboyles@earthjustice.org
josborne-klein@earthjustice.org

*Attorneys for Defendant-Intervenors Audubon Society of Portland, Center for Biological Diversity, Conservation Northwest, Environmental Protection Information Center, Gifford Pinchot Task Force, Oregon Wild, Seattle Audubon Society, Sierra Club, and The Wilderness Society*

AUDUBON'S REPLY IN SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT   - 23 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

PATTI GOLDMAN (DCB# 398565)
KRISTEN L. BOYLES (WSB #23806)
JOSHUA OSBORNE-KLEIN (WSB #36736)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
(206) 343-7340
(206) 343-1526 *[FAX]*
pgoldman@earthjustice.org
kboyles@earthjustice.org
josborne-klein@earthjustice.org

*Attorneys for Defendant-Intervenors*

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN FOREST RESOURCE COUNCIL, | ) | Case No.  1:07-cv-00484-JDB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| H. DALE HALL, Director, United States Fish and | ) | |
| Wildlife Service, DAVID M. VERHEY, Acting Assistant | ) | |
| Secretary for Fish and Wildlife and Parks, and DIRK | ) | |
| KEMPTHORNE, Secretary of Interior, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AUDUBON SOCIETY OF PORTLAND, CENTER FOR | ) | |
| BIOLOGICAL DIVERSITY, CONSERVATION | ) | |
| NORTHWEST, ENVIRONMENTAL PROTECTION | ) | |
| INFORMATION CENTER, GIFFORD PINCHOT TASK | ) | |
| FORCE, OREGON WILD, SEATTLE AUDUBON | ) | |
| SOCIETY, SIERRA CLUB, and THE WILDERNESS | ) | |
| SOCIETY, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

**CERTIFICATE OF SERVICE**

CERTIFICATE OF SERVICE   - 1 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

I am a citizen of the United States and a resident of the State of Washington.  I am over 18 years of age and not a party to this action.  My business address is 705 Second Avenue, Suite 203, Seattle, Washington 98104.

On October 19, 2007, I served a true and correct copy of:

1.      Audubon's Reply in Support of Cross-Motion for Summary Judgment; and
2.      Certificate of Service.

on the parties listed below:

James T. McDermott
Ball Janik LLP
101 S.W. Main Street, Suite 1100
Portland, OR  97204
(503) 228-2525
(503) 226-3910 *[FAX]*
jmcdermott@balljanik.com
*Attorney for Plaintiffs*

☐ via facsimile
☐ via overnight courier
☐ via first-class U.S. mail
☐ via hand delivery
☒ via electronic service by Clerk
☐ via e-mail

Mark C. Rutzick
4912 Shadow Valley Drive
Fairfax, VA  22030
(703) 865-8418
markrutzick@cox.net
*Attorney for Plaintiffs*

☐ via facsimile
☐ via overnight courier
☐ via first-class U.S. mail
☐ via hand delivery
☒ via electronic service by Clerk
☐ via e-mail

CERTIFICATE OF SERVICE   - 2 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Meredith L. Flax
Courtney Taylor
Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife and Marine Resources Section
P.O. Box 7369
Washington, D.C. 20044-7369
**Street Address**:
601 D Street, N.W., Room 3908
Washington, D.C. 20004
(202) 305-0404 (Meredith)
(202) 353-7548 (Courtney)
(202) 305-0275 *[FAX]*
meredith.flax@usdoj.gov
courtney.taylor@usdoj.gov
*Attorneys for Federal Defendants*

☐ via facsimile
☐ via overnight courier
☐ via first-class U.S. mail
☐ via hand delivery
☒ via electronic service by Clerk
☐ via e-mail

    I declare under penalty of perjury that the foregoing is true and correct. Executed on this

19th day of October, 2007, at Seattle, Washington.

Catherine Hamborg

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*