UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AM. FOREST RESOURCE COUNCIL,

    Plaintiff,

    v.

H. DALE HALL, Director, U.S. Fish &
Wildlife Serv., et al.,

    Defendants.

Civil Action No. 07-0484 (JDB)

## ORDER

Plaintiff American Forest Resource Council ("AFRC") has moved to alter or amend the Court's February 5, 2008 judgment pursuant to Fed. R. Civ. P. 59(e) or, in the alternative, for reconsideration "on the ground the Court overlooked a key fact that takes this case outside the general finality analysis employed in the Court's Memorandum Opinion." Pl.'s Mot. at 1. The Court will assume familiarity with the facts of this case, which are laid out in full in its earlier memorandum. See Am. Forest Res. Council v. Hall, 533 F. Supp. 2d 84 (D.D.C. 2008).

"'A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Ciralsky v. Cent. Intelligence Agency, 355 F.3d 551, 671 (D.C. Cir. 2004) (quoting Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996)); see also Mobley v. Cont'l Cas. Co., 405 F. Supp. 2d 42, 45 (D.D.C. 2005) ("A motion for reconsideration . . . will not lightly be granted."). A Rule 59(e) motion "is not simply an opportunity to reargue facts and theories upon which a court has already ruled." New York v. United States, 880 F. Supp. 37, 38 (D.D.C. 1995). Nor is it "a vehicle for presenting theories or

arguments that could have been advanced earlier." Burlington Ins. Co. v. Okie Dokie Inc., 439 F. Supp. 2d 124, 128 (D.D.C. 2006); see also Kattan v. District of Columbia, 995 F.2d 274, 276 (D.C. Cir. 1993).

AFRC now contends that in the 2003 Settlement Agreement the U.S. Fish and Wildlife Service ("FWS") took on additional legal obligations that went beyond the statutory duty to conduct a five-year status review pursuant to section 4(c)(2) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq. AFRC therefore argues that due to these additional legal obligations there is reviewable final agency action in this case. Notably, however, the issue of final agency action was thoroughly briefed in the cross-motions for summary judgment and argued at the January 18, 2008 motions hearing, and AFRC failed to assert its current argument premised upon the language of the 2003 Settlement Agreement. Because the parties had the opportunity to fully address this issue, AFRC has no excuse for now asserting an argument for reconsideration that could have been advanced earlier. In any event, AFRC's new argument is unpersuasive.

To reach the conclusion that FWS accepted additional legal obligations in the 2003 Settlement Agreement, AFRC asserts that the settlement agreement contains some language that is similar to ESA section 4(b)(3)(B) and that FWS therefore agreed to comply with the requirements of that section. But ESA section 4(b)(3)(B) only applies after an interested person submits a petition to add or remove a species from the threatened or endangered species lists, and it is undisputed that no such petition has been submitted seeking the removal of the marbled murrelet. Further undermining AFRC's argument is the fact that the 2003 Settlement Agreement does not cite ESA section 4(b)(3)(B), nor does it discuss the requirements of that section. Instead, the settlement agreement specifically cites ESA section 4(c)(2). The most compelling interpretation

of the 2003 Settlement Agreement, then, is that which was previously advanced by both parties -- that FWS agreed to conduct a five-year status review under ESA section 4(c)(2). Hence, there is no merit to the argument that FWS assumed legal obligations related to a petition when no petition was ever filed. See Coos County Bd. of County Comm'rs v. Norton, 2006 WL 1720496, at *1 (D. Or. June 19, 2006) ("The court rejects plaintiff's argument that in the absence of a petition, the Secretary must take actions mandated by subsection (b)(3) after completing the species review and determinations required by subsection (c)(2).").

To the extent that AFRC now also cites additional cases, those cases too could have been cited earlier. Indeed, the most recent case AFRC cites, Natural Res. Defense Council, Inc. v. EPA, 902 F.2d 962 (D.C. Cir. 1990), is almost twenty years old, and the relevant portions AFRC relies on were vacated, see Natural Res. Defense Council, Inc. v. EPA, 921 F.2d 326 (D.C. Cir. 1991). That case contained a thorough discussion of the jurisdictional provisions of the Clean Air Act. In addition, the case discussed section 109(d), which provides as follows:

> Not later than December 31, 1980, and at five-year intervals thereafter, the Administrator shall complete a thorough review of the criteria published under section 7408 of this title and the national ambient air quality standards promulgated under this section and shall make such revisions in such criteria and standards and promulgate such new standards as may be appropriate in accordance with section 7408 of this title and subsection (b) of this section.

902 F.2d at 980-81. In an advance notice of proposed rulemaking, EPA indicated an acid deposition secondary standard would be placed on indefinite hold until better research became available, and the plaintiff thereafter filed suit arguing that EPA had "improperly failed to set a secondary national ambient air quality standard ("NAAQS") for particulate matter to protect the public welfare from visibility impairment and acid depositions." Id. at 980.

Two of the three judges on the panel concluded that EPA had not taken final agency action for purposes of visibility impairment but that "EPA ha[d] taken final action, for purposes of this [1980] rulemaking, not to issue a fine particle standard protecting the public from acid deposition." Id. To reach this conclusion regarding acid deposition, Chief Judge Wald reasoned "that EPA's inaction for ten years beyond the statutory deadline [was] effectively a final decision not to revise in this NAAQS revision cycle." Id. at 988. And Judge Edwards concluded that EPA's acid deposition decision was final as to the 1980 revisions since "[s]ection 109(d) requires the Administrator to review and revise the particulate matter criteria and standards in accordance with section 7408 and section 7409(b) '[n]ot later than December 31, 1980, and at five-year intervals thereafter.'" Id. at 990 (emphasis in original).

The later vacated separate opinions of the panel members in Natural Resources Defense Council, see 921 F.2d 326, obviously have no precedential effect. Moreover, AFRC misstates the case. Contrary to AFRC's argument that "there was no duty for the EPA to revise or remove a regulation based on the five-year review," both Chief Judge Wald and Judge Edwards viewed the language of the Clean Air Act as imposing on EPA continuing "responsibilities for updating secondary standards." 902 F.2d at 981. In that statutory context, those judges therefore determined that EPA's failure to issue a final acid deposition standard was final agency action with respect to the 1980 rulemaking cycle. Here, in contrast, the lack of a statutory obligation to implement or act on FWS's five-year status review recommendation distinguishes this case.

In Natural Resources Defense Council, as in Fox Television Stations, Inc. v. FCC, 280 F.3d 1027, 1033 (D.C. Cir. 2002), the court looked to the applicable statutory structure to determine whether the agency's failure to act was final agency action. So, too, here, this Court is

informed by the applicable statutory structure of the ESA, which leads to the opposition conclusion. Although the Court is cognizant that a statutory duty to initiate a rulemaking is not a necessary prerequisite to finding final agency action in the instant context, FWS's statutory obligations inform the Court's analysis and interpretation of FWS's action, and here the Court does not find that FWS's status review was the equivalent of refusing to institute rulemaking proceedings. See Pl.'s Mot. at 5 (admitting that "FWS has never said it will not initiate a rulemaking in the future, and in fact could do so at any time").

As explained more fully in the February 5, 2008 memorandum opinion, FWS's five-year status review simply led to a recommendation regarding future action without imposing new legal obligations and without denying AFRC any rights. The Court finds no reason to reconsider its conclusions that "no rights or obligations have been determined" and that no "legal consequences will flow" from FWS's five-year status review. Bennett v. Spear, 520 U.S. 154, 177 (1997). Because AFRC's legal obligations and rights remained exactly the same the day after the five-year status report was issued as they were on the day before the five-year status report was issued, the Court reaffirms its holding that the second prong of the Bennett v. Spear test has not been satisfied here.

AFRC has not pointed to any error, let alone clear error, in the Court's prior opinion that would justify reconsideration. See Ciralsky, 355 F.3d at 671. Nor has AFRC cited to an intervening change in controlling law, submitted newly available evidence, or demonstrated the existence of manifest injustice. See id. The Court therefore concludes that nothing in AFRC's motion warrants revisiting the February 5, 2008 decision.

Accordingly, upon consideration of [36] AFRC's motion under Rule 59(e) to alter or amend judgment or for reconsideration, and the entire record herein, and for the reasons explained above, it is hereby

**ORDERED** that [36] AFRC's motion under Rule 59(e) is **DENIED**.

**SO ORDERED.**

/s/ John D. Bates
JOHN D. BATES
United States District Judge

Date: June 26, 2008